# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIARA YACHTS, INC.,

    Plaintiff,

v.

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

    Defendant.

_____/

CASE No. 1:22-cv-603

HON. ROBERT J. JONKER

# ORDER

## INTRODUCTION

In 2006, Tiara Yachts, Inc. ("Tiara Yachts") contracted with Blue Cross Blue Shield of Michigan ("BCBSM") to process claims and otherwise administer its self-insured employee health benefit plan. The two companies did business together under a series of Administrative Services Contracts ("ASCs") until Tiara Yachts terminated the contractual relationship at the end of December 2018. During the contractual relationship, BCBSM reviewed the healthcare claims submitted by Tiara Yachts' beneficiaries and paid those claims.

Four years after ending the contractual relationship, Tiara Yachts filed this action alleging that BCBSM breached its ERISA fiduciary duties in processing some claims. The claim is not that BCBSM short-changed beneficiaries or providers, or that it wrongfully kept money for itself that should have been used to pay claims. Rather, Tiara Yachts says BCBSM paid providers more for some claims that it should have. Even here the claim is not that BCBSM paid more than the providers actually charged, but rather that the provider should have charged less and BCBSM

should have known that. Tiara Yachts also claims that BCBSM may not have maintained sufficient data to review its past work under the contractual relationship, and that BCBSM ultimately developed a premium servicing program that would have rewarded BCBSM for catching mistakes it should not have made in the first place, allegedly in violation of ERISA.

All this sounds more like an ordinary contract dispute than an ERISA fiduciary duty case. Tiara Yachts wants money back in its own coffers based on what it says was poor performance by BCBSM under the contract. A win for Tiara Yachts here does not augment the resources of any ERISA plan—indeed, the Plan itself is not even a party and Tiara Yachts is not asking in its Complaint for anything on behalf of the Plan itself. A win for Tiara Yachts here does nothing to provide beneficiaries or providers with more health benefits or payments for services than they have already received. All a win for Tiara Yachts does here is take money from BCBSM and put it in Tiara Yachts' own accounts based on claims that BCBSM performed poorly under the contract of the parties.

That's a matter of contract, not fiduciary duty, and Tiara Yachts had remedies under the ASCs to audit BCBSM's work along the way and recover any improper payments. But rather than avail itself of those mechanisms, or file a contract claim for breach of the ASCs, Tiara Yachts filed this action alleging ERISA violations. BCBSM moves to dismiss because Tiara Yachts' allegations do not demonstrate that BCBSM was functioning as a fiduciary for purposes of ERISA on the challenged conduct. The Court agrees that the allegations set out by Tiara Yachts do not set out an ERISA fiduciary claim. Stripped to essentials, the allegations in the Complaint demonstrate that BCBSM paid actual claims submitted by actual providers at the actual rates charged by those providers for services actually provided to beneficiaries, some of which should

2

allegedly have been at lower rates. If ultimately established, that may state a claim for breach of contract, not ERISA fiduciary duty.

## FACTUAL BACKGROUND

### 1. *The Contractual Relationship*

Tiara Yachts offered a self-funded health benefits plan to its employees and their dependents. (Compl. ¶¶ 1, 15-17, ECF No. 1, PageID.1-3).[1] A self-funded plan is one in which the company self-insures the healthcare claims of its employees instead of purchasing an insurance policy from a third party. The company contracts with an administrator to process and pay the claims in exchange for a fee. (*Id.* at ¶ 12). To that end, Tiara Yachts, beginning with its predecessor S2 Yachts, Inc., contracted with BCBSM starting in 2006 to provide administrative services for the plan it sponsored. (*Id.* at ¶ 15).

The parties signed a series of ASCs under which BCBSM served as the plan administrator for the Tiara Yachts sponsored plan. Under the ASCs, Tiara Yachts paid BCBSM a monthly administrative fee, and in exchange BCBSM reviewed claims submitted by plan beneficiaries and processed and paid those claims using the plan's assets. (*Id.* at ¶¶ 18-21). The ASCs included terms, including time limits, that governed any dispute over payments that BCBSM paid to providers out of plan funds. For example, the ASC for the 2016 calendar year provided that Tiara Yachts (or "Group" for purposes of the agreement) was to "notify BCBSM in writing of any Claim that Group disputes within 60 days of Group's access to a paid Claims listing." (2016 ASC, Art. II § D (ECF No. 12-2, PageID.142).[2] The ASC went on to specify that Tiara Yachts could audit

---

[1] In this, Tiara Yachts qualifies as the plan sponsor. The Plan itself is not a party to this action.
[2] The ASC is attached as an exhibit to the defense brief, it was not included as part of the Complaint. The Complaint, however, makes express references to the ASCs (*see, e.g.*, Compl. ¶¶ 17-18). Accordingly the Court may consider the ASCs without converting the motion to one of summary judgment. *See Weinder v. Klais & Co., Inc.,* 108 F.3d 86, 89 (6th Cir. 1997) (quoting

3

the claims incurred under the contract at its own expense. (Id. at Art. II § G, ECF No. 12-2, PageID.144). However, these audits were to occur no more than "once every twelve months" and would not include claims "from previously audited periods or Claims paid prior to the last 24 months." (*Id*). The time limitation appears to be due, in part, because of the expressed acknowledgment that claims with incurred dates over two years old were more costly to retrieve than more recent claims. (*Id.*). The parties renewed the ASCs each year until 2018, when Tiara Yachts ended the relationship. (Compl. ¶ 17).

### 2. The Claims

In this action, Tiara Yachts alleges that BCBSM paid too much out of Plan funds for certain claims it processed during the contractual relationship. The allegations in Tiara Yachts' Complaint largely stem from a complaint made by a former BCBSM employee about how BCBSM, in general, would process certain claims related to self-funded plans. It's not clear, even to Tiara Yachts, whether any of its beneficiaries' claims were affected. But Tiara Yachts says it believes they were. Tiara Yachts identifies areas in which BCBSM allegedly engaged in misconduct: 1) overpayment of claims using standard programming called "flip logic;" (2) deficiencies in handling claims data; and (3) development of a Shared Savings Program that allegedly constitutes a prohibited transaction under ERISA.

### A. "Flip Logic"

Tiara Yachts first contends that BCBSM maintained an internal policy known as "flip logic" that allegedly resulted in the payment of too much money to certain providers. (Compl. ¶¶ 48-49). The payments were not more than the provider billed, but were at rates higher than the

---

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2 429, 431 (7th Cir. 1993) ("[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.")).

4

provider should have billed, and BCBSM should have known. In particular, when beneficiaries of the Tiara Yachts' sponsored plan visited healthcare providers that were participating providers who had agreed to accept lower negotiated rates, the beneficiaries would sometimes also receive services from associated providers that were not participating providers with BCBSM-negotiated rates. These services often related to things like lab work, and x-rays, though Tiara Yachts asserts it also extended to hospital stays and office visits. When claims from these non-participating providers were submitted to BCBSM, Tiara Yachts alleges BCBSM would then "flip" the non-participating provider claims to process the claims at rates actually charged, rather than the lower BCBSM-negotiated rate for participating providers. (Compl. ¶¶ 48-51). The end result, Tiara Yachts asserts, was that BCBSM would pay whatever the non-participating provider charged, often at much higher rates than those available from participating providers. Tiara Yachts argues it should have been paying for these claims at a lower rate. (*Id.* at ¶ 54).[3]

B. *Claims Data*

Another category of alleged misconduct identified by Tiara Yachts is BCBSM's handling of claims data. Here Tiara Yachts argues BCBSM made improper payments on claims that were submitted with various flaws or deficiencies in the claims. These deficiencies include missing provider information, missing payee information, rolled-up financials, financials that do not reconcile, claims showing as rejected but still paid, missing fields, or fields affected by "flip logic."

---

[3] BCBSM does not disagree that "flip logic" was a part of the programming that BCBSM used to process certain claims from providers, though it disputes some of the characterizations that Tiara Yachts makes about the programming based the materials attached to Tiara Yachts' Complaint. (ECF No. 1-4, PageID.41). Moreover, it asserts there is good reason for the program. It uses "flip logic" to pay the full amount of the claim regardless of whether the claim is from a participating provider at lower rates, or a non-participating provider at higher rates. This allows BCBSM to avoid balance billing Plan beneficiaries for the higher charges. And this, in turn, ensures timely and uninterrupted healthcare for the beneficiaries. To the extent there are any factual disputes here, the Court accepts as true the allegations in the Complaint for purposes of deciding the motion.

5

(Compl. ¶ 93). All this, Tiara Yachts asserts, rendered it difficult, if not impossible, to determine after the fact whether claims were properly paid. Tiara Yachts further alleges that BCBSM should not have allowed claims that contain the various deficiencies described.

Tiara Yachts does not allege that any of these deficiencies were actually present in claims that BCBSM paid out of its sponsored plan assets. Nor does it identify a specific claim it argues was improperly paid. Rather, it asserts that BCBSM has exclusive control over claims data that amounts to a tool that BCBSM can utilize to conceal misconduct. (Compl. ¶ 91). Based on the former employee's complaint about general practices and customers other than Tiara Yachts, Tiara Yachts argues these are errors that were regularly made to customers like Tiara Yachts, and therefore must be out there, waiting to be discovered. (*Id.* at ¶ 108).

C. Shared Savings Plan

The third category of errors identified by Tiara Yachts relates to a Shared Savings Program maintained by BCBSM beginning in the 2018 calendar year. Tiara Yachts was only a part of the program for the last year of the contractual relationship, and there is no claim the Program resulted in any direct impact to Tiara Yachts. Even so, Tiara Yachts argues that the program constituted a prohibited transaction under ERISA. (Compl. ¶ 71). As set out in an FAQ document attached to Tiara Yachts' Complaint, the Shared Savings Program either avoided or recovered savings for BCBSM customers with BCBSM retaining or "sharing" a portion of the savings. (ECF No. 1-6, PageID.52). BCBSM worked with two third-party vendors to help run the program. (Compl. ¶¶ 73, 77). Under the program, for any improper payments avoided or recovered, BCBSM retained thirty percent of the saved funds as its share. (*Id.* at ¶ 83). Tiara Yachts agreed to this term in the 2018 Amendment to the ASC (ECF No. 12-4, PageID.158) and Schedule to the 2018 ASC. (ECF No. 12-5, PageID.161).

6

Tiara Yachts maintains that participation in the Shared Savings Plan for self-insured customers like itself was required. (Compl. ¶ 81). It further contends the Shared Savings Plan created a perverse incentive for BCBSM under which BCBSM "devised a scheme that would allow it to profit on its own mismanagement of plan assets. The more improper payments BCBSM let slide through its system, the more money it would make on the back end." (Compl. ¶ 84). There is no allegation that BCBSM recovered or avoided any such funds for Tiara Yachts or that BCBSM itself retained any such funds, nor is there any allegation that BCBSM had exclusive or unilateral control over the program.

## PROCEDURAL HISTORY

Tiara Yachts filed this action on July 1, 2022. (ECF No. 1). The Complaint contains two counts: Count I asserts a claim for breach of fiduciary duty under ERISA based on the flip logic and claims data flaws as alleged. Count II asserts an ERISA claim of engaging in a prohibited transaction, namely the Shared Savings Program. (ECF No. 1).

On August 25, 2022, BCBSM moved to dismiss under FED. R. CIV. P. 8, 9(b) and 12(b)(6). In the main, BCBSM argues that this is nothing more than a contractual dispute and that Tiara Yachts has failed to state a claim under ERISA. (ECF No. 11). Tiara Yachts filed a response in opposition to the motion (ECF No. 16) and BCBSM has replied. (ECF No. 18). The Court heard argument on the motion on November 15, 2022, and thereafter took the matter under advisement. The matter is ready for decision.

## LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement" of a claim designed to "give the defendant fair notice" of the claim against him. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). But the Supreme Court has clarified that to meet that standard

7

and survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *Twombly* did not change the notice-pleading standard; "detailed factual allegations" are still not necessary, but the Supreme Court did hold that a plaintiff's complaint must contain "more than labels and conclusions." *Id.* In so holding, the Court took a step away from the long-standing "no set of facts" standard established by *Conley*. *Conley*, 355 U.S. at 45-46 ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). Indeed, the Court found that "*Conley*'s 'no set of facts' language had been questioned, criticized, and explained away" such that "this famous observation had earned its retirement." *Twombly*, 550 U.S. at 563.

Accordingly, in considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff; accepts as true the plaintiff's factual allegations; and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

The more rigorous pleading standards of Rule 9(b) apply to a plaintiff's claims based on fraud. Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To allege fraud with particularity, a plaintiff must, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which her

8

or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex. rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (internal quotation marks omitted).

## DISCUSSION

### 1. *Tiara Yachts' Complaints Are About BCBSM as a Contractor, Not a Fiduciary.*

"A threshold issue" in cases like this, is whether BCBSM "functioned as an ERISA fiduciary." *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740, 744 (6th Cir. 2014). ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan *or* exercises any authority or control respecting management or disposition of its assets, ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

*Id.* (quoting 29 U.S.C. § 1002(21)(A).

The complained of actions within Tiara Yachts' Complaint alleging that BCBSM acted as a fiduciary fail to survive Rule 12 scrutiny. This is, at bottom a contractual dispute. Tiara Yachts and BCBSM agreed via the ASCs that BCBSM would process and pay out of Plan funds those claims submitted by providers. There is no dispute that BCBSM in fact did that. Tiara Yachts' core complaint is that BCBSM paid out more than it should have on some claims, particularly for non-participating providers that had not pre-negotiated rates with BCBSM as part of its regular "flip logic" system. But this complaint is plainly covered by the contractual duties of the ASCs, and the provisions within them for auditing and disputing overpayments in claims processing. *See* 2016 ASC, Art. II §§ D, G (ECF No. 12-2, PageID.142). Tiara Yachts' allegations regarding claims processing, claims data, and the Shared Savings Program fail to state a claim of breach of fiduciary duty and, if actionable at all, are fully matters of contract.

9

### A. *Flip Logic and Claims Processing*

Tiara Yachts' complaints about flip logic and claims processing challenge decisions BCBSM made as a contractor, not a fiduciary. Tiara Yachts recognizes BCBSM paid actual claims at the actual rates charged by actual providers for services actually provided to Plan beneficiaries. Tiara Yachts does not assert that BCBSM retained Plan funds for itself that it should have paid; rather it simply complains that BCBSM paid some of the providers too much. Furthermore, the specific things Tiara Yachts complains about—flip logic, upcoding or unbundling claims, improper coding, etc.—are all a systemwide BCBSM method for paying providers, not some individual exercise of discretion. And Tiara Yachts' Complaint is clear that its complaints are part of overarching business dealings. In fact, Tiara Yachts' explanation for having no specific examples to show the Court now, but being confident it will find them later, depends on these being systemwide BCBSM practices. These are not ERISA fiduciary duty violations, but simply complaints about BCBSM as a contractor. *See DeLuca v. Blue Cross Blue Shield of Michigan*, 628 F.3d 743, 747 (6th Cir. 2010) ("We conclude . . . that BCBSM was not acting as a fiduciary when it negotiated the challenged rate changes, principally because those business dealings were not directly associated with the benefits plan at issue here but were generally applicable to a broad range of health-care consumers.").

Tiara Yachts disputes that *DeLuca* applies. It says it is not challenging BCBSM's negotiation of rates with providers, but rather it is challenging how BCBSM administered the Tiara Yachts' sponsored plan. *See id.* ("[I]n determining liability for an alleged breach of fiduciary in an ERISA case, the courts 'must examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of *the plan*, giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards.") (quoting

10

*Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 718 (6th Cir. 2000) (emphasis in *DeLuca*)). As an example, Tiara Yachts contends it is not contesting the negotiation BCBSM had with providers on the rate it would pay for applying a bandage, but rather is challenging an administrative decision that BCBSM allegedly made to process "up-coded" claims that charged an exorbitant amount for applying the bandage. (ECF No. 16, PageID.197-198). Tiara Yachts points to *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan*, 751 F.3d 740 (6th Cir. 2014) and *Pipefitters Loc. 636 Ins. Fund v. Blue cross Blue Shield of Michigan*, 722 F.3d 861, 867 (6th Cir. 2013) for the assertion that the Sixth Circuit has already decided that BCBSM acts as an ERISA fiduciary when administering self-funded plans.

Yet, "[t]he Supreme court has recognized that ERISA 'defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over [a] plan.'" *DeLuca*, 628 F.3d at 747 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)) (emphasis and brackets in *Deluca*). Accordingly, "in determining liability for an alleged breach of fiduciary duty in an ERISA case, the courts 'must examine the conduct at issue to determine whether it constitutes 'management' or 'administration' of *the plan* giving rise to fiduciary concerns, or merely a business decision that has an effect on an ERISA plan not subject to fiduciary standards." *Id.* (quoting *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702 (718) (6th Cir. 2000) (emphasis in *DeLuca*). Here, the system-wide business decisions that Tiara Yachts identifies plainly fall into the latter category. As Tiara Yachts' own allegations recognize, it's the way BCBSM ran its overall claims processing operation, not specific decisions made about the Tiara Yachts' sponsored Plan in particular, that are at the root of the claimed problems. The Court thus determines that Tiara Yachts has not stated a *Twombly*-plausible claim that BCBSM acted as a fiduciary with respect to

11

the claims processing complaints at issue here. The remedy for any mistake BCBSM made is in contract.

Beyond that, the Complaint is sparse on alleged facts that would make up a fiduciary duty and breach. Tiara Yachts suggests there is a possibility that BCBSM's claims processing system meant that it processed Tiara Yachts' claims with improper codes or clinical edits, but it has not identified any actual claim that BCBSM paid out that suffers from these alleged deficiencies. This is too speculative a basis on which to proceed, and it again relies on an alleged systemic business practice, not a discrete discretionary call. Principles of *Twombly* and *Iqbal* require more for a viable fiduciary duty claim.

### B. Claims Data

The same result follows with respect to the Tiara Yachts' claims regarding claims data. As BCBSM points out, Tiara Yachts' complaint here is largely based on conjecture. It asserts, for example, that "Tiara Yachts' claim data should reflect all information necessary to ascertain whether a claim was properly processed and/or paid. To the extent it does not, BCBSM's failure to collect and/or maintain such data would itself be a breach of fiduciary duty." (Compl. ¶ 92, ECF No. 1, PageID.13). The Complaint then proceeds to explain what the data deficiencies "may" include, such as missing provider and payee information, claims that are altogether missing, or claims that have financials that do not reconcile. (*Id.* at ¶ 93).

These assertions fail to meet Rule 8's pleading requirements and the "sufficient facts" necessary to survive a Rule 12(b)(6) motion under *Twombly*. "The ability to plead hypothetically is not so broad as to allow a plaintiff to sue for a hypothetical injury[.]" § 1282 *Alternative and Hypothetical Pleading*, 5 FED. PRAC. & PROC. CIV. § 1282 (4th ed.). Yet this is what Tiara Yacht's Complaint does here. Quoting from circuit caselaw, Tiara Yachts contends *Twombly* and *Iqbal*'s

12

"standard 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct.]'" *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 383 (6th Cir. 2016) (quoting *Twombly*, 550 U.S. at 556). It further says that ERISA complaints must be read with some leniency, since "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Garcia v. Alticor, Inc.*, No. 1:20-cv-1078, 2021 WL 5537520, at *4 (W.D. Mich. Aug. 9, 2021). Moreover, according to Tiara Yachts, BCBSM maintains exclusive control over Tiara Yachts' claims data. Relying on cases like *Grp. 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:2-cv-1290, 2020 WL 8299592, at *1 (S.D. Tex. Nov. 9, 2020), it asserts it need not specifically identify the allegedly fraudulent claims prior to discovery.

*Grp. 1 Auto.*, however, demonstrates the differences between ERISA claims that will survive *Twombly* scrutiny and those, like this one, that do not. In *Grp. 1 Auto*, the plaintiff alleged that several indicia of fraudulent or unjustified claims appeared in some of the claims submitted to the administrator. The complaint alleged that the administrator "failed to account for one or more of these characteristics that appeared in many claims" that the administrator paid on behalf of the plaintiff. *Grp. 1 Auto., Inc.*, 2020 WL 8299592, at *3. The Complaint here makes no such assertion. It does not allege, even at a broad level, that there were data deficiencies in the claims processed by BCBSM. Rather, it depends on claims and accusations about BCBSM practices generally, and other BCBSM customers. This is not enough to pass muster under *Twombly* and *Iqbal*.

13

### C. *Shared Savings Program*

Finally, the Court concludes that BCBSM was not functioning as a fiduciary with respect to the Shared Savings Program. As an initial matter, the parties dispute whether Tiara Yachts must meet the heightened Rule 9(b) pleading standard with respect to this claim. Tiara Yachts says it does not. It contends that this argument has previously been rejected in *Comau LLC v. BCBSM*, No. 19-CV-1263, 2020 WL 7024683 (E.D. Mich. Nov. 30, 2020), where the district court concluded the plaintiff's claim that BCBSM paid inflated healthcare claims on the plaintiff's behalf did not sound in fraud. *Comau* however, did not deal with the Shared Savings Program. Here, the essential claim is that the more BCBSM mismanaged its claim processing, the more money BCBSM stood to recover. In other words, the Complaint alleges that BCBSM developed a scheme by which it intentionally paid inflated claims so that, through the Shared Savings Program, it could skim off a portion under the label of "savings." The Court agrees with BCBSM that this allegation does sound in fraud, and thus Rule 9(b) properly applies.

But whether under Rule 9 or Rule 8, the allegations in Tiara Yachts' Complaint fail to state a viable claim that BCBSM was functioning as a fiduciary here and instead are simple contractual complaints. The ASCs provided that BCBS could retain a contractually fixed percentage of 30% of recovered third-party payments as an administrative fee. In *Seaway Food Town, Inc. v. Med. Mut. Of Ohio*, 347 F.3d 610, 619 (6th Cir. 2003), the circuit held that "where parties enter into a contract term at arm's length and where the term confers on one party the unilateral right to retain funds as compensation for services rendered with respect to an ERISA plan, that party's adherence to the term does not give rise to ERISA fiduciary status unless the term authorizes the party to exercise discretion with respect to that right." The contractually agreed to Shared Savings

14

Program by BCBSM does not give to rise a fiduciary status because, like in *Seaway Food Town*, there was no BCBSM discretion in administering the program.

Tiara Yachts insists there was discretion in administrating the program, but these arguments are unavailing. For one thing, the allegations within the Complaint make clear that BCBSM did not act unilaterally. Rather, the Complaint details that the Shared Savings Program contemplates four services and the pleading goes on to describe how the first, second, and fourth services are performed by third party vendors. (Compl. ¶¶ 73-77). BCBSM can hardly be acting unilaterally under such an arrangement. Nevertheless, Tiara Yachts contends BCBSM did retain discretion sufficient to distinguish *Seaway* and to bring this case closer to those cases, like *Hi-Lex*, that have found fiduciary acts. It points to the front end of claims processing, and argues that BCBSM had unilateral control and discretion in a system in which it could knowingly pay improper claims, correct the claim, and then correct a recovery fee. The Court disagrees. There is no assertion within the Complaint that this happened to Tiara Yachts, or that claims processing and data deficiencies were tied in any way to the Shared Savings Program. This does not survive Rule 9, nor does it survive Rule 8.

### 2. ERISA Does Not Provide a Pathway for the Recovery Tiara Yachts Seeks

Even if Tiara Yachts' Complaint did allege fiduciary acts, the ERISA statute does not provide a pathway for Tiara Yachts to recover on the alleged overpayments because the funds were paid out to providers and do not relate to funds that BCBSM allegedly retained from Plan funds.

#### A. Section 1132(a)(3)

Section 1132(a)(3) provides that a civil action may be brought under ERISA—

> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress

15

> such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

Tiara Yachts cannot recover under this section for any overpayments under a straightforward reading of the statute.

In *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002), the Supreme Court made clear that "equitable relief" in Section 1132(a)(3) "must mean *something* less than *all* relief." (citing *Mertens v. Hewitt Associates*, 508 U.S. 248, 258 n.8 (1993)) (emphasis in *Great-West*). Relief under the section, then, "must refer to 'those categories of relief that were *typically* available in equity." *Id.* (citing *Mertens*, 508 U.S. at 256). The Supreme Court explained that relief in equity contemplates funds remaining in the possession of the defendant. *See id.* ("a plaintiff could seek restitution *in equity* . . . where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."). This is not the case here. The complaint is that BCBSM paid out too much money out of plan funds, not that it retained any funds in its claim processing. There is no fund of Plan money sitting out there for potential disgorgement.

Nevertheless, Tiara Yachts responds that monetary relief is available under Section 1132(a)(3) based on the Supreme Court case *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011). It says that in an ERISA claim against a fiduciary, a plaintiff may obtain "make whole" monetary compensation. The portion of *Amara* that Tiara Yachts relies on is dicta. *See Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375 n.4 (6th Cir. 2015). And it is inapplicable to this case in any event, because the remedy that Tiara Yachts seeks is not the surcharge that was at issue in *Amara*. In *Amara*, the order at issue required payments to be paid out to beneficiaries according to a reformed plan. This was, the Supreme Court found, consistent with surcharge. But this case is not a case (like those cited by Tiara) where a case is brought by a plan beneficiary against a fiduciary.

16

The beneficiaries here would not be made whole by the relief sought. They are already whole, and obtained the healthcare coverage they were owed. What Tiara Yachts wants is money back in its own accounts from its former contract partner, BCBSM. Thus the Court determines that Tiara Yachts cannot recover any monetary relief under Section 1132(a)(3) arising out of its claims for overpayments in claims processing.

Nor is any other relief available to Tiara Yachts under this statute because the parties' contractual relationship has ended and thus there is not pathway for prospective relief.

### B. 1132(a)(2)

Next BCBSM argues that Tiara Yachts—which is the Plan sponsor and not the Plan itself—cannot recover under Section 1132(a)(2). The Court agrees. Section 1132(a)(2) provides that a civil action may be brought

> by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

*Id.* Section 1109, in turn, goes on to provide that a fiduciary may be held "personally liable to make good to *such plan* any losses *to the plan* resulting from" a breach of fiduciary duty. 29 U.S.C. § 1109(a). Here, Tiara Yachts cannot recover because Section 1109 authorizes suits for relief to be awarded to an ERISA plan, and so a plan sponsor, like Tiara Yachts, cannot recover on its own behalf under Section 1109.

Tiara Yachts says it can recover under the reasoning of two cases, *Borroughs Corp. v. Blue Cross Blue Shield*, 2012 WL 3887438 (E.D. Mich. 2012) and *Guyan Int'l v. Professional Benefits Administrators, Inc.*, 689 F.3d 793 (Aug. 20, 2012). But as BCBSM persuasively demonstrates in reply, the complaints in both cases demonstrated that the sponsor, or other entity plaintiff, sought recovery on behalf of the plan. In *Guyan* for example, the plaintiffs' complaint expressly stated that action was brought on behalf of each plaintiff's respective plan. *Guyan*, 689 F.3d at 800. This

17

is not the case here.  The Complaint expressly seeks relief for Tiara Yachts, the employer, and not the Plan.  Accordingly, the Court concludes that Tiara Yachts cannot recover under this provision either.

### 3. Time Bar

Finally, BCBSM independently argues that the claims in this case are time barred.  Tiara Yachts disagrees.  In light of the Court's other rulings, it is not presently necessary to address these issues.

## CONCLUSION

Tiara Yachts self-funds an ERISA health plan for its employees.  It hired BCBSM to process and pay the claims under a series of contracts.  BCBSM did that for a dozen years until Tiara Yachts ended the arrangement in 2018.  Tiara Yachts now challenges, for the first time, the business system BCBSM used to process and pay those claims.  It did not complain during the life of the contracts or use the contractual audit procedure to check on things along the way. Tiara Yachts says it did not have to do that because these claims amount to breaches of ERISA fiduciary duties.  The Court does not agree, but even if it did, the Court would have to dismiss this action because any fiduciary duty recovery must flow to the Plan, not to the Plan sponsor.  Yet the Plan is not even a party here and all a win for Tiara Yachts would do is shift money from one contracting party to the other.  That is the function of a contract claim, not an ERISA fiduciary duty lawsuit.

**ACCORDINGLY, IT IS ORDERED** that BCBSM's Motion to Dismiss (ECF No. 11) is **GRANTED.**  This case is **DISMISSED.**

Dated:   February 27, 2023           /s/ Robert J. Jonker
                                     ROBERT J. JONKER
                                     UNITED STATES DISTRICT JUDGE