**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **TRUSTEES OF INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND and TRUSTEES OF SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, individually and on behalf of the INTERNATIONAL BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND, the SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, and all others similarly situated,** | **Civil Action No.: 3:22-cv-01541-VLB** <br><br> **The Hon. Judge Vanessa L. Bryant** <br><br> **June 20, 2023** |
| **Plaintiffs,** | |
| **v.** | |
| **ELEVANCE, INC. F/K/A ANTHEM, INC., ANTHEM HEALTH PLANS, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD, ANTHEM BLUE CROSS, EMPIRE BLUE CROSS BLUE SHIELD, and EMPIRE BLUE CROSS,** | |
| **Defendants.** | |

**REPLY IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

## TABLE OF CONTENTS

Page

**INTRODUCTION**.................................................................................................**1**

**ARGUMENT** ......................................................................................................**2**

    **I.**    **No Defendant is an ERISA fiduciary with respect to the challenged conduct**..............................................................................................**2**

        **A.**    **Defendants do not exercise discretionary authority or control respecting management of Plaintiffs' plans** ..............................**2**

        **B.**    **Defendants do not exercise authority or control over the disposition of plan assets** .........................................................**7**

    **II.**    **Even if Anthem is a fiduciary with respect to the conduct alleged, Plaintiffs still fail to state an ERISA claim** ..........................................**11**

        **A.**    **Plaintiffs do not state an ERISA claim based on alleged non-disclosure** ..................................................................................**11**

            **i.**    **Neither Trust Law Nor ERISA Supports an Unlimited Duty** ........................................................................**11**

            **ii.**    **Nothing in ERISA compels disregarding the ASAs**.......**14**

        **B.**    **Plaintiffs do not allege a violation of ERISA based on alleged overpayments**...........................................................................**16**

        **C.**    **Plaintiffs do not allege a viable prohibited transaction claim under ERISA** ...............................................................................**18**

    **III.**    **Plaintiffs lack standing and cannot state a claim because they fail to plausibly allege any harm caused by any Defendants' conduct** .......**18**

    **IV.**    **Plaintiffs lack standing and fail to state a claim against non-contracting parties**...............................................................................**20**

    **V.**    **Plaintiffs' claims should be dismissed to the extent they seek to retroactively apply relevant statutes and regulations** ........................**22**

**CONCLUSION** .................................................................................................**22**

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Allen v. Credit Suisse Sec. (USA) LLC,*
   895 F.3d 214 (2d Cir. 2018) ..................................................................... 9

*Am. Hosp. Ass'n v. Azar,*
   468 F. Supp. 3d 372 (D.D.C. 2020)......................................................... 17

*Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein,*
   107 F.3d 139 (2d Cir. 1997) .................................................................... 13

*Beddall v. State Street Bank & Trust Co.,*
   137 F.3d 12 (1st Cir. 1998) ....................................................................... 8

*Bell v. Pfizer, Inc.,*
   626 F.3d 66 (2010) ................................................................................... 8

*Calemine v. Gessell,*
   2008 WL 4500340 (E.D.N.Y. Oct. 6, 2008) ............................................ 14

*Carfora v. Tchrs. Ins. Annuity Ass'n of Am.,*
   2022 WL 4538213 (S.D.N.Y. Sept. 27, 2022) ..................................... 8, 16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
   433 F.3d 181 (2d Cir. 2005) .................................................................... 19

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,*
   472 U.S. 559 (1985)................................................................................ 12

*Curtis v. Aetna Life Ins. Co.,*
   2023 WL 34662 (D. Conn. Jan. 4, 2023) ............................................... 21

*In re Express Scripts/Anthem ERISA Litig.,*
   285 F. Supp. 3d 655 (S.D.N.Y. 2018) ................................................. 4, 13

*Faircloth v. Lundy Packing Co.,*
   91 F.3d 648 (4th Cir. 1996)..................................................................... 13

*Gonzalez v. Northwell Health, Inc.,*
   2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) .................................. 17, 19

*Guyes v. Nestle United States Inc.,*
   2022 WL 18106384 (E.D. Wis. Nov. 21, 2022) ...................................... 18

*Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
302 F.3d 18 (2d Cir. 2002) ................................................................. 4

*Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*,
751 F.3d 740 (6th Cir. 2014) .............................................................. 7

*Lafarge N. Am., Inc. v State St. Bank & Tr. Co.*,
2008 WL 4534185 (E.D. Va. Oct. 6, 2008) ........................................ 13

*Lewis v. Casey*,
518 U.S. 343 (1996)............................................................................. 20

*Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*,
982 F.2d 1031,1035 (6th Cir. 1993) .................................................. 12

*Lines v. Hartford Fin. Servs. Grp., Inc.*,
2022 WL 408820 (D. Conn. Feb. 10, 2022) ....................................... 22

*Long Island Neurological Assocs., P.C. v. Highmark Blue Shield*,
375 F. Supp. 3d 203 (E.D.N.Y. 2019) ................................................ 15

*Magsig v. Magsig*,
191 A.3d 1053 (Conn. App. Ct. 2018) ................................................ 16

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012) ................................................................. 20

*In re Managed Care Litig.*,
185 F. Supp. 2d 1310 (S.D. Fla. 2002) ........................................ 2, 13

*Mario v. P & C Food Markets, Inc.*,
313 F.3d 758 (2d Cir. 2002) .............................................................. 15

*Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*,
66 F.4th 307 (1st Cir. 2023)........................................................*passim*

*N.Y. State Nurses Ass'n Benefits Fund Through Buchanan v. Nyack Hosp.*,
46 F.4th 97 (2d Cir.2022) .................................................................. 12

*Negron v. Cigna Health & Life Ins.*,
300 F. Supp. 3d 341 (D. Conn. 2018)................................................. 2

*N.Y. State Teamsters Conf. Pension & Ret. Fund v. Boening Bros., Inc.*,
92 F.3d 127 (2d Cir. 1996) ................................................................ 12

*Peters v. Aetna Inc.*,
   2 F.4th 199 (4th Cir. 2021)..................................................... 6

*Rosenberg v. McCarthy, Burgess & Wolff, Inc.*,
   2022 WL 3030390 (E.D.N.Y. Aug. 1, 2022) ............................. 19

*Scott v. Aon Hewitt Fin. Advisors, LLC*,
   2018 WL 1384300 (N.D. Ill. Mar. 19, 2018)............................. 18

*Sewell v. 1199 Nat. Ben. Fund for Health & Human Servs.*,
   187 F. App'x 36 (2d Cir. 2006) ............................................... 13

*Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*,
   494 F. App'x 129 (2d Cir. 2012) ............................................... 8

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
   843 F.3d 561 (2d Cir. 2016) ................................................... 19

*United Teamster Fund v. MagnaCare Admin. Servs., LLC*,
   39 F. Supp. 3d 461 (S.D.N.Y. 2014) ....................................... 19

*Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*,
   2008 WL 11510367 (D.N.J. May 9, 2008) ................................. 6

*Whitfield v. Tomasso*,
   682 F. Supp. 1287 (E.D.N.Y. 1988)......................................... 13

## Statutes & Regulations

29 U.S.C. § 1002(21) ................................................................ 7, 8

ERISA § 406, 29 U.S.C. § 1106 .................................................... 18

ERISA § 724, 29 U.S.C. § 1185m.......................................... *passim*

2 C.F.R. § 2509.75-8(D-2)............................................................ 8

## Other Authorities

CMS, *Hospital Price Transparency Frequently Asked Questions* 9
   (Nov. 29, 2022), https://www.cms.gov/files/document/hospital-
   price-transparency-frequently-asked-questions.pdf ........................ 16

## INTRODUCTION

Defendants are not fiduciaries of Plaintiffs' plans with respect to the challenged conduct.  To argue otherwise, Plaintiffs rely on Anthem BCBS-CT's allegedly discretionary control over the provider reimbursement arrangements used to calculate in-network rates for Plaintiffs' members' reimbursement claims.  But those arrangements are business-wide practices that cannot be the source of fiduciary duties owed to Plaintiffs' plans, as even they acknowledge.  *See* Pls.' Opp. at 11, ECF No. 66 ("Opp.").  Setting aside those business-wide practices, the relevant function is deciding whether to apply Anthem BCBS-CT's in-network rate or some other rate to Plaintiffs' claims.  The parties' contract leaves no discretion: Anthem BCBS-CT must apply the in-network rate.  As the First Circuit recently confirmed, a contractual mandate to use in-network rates cannot trigger fiduciary status.  *See Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 319-320 (1st Cir. 2023) (no fiduciary status where "BCBSMA was afforded no discretion to deviate from [negotiated] rates").  Similarly, the act of transferring funds from Plaintiffs' accounts in a contractually mandated amount, after Plaintiffs have determined eligibility for reimbursement, does not amount to "authority" or "control" over the disposition of plan assets sufficient to trigger fiduciary status.  *Id.* at 326-27.  Plaintiffs' entire case should be dismissed on this basis alone.[1]

---

[1]  Plaintiffs claim that the ASAs from Defendants' business records attached to Defendants' Motion are not authentic, but refuse to provide the Court with what they contend are the correct versions (Opp. 2, 10 & n. 6), despite relying extensively on those documents in their Complaint and Opposition.  Plaintiffs' "heads I win, tails you lose" strategy fails to save their claims, because Plaintiffs cannot identify

The Complaint also fails to state any ERISA claim because Plaintiffs do not identify an ERISA duty that was allegedly breached (Section II); cannot establish Article III standing against any Defendant (Section III); have no case against Defendants other than Anthem BCBS-CT (Section IV); and do not state claims for relief prior to ERISA § 724's effective date.

**ARGUMENT**

I.   **No Defendant is an ERISA fiduciary with respect to the challenged conduct.**

   A. **Defendants do not exercise discretionary authority or control respecting management of Plaintiffs' plans.**

Not every service provider exercises discretionary authority or control over management of a health plan sufficient to trigger functional fiduciary status. Where a service provider, in performing its obligations for a particular function, can select from a range of options permitted by a contract, or is given authority by the plan sponsor to interpret plan documents, it may exercise the discretionary authority or control that confers fiduciary status. *See Negron v. Cigna Health & Life Ins.*, 300 F. Supp. 3d 341, 355–57 (D. Conn. 2018) (fiduciary status where contract granted discretionary authority regarding "the computation of any and all benefit payments," in contrast to merely conducting "instantaneous calculations" according to mandatory plan terms). But where a service provider is obligated to adhere to specific contract terms for the function it performs, it is not acting as a fiduciary of the plan when performing that function. As the First Circuit recently

---

__any__ material differences between the ASAs that Defendants provided and the versions that Plaintiffs claim should govern. Plaintiffs claim their versions describe a different payment process, but even assuming that is right, that process still does not trigger fiduciary status. *See infra* § I.B.

observed in a comprehensive survey of the relevant case law, service providers that are contractually bound to price and pay claims according to their in-network rates lack discretionary authority or control regarding plan management and thus are not functional fiduciaries as to that conduct. *Mass. Laborers'*, 66 F.4th at 319-20. Here, BCBS-CT is a service provider that must adhere to specific terms of the Parties' Administrative Services Agreement ("ASA") governing pricing and payment. Because BCBS-CT did not have Plan-specific discretion under the ASA to take any of the actions alleged in the Complaint, Anthem BCBS-CT is not a functional fiduciary under ERISA. *See* Defs' Mem. in Supp. of Mot. to Dismiss at 14-21, ECF No. 41-1 ("Mot.").

Despite their best efforts to describe Defendants' pricing function as discretionary, Plaintiffs cannot identify any aspect of that function over which Defendants have plan-specific discretion under the contract. *See* Opp. 10-17. At bottom, they take issue with conduct that is (1) specifically required under the bargain Plaintiffs struck in their ASA; and (2) a product of the rates that Anthem BCBS-CT previously negotiated with providers for use across its business. But these functions are not discretionary—and thus, not fiduciary—as a matter of law.

This case is on all fours with *Mass. Laborers' Health & Welfare Fund*, in which the First Circuit dismissed the plaintiff's ERISA claims against another Blue Cross Blue Shield licensee, holding that allegations about repricing claims did not constitute discretionary authority or control. 66 F.4th at 320. There, as here, the service provider "appl[ied] payment rates according to schedules that had already been negotiated with providers" as mandated by the parties' ASA. *Id.*; *see* Compl.

3

¶ 1 (alleging Defendants are "disregarding the contractual provisions governing [their] claim administration" by "not uniformly applying [their] negotiated discount").  And there, as here, the plaintiffs "retained full authority over eligibility determinations."  *Mass. Laborers*, 66 F.4th at 320; *see also* Compl. ¶¶ 49, 57; Mot. Exs. A & B at Art. 2.a. (requiring Anthem BCBS-CT to "[p]rice claims received by Anthem and transmit them electronically to Fund" and then "[d]isburse to Providers and Vendors payments that Fund determines to be due").  This Court should likewise find that Anthem BCBS-CT cannot be deemed a functional fiduciary under ERISA with respect to that alleged conduct.[2]

Plaintiffs' own characterization of the relevant conduct gives the game away. They assure the Court that they "have not challenged Anthem's reimbursement arrangements with its providers."  Opp. 11.  But all of Plaintiffs' attempts to portray Defendants' puported functions as discretionary focus on exactly that.  Plaintiffs repeatedly claim that Defendants exercise discretion because they "control[] all aspects of [their] relationship with network providers,"  and because their "repricing" (i.e., calculating the "amount the Funds pay") is "based on [their] own

---

[2] Plaintiffs cite *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 29 (2d Cir. 2002) for the general proposition that a contract *can* delegate discretionary authority that triggers fiduciary status, Opp. 15-16, but the actual holding in that case supports Defendants' position: The court there observed that, as here, the "[c]ontract stripped [the service provider] of any discretionary authority it might otherwise have had" and thus the service provider was not a fiduciary.  *Id.*  Similarly, *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 680 (S.D.N.Y. 2018), *see* Opp. 15 n.10, *rejected* an argument similar to Plaintiffs' argument here that a service provider's "control over pricing" meant that it had discretion "to control its own compensation."  *Id.*

contracts and internal policies." *Id.*[3]   Defendants' provider contracts and reimbursement policies that apply across their business, however, are not specific to the Plaintiffs and therefore cannot trigger fiduciary status.  *See* Mot. 16-17; *Mass Laborers*, 66 F.4th at 322 ("[B]roader business decisions that simply <u>affected</u> the Plan and its participants" cannot confer fiduciary status.) (emphasis in original).

When Defendants' provider reimbursement arrangements are properly set aside, what is left is a simple pricing decision:  Whether to apply Anthem BCBS-CT's negotiated in-network rate or some other rate to a claim for covered services rendered to Plaintiffs' members.  For that decision, the parties' contracts leave no discretion.  Anthem BCBS-CT must apply its in-network rate to claims for in-network providers.  *See* Compl. ¶ 1.  Defendants' pricing of claims therefore does not trigger fiduciary status.  *See Mass Laborers*, 66 F.4th at 320 (no fiduciary status where "BCBSMA was afforded no discretion to deviate from [negotiated] rates"); Mot. 17-20 (collecting cases holding that executing mandatory contract term does not confer fiduciary status).

Plaintiffs' Opposition further clarifies that the crux of their case is the allegation that Anthem BCBS-CT did not reach the "correct" outcome—the in-network rate—when pricing certain claims.  *E.g.*, Opp. 21.  Even if true (which Defendants dispute), when an ERISA plaintiff contends a service provider failed to reach the correct outcome, or has "failed to inquire why a provider charged" a procedure in a particular way, that is a claim that the service provider "allegedly

---

[3] *See also id.* at 14 (Defendants "exercise[] substantial discretion in repricing claims depending on its own contracts and policies") and 21 (similar).

failed to follow straightforward contractual obligations." *Mass Laborers*, 66 F.4th at 321. That is a contract claim; it does not show that the service provider had *discretion* to independently reach a different conclusion regarding the claim's payment. Plaintiffs' argument that Anthem BCBS-CT has discretion "confuses the complexity of the [issues] involved with the question of whether [Anthem BCBS-CT] had discretion" with respect to pricing or payment. *Id.*

Finally, Plaintiffs' argument that Anthem BCBS-CT "manipulates the claims process to pay itself unauthorized and hidden fees" and therefore should be considered a fiduciary, Opp. 16-17, is pure speculation and is unsupported by any plausible allegation in the Complaint. *See* Compl. ¶¶ 1, 78, 92 (speculating that Anthem BCBS-CT might be "either skimming a portion of the allowed amount off the top . . . or it is imprudently paying certain claims at rates higher than the publicly available negotiated rate"); *see also* Mot. 32-36 (explaining why Plaintiffs' conclusory allegation of self-dealing is not plausible). Moreover, the cases Plaintiffs cite on their hidden-fee point are inapposite: they either involved (1) fees imposed not as an outgrowth of a claims pricing system, but rather as direct violations of a contractual obligation;[4] or (2) situations in which a defendant discretionarily selected fees from a range of options on some self-funded

---

[4] The Fourth Circuit confronted this situation in *Peters v. Aetna Inc.*, 2 F.4th 199 (4th Cir. 2021). Applying different Plan language, *Peters* found that a specifically alleged scheme by a health care plan to pass on hidden fees presented a genuine issue of material fact as to its breach of fiduciary duty. *Id.* at 230-32, 235-36. Plaintiffs cannot point to a specific violation of a comparable duty here. Indeed, as discussed *infra* Section II.A.ii., the parties' ASAs are not Plan documents at all.

customers while waiving them for others.[5]   Neither circumstance, or any other plausible self-dealing, is alleged here.  The Court should reject Plaintiffs' attempt to expand ERISA fiduciary duty claims to cover any allegation that a party violated a mandatory contractual term.

If Plaintiffs believe they are not receiving the benefit of what they bargained for under their ASAs, they may turn to contract law.  But taking the allegations as true, Plaintiffs allege nothing that shows Anthem BCBS-CT has exercised discretionary authority or control for the at-issue conduct alleged in the Complaint. Imposing fiduciary status for these pricing functions, moreover, will upset negotiated arrangements between health plans and service providers like Anthem BCBS-CT, increase the cost of administrative services to health plans, and ultimately harm health plan participants and beneficiaries.  *See Mass Laborers',* 66 F.4th at 328-29 (analyzing implications of imposing fiduciary duties on service providers performing similar functions).

**B.  Defendants do not exercise authority or control over the disposition of plan assets.**

Even if the Plaintiffs' bank accounts are plan assets, Plaintiffs have not plausibly alleged that Defendants exercised any "authority or control" respecting disposition of plan assets.   29 U.S.C. § 1002(21)(A)(i).   Rather, Anthem-BCBS

---

[5] This was the case in *Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Mich.*, 751 F.3d 740, 744, 748 (6th Cir. 2014).  And in *Wayne Surgical Ctr., LLC v. Concentra Preferred Sys., Inc.*, 2008 WL 11510367 (D.N.J. May 9, 2008), a unpublished, out-of-circuit case, rather than applying the plan's pricing criteria (previously negotiated in-network), the defendant "play[ed] an active role in determining the methodologies and parameters underlying the repricing scheme."  *Id.* at *4.  Here, the contract mandates that Anthem apply an in-network rate.

performs mechanical, administrative tasks—causing transfers from Plaintiff-controlled accounts according to Plaintiffs' claim approvals and mandatory contractual payment amounts.  Fiduciary status does not attach to that conduct under ERISA.  *See*, *e.g.*, *Bell v. Pfizer, Inc.*, 626 F.3d 66, 74 (2010) ("[M]inisterial tasks with respect to the plan, such as the <u>application</u> of rules determining eligibility for participation . . . [or] the calculation of benefits" does not trigger fiduciary status.) (emphasis added); *Beddall v. State Street Bank & Trust Co.*, 137 F.3d 12, 18, 20 (1st Cir. 1998) (holding, in case involving "retaining [] assets and keeping a record of their value," that "the mere exercise of physical control or the performance of [such] mechanical administrative tasks generally is insufficient to confer fiduciary status").  Indeed, the Department of Labor's guidance on fiduciary status makes clear that performing "ministerial functions" does not amount to an exercise of "authority or control respecting . . . disposition of the assets of the plan."  2 C.F.R. § 2509.75-8(D-2); *see also, e.g., Tocker v. Kraft Foods N. Am., Inc. Ret. Plan*, 494 F. App'x 129, 131 (2d Cir. 2012) (declining to extend fiduciary status for performance of "ministerial tasks" including "calculating pension benefits"); *Carfora v. Tchrs. Ins. Annuity Ass'n of Am.*, 2022 WL 4538213, at *17-18 (S.D.N.Y. Sept. 27, 2022) (ERISA fiduciary duty provisions "evince[] a concern with more consequential, plan-level decision-making").

Plaintiffs' argument conflates Anthem BCBS-CT's pricing function with "authority or control over disposition of plan assets."  29 U.S.C. § 1002(21)(A)(i); *see, e.g.*, Opp. 21 (arguing that Defendants exercise authority or control because "Anthem has complete control to determine the amount to be paid").  But

8

"determining the <u>amount</u> of plan assets to be paid" is different than "controlling

the actual <u>payment</u>"—*i.e.*, the disposition of plan assets.  *Mass. Laborers*, 66 F.4th

at 326 (emphases in original).  As to the actual payment of plan assets, a service

provider like Anthem BCBS-CT does not exercise "authority or control" unless it

"has the ability to convey plan funds unilaterally."  *Id.* at 327.  If the service provider

cannot dispose of plan assets without first obtaining approval of the plan's

trustees, for example, it is likely not a functional fiduciary.  *Id.*[6]  That is true even if

the funds in question are held in the service provider's own accounts.  *Id.* at 328

(finding Blue Cross Blue Shield administrator lacked authority or control even

where it maintained a "working capital account" containing plan assets).

　　Here, as to the actual payment of plan assets, Defendants have no authority

or control to transfer plan funds without the Plan's approval.  That is true even

according to Plaintiffs' description of the payment process, which they claim—

without supporting documentation—is slightly different that the method outlined

in the ASAs attached to Defendants' Motion.  *See* Opp. 19.[7]  The Complaint's

allegations make clear that the ASAs give the Plaintiffs full control over claims

---

[6] *See also Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 224 (2d Cir. 2018)
(declining to find fiduciary status because "the relationship here was
'salesmanship,' with defendants 'matching the customer's desires'—as conveyed
by their investment managers—'with available inventory,' but otherwise lacking
'authority to exercise control unilaterally over a portion of a plan's assets'"
(quoting *Farm King Supply, Inc. Integrated Profit Sharing & Tr. v. Edward D. Jones
& Co.*, 884 F.2d 288, 292 (7th Cir. 1989)).

[7] Plaintiffs' assertion that the funds receive only a monthly aggregate statement of
claims payments, Opp. 19, has no supporting citation or corresponding allegation
in the Complaint.  In any event, even taken at face value, it does not change the
pertinent fact that Plaintiffs must first approve a claim before Anthem BCBS-CT
may pay the claim from Plaintiffs' accounts.

eligibility and benefit determinations and they must approve a claim before Anthem BCBS-CT can transmit claim payments (in the contractually mandated amount). *See* Compl. ¶¶ 49, 57.  In other words, Anthem BCBS-CT cannot unilaterally decide to disburse plan assets to a provider.  And after Plaintiffs determine eligibility authorizing payment, there is no authority or control left for Anthem BCBS-CT to wield.  Anthem BCBS-CT <u>must</u> cause the plans' bank accounts to pay providers in the amount mandated by contract—for in-network services, in the amount of Anthem BCBS-CT's negotiated in-network rates.  That is a ministerial function that does not rise to the level of authority or control triggering fiduciary status.

The First Circuit addressed a similar arrangement in *Mass Laborers*.  The service provider in *Mass. Laborers* similarly "repriced each claim according to its provider network rates."  66 F.4th at 326.  Because the service provider "could make claim payments only with the Fund's authorization," the *Mass. Laborers* Court found that the service provider "lacked authority respecting the disposition of the working capital amount."  *Id.* at 327.  Anthem BCBS-CT likewise does not unilaterally convey plan funds; Anthem BCBS-CT makes a claim payment if—and only if—the plans have adjudicated and approved the claim's as payable under the plan. *See* Compl. ¶¶ 49, 57.[8]

Plaintiffs do not plausibly allege that Anthem BCBS-CT stepped in and exercised control over plan assets, and they cannot shoehorn Anthem BCBS-CT's

---

[8] Plaintiffs fail to distinguish the depository bank cases, *see* Opp. 27 and Mot. 21, for the same reason: Anthem BCBS-CT makes payments according to specific terms in the parties' contract and only pays designated parties (providers) according to the specified in-network rate.

ministerial duty to cause a plan account to be debited after a plan has approved a claim for payment into an exercise of "control."  *See Mass. Laborers*, 66 F.4th at 325-26 ("[T]he act of repricing claims was not itself an exercise of authority over the 'disposition' of the working capital amount.").

## II.   Even if Anthem BCBS-CT is a fiduciary with respect to the conduct alleged, Plaintiffs still fail to state an ERISA claim.

Plaintiffs improperly seek to transform their apparent frustration with negotiated terms of the ASA into an ERISA action.  The Opposition (like the Complaint) amounts to little more than cherry picked pieces of data, devoid of any context, and pays little attention to the actual text of either ERISA or the ASA.

### A.   Plaintiffs do not state an ERISA claim based on alleged non-disclosure.

Plaintiffs assert that Defendants breached ERISA fiduciary duties by failing to give access to claims data, but they cannot point to any specific provision of ERISA mandating the requested disclosures.  Mot. 28-30.  Notably, Plaintiffs readily admit that "ERISA does not specify the types of documents a plan fiduciary is required to disclose to its co-fiduciaries."  Opp. 26.  Because they cannot find a duty to disclose the information they seek in either the ASA or ERISA, they set out to invent an unlimited freestanding duty of disclosure instead.  Opp. 23-33.  Such a duty is unsupported and improper as a matter of statutory interpretation.

#### i.   Neither Trust Law Nor ERISA Supports an Unlimited Duty.

The Opposition tries to source a disclosure duty in trust law.  *See* Opp. 22-26.  But missing from Plaintiffs' analogy to a trustee's duty of disclosure is the fact that Plaintiffs explicitly and freely defined the scope of such disclosure rights by contract.  *E.g., id.* at 23 (arguing without regard to the ASAs that trust law requires

11

"all such powers as are necessary for the carrying out of the purposes of the trust"). Courts have never held that contractual limitations on disclosure can be ignored. Indeed, the very cases cited by Plaintiffs demonstrate that to assess the scope of disclosure rights and obligations, courts look *first and foremost* at the relevant agreements.[9]  *See Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 568 (1985) (giving "significant weight" to fact that trust documents authorized access to the records in dispute); *N.Y. State Nurses Ass'n Benefits Fund Through Buchanan v. Nyack Hosp.,* 46 F.4th 97, 106 (2d Cir.2022) (stating that the Court was required "to analyze first the language of the Trust Agreement to which both the Fund and Nyack are bound in order to determine whether the audit is within the scope of what is permitted under the Trust Agreement.").[10]  Here, Plaintiffs have failed to plausibly allege that the many avenues for obtaining information on Anthem BCBS-CT's claims-processing negotiated in the parties' contract are insufficient to meet Plaintiffs' monitoring duties under trust law or ERISA. Mot. 26-28, 30-31.[11]  Thus, Plaintiffs have failed to show that any <u>additional</u> disclosure right is "necessary" here.

---

[9] Indeed, *Central States* specifically noted that it was *not* determining whether ERISA would independently confer a right to perform an audit in the face of documents—in that case trust documents—that "explicitly limit the audit power of trustees." 472 U.S. at 581.

[10] *N.Y. State Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d 127, 132-33 (2d Cir. 1996) and *Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio,* 982 F.2d 1031,1035 (6th Cir. 1993) are inapposite because as the courts in both cases observed, the relevant agreements there did not address an audit right *at all*. Moreover, *Libbey-Owens-Ford Co.* did not recognize the absolute, unlimited audit right that Plaintiffs assert here. *Id.* at 1036 ("Libbey-Owens-Ford is entitled to review *a* <u>reasonable number</u> of Blue Cross' financial records for the plan <u>within reasonable time limits</u>.") (emphases added).

[11] Plaintiffs allege that the their duties to (1) monitor the plan's solvency and adjust

Plaintiffs' attempt to source an unfettered disclosure duty to general fiduciary duties under trust law or ERISA also fails as a matter of statutory interpretation.  The Second Circuit has held that ERISA's general fiduciary duties under Section 404 do not mandate disclosure that is not otherwise provided for in other parts of the statute.  Mot. 29-30 (citing *Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein,* 107 F.3d 139, 146 (2d Cir. 1997) and *Express Scripts*, 285 F. Supp. 3d at 675).  Plaintiffs do not address *Express Scripts* at all, and their attempt to distinguish *Weinstein* as limited to disclosure to plan participants is unavailing.  *See* Opp. 26-27.  The holding of *Weinstein* is based on a fundamental principle of statutory interpretation: that "specific statutes govern general statutes."  *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir. 1996) (cited by *Weinstein*, 107 F.3d at 147).  Courts apply the same principle in the context of disclosures between other parties involved in an ERISA plan.  *See*, *e.g.*, *Lafarge N. Am., Inc. v State St. Bank & Tr. Co.*, 2008 WL 4534185 (E.D. Va. Oct. 6, 2008), *rev'd on other grounds,* 2008 WL 5101807 (E.D. Va. Nov. 25, 2008) (dismissing claim

---

plan benefit levels; (2) ensure the plan receives all funds to which it is entitled; and (3) ensure the plan's expenses are not excessive, are impeded by lack of access to claims data, but fail to allege how the avenues for obtaining that information under the ASA are inadequate.  Plaintiffs cite only inapposite authority involving specific allegations of self-dealing.  *See Sewell v. 1199 Nat. Ben. Fund for Health & Human Servs.,* 187 F. App'x 36, 41 (2d Cir. 2006) (provider upcoded bills without regard to the codes for the service actually provided); *Whitfield v. Tomasso,* 682 F. Supp. 1287, 1302 (E.D.N.Y. 1988) (hiring a company with no history or corporate existence in order to launder money).  Plaintiffs also cite to *In re Managed Care Litig.,* 185 F. Supp. 2d 1310, 1326 (S.D. Fla. 2002), *amended,* 2002 WL 1359736 (S.D. Fla. Mar. 25, 2002), which they claim shows that allegations concerning gag clauses may violate ERISA, depending on the contours of those contractual provisions. But even that out-of-circuit case—addressing provisions different than those challenged here—explicitly noted that fiduciaries had no duty to disclose the proprietary methodology behind its financial arrangements.  *Id.* at 1334.

based on alleged general trust duty to disclose financial information beyond the information specifically required under ERISA).  Plaintiffs repeatedly contend that ERISA § 724 <u>does</u> impose specific reporting on fiduciaries, just as Congress did for plan participants.  *See, e.g.*, Opp. 26, 27.  Those specific disclosure obligations preclude additional requirements drawn from a more general trust or ERISA duty.[12]

### ii.  <u>Nothing in ERISA compels disregarding the ASAs.</u>

Plaintiffs argue that the ASA's provisions are invalidated by ERISA § 724, but fail to rebut Anthem BCBS-CT's arguments that (1) Section 724 does not impose obligations <u>on Anthem BCBS-CT</u> in its service provider role[13] and (2) that even if it did, the requirements prior to disclosure in the ASA are *consistent* with Section 724.[14]  *See* Mot. 23-28.  And Plaintiffs have not alleged why the contractual processes for data reporting and audits that they negotiated and have relied on for several years would "prevent a proper administration of the trust."  Opp. 28-30.  That proposition is highly questionable as it is tantamount to an admission that

---

[12] Plaintiffs cite *Calemine v. Gessell,* 2008 WL 4500340, at *6 (E.D.N.Y. Oct. 6, 2008) as purportedly establishing a duty on fiduciaries to account for payments of plan assets improperly transferred, but that case involved dispossession of assets to evade a judgment, where the right to an equitable accounting is well established; the holding was not based on a duty of disclosure.

[13] Plaintiffs argue that Anthem has conceded it is bound by § 724 based on a provider newsletter and FAQs on "gag clauses" (not referenced in the Complaint). Opp. 29-30.  But all those FAQs say is that Anthem will "comply with applicable law."  *Id.* And, that Anthem warned providers certain data could be given to plans says nothing about whether data, particularly in large volumes, can still reflect proprietary information under the ASAs that warrants "reasonable restrictions" contemplated by § 724.  The law does not require the disclosure Plaintiffs demand, free of any contractual restrictions.  Mot. 25-26.

[14] Plaintiffs' reliance on the Department of Labor ("DOL") guidance on § 724 also is misplaced.  Opp. 28.  The guidance does not expand on the plain reading of the statutory language and the key portion reiterates that a plan or issuer to certify compliance "as provided under the statute."  Opp. 33 (citing DOL FAQs).

Plaintiffs have not been adequately monitoring the plans for over a decade.  At bottom, Plaintiffs cannot plausibly allege how signing a confidentiality agreement, articulating an intended use so that Anthem BCBS-CT can evaluate whether the data requested is for an improper use such as competing with it, or working with any number of non-contingency auditors, "prevents" the proper administration of the trust.

As a last ditch effort, Plaintiffs fall back on tortured readings of the ASA to attempt to source a disclosure obligation.  Opp. 30-32.  But Plaintiffs overreach in arguing that the ASA constitutes a "plan document," the violation of which gives rise to an ERISA claim.  *See Long Island Neurological Assocs., P.C. v. Highmark Blue Shield*, 375 F. Supp. 3d 203, 207-208 (E.D.N.Y. 2019) (collecting cases and joining "consensus that an ASA is not an ERISA plan document").[15]  In any event, the most that Plaintiffs can point to is language indicating that "data elements and information" are described as joint property, but Plaintiffs acknowledge that the parties <u>specifically exempted</u> "proprietary information . . . belonging to either of them."  *See* Opp. 31.  Plaintiffs also rely on language that the "ownership interest of each party shall be free from any control or interference of the other party in the use of such data elements and information" and that the ASA "shall [not] impair or limit a Party's right to use and disclose its information for its own lawful business purposes."  *Id.*  But as noted, the ASA specifically disclaims any property interest in Anthem BCBS-CT's proprietary information, so there is no "ownership interest"

---

[15] *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758 (2d Cir. 2002), assumed, but did not decide, that the ASA was a plan document because the plan document referred to it.

to interfere with,[16] and Plaintiffs cannot credibly claim that insisting on adherence to the ASA's provisions prior to disclosing *Anthem's* information interferes with its rights to disclose *its* information.  Importantly, Plaintiffs' reading would render meaningless the specific disclosure rights specified elsewhere in the ASA.  *See Magsig v. Magsig*, 191 A.3d 1053, 1065 (Conn. App. Ct. 2018) ("[E]very provision of contract must be given effect if it can be done reasonably.").

      B. <u>Plaintiffs do not allege a violation of ERISA based on alleged overpayments.</u>

      As Plaintiffs appear to acknowledge, and as the cases they cite explicitly state, claims are not plausibly pleaded if there is an obvious alternative explanation.  *See* Opp. 37.  Here, Plaintiffs have failed to persuasively rebut the obvious alternative explanations for what Plaintiffs allege were overpayments: the published rates that they rely on are not <u>expected</u> to match the prices on individual claims.  For example, ignoring that hospitals themselves have issued disclaimers that published charges do not reflect the actual cost of care, *see* Mot. 32-33, Plaintiffs allege that since a DRG code was used, there is no justification for a discrepancy between the negotiated rate and the hospital rate.  Opp. 38.  But November 2022 FAQS from the DOL clearly provide that even within a DRG code, a hospital may still adjust by a multiplier to address severity of illness ("SOI").[17]  The FAQs encourage but <u>do not require</u> the hospitals to provide further

---

[16] Applying ordinary notions of property rights, every court to have considered the issue has found that claims data is not a plan asset. *See, e.g., Carfora*, 2022 WL 4538213, at *17.

[17] CMS, *Hospital Price Transparency Frequently Asked Questions*, 9 (Nov. 29, 2022), https://www.cms.gov/files/document/hospital-price-transparency-frequently-asked-questions.pdf ("CMS FAQ").

information.   And indeed an SOI multiplier could account for the alleged discrepancy in prices that Plaintiffs purportedly observed.  *See also Am. Hosp. Ass'n v. Azar,* 468 F. Supp. 3d 372, 386 n.14 (D.D.C. 2020) ("[I]n the DRG context, the agency only required the based negotiated rate, which does not account for adjustments that may affect final payment.").[18]  Like numerous courts that have rejected complaints alleging excessive fees that fail to identify a benchmark for the <u>specific</u> services for the <u>specific</u> plan at issue, *see*, *e.g.*, *Gonzalez v. Northwell Health, Inc.*, 2022 WL 4639673, at *10 (E.D.N.Y. Sept. 30, 2022) (finding comparison of "basket of services" did not satisfy obligation to show comparison of specific services), this Court should find that the Complaint here fails to plausibly allege overpayments because it fails to compare apples to apples.

Plaintiffs also contend that the published hospital rates are unlikely to be outdated because 2022 was the first year they were required to post standard charges for "all items and services."  Opp. 39.  But large amounts of information were already required to be displayed as of January 1, 2021.  *See* CMS FAQ at 2 Further, cost data could well be outdated within the same year, depending on the cadence of relevant contract renewals setting new rates.  Finally, Plaintiffs all but concede that the allegations identifying discrepancies based on "limited claims data" <u>for some Plaintiffs'</u> members cannot support a plausible inference that Anthem BCBS-CT did not comply with "the overall 50% discount" promised in the

---

[18] Plaintiffs' note 27, Opp. 38, misreads note 14 from *Am. Hosp. Ass'n* and the cited text from the Federal Register; the relevant adjustments are not limited to co-insurance and deductibles that lower costs.

respective administrative service only agreements because those guarantees are based on averages across <u>all</u> Connecticut Coalition Plans.  Opp. 1, 39.

     C.  <u>Plaintiffs do not allege a viable prohibited transaction claim under ERISA.</u>

     The Opposition also does nothing to rebut Defendants' argument that Plaintiffs ERISA § 406 claims are pure speculation.  Instead, Plaintiffs try to shift the burden to Anthem <u>to prove</u> that the terms of the alleged prohibited transactions were fair.  Opp. at 42.  Plaintiffs confuse an affirmative defense based on reasonable compensation with Defendants' point that Plaintiffs have not plausibly alleged a prohibited transaction <u>at all</u>.  *See Guyes v. Nestle United States Inc.*, 2022 WL 18106384, at \*7 (E.D. Wis. Nov. 21, 2022) (finding plaintiff had not plausibly alleged prohibited transaction claim based on payments to Nestle for "Commissioners and Fees" where there were no "non-speculative allegations as to why Nestle received those payments"); *Scott v. Aon Hewitt Fin. Advisors, LLC*, 2018 WL 1384300, at \*11 (N.D. Ill. Mar. 19, 2018) (conclusory allegations that compensation "constitutes excessive and unreasonable compensation" were speculative and therefore failed to state a claim for a prohibited transaction).  Because neither Plaintiffs' allegations of overpayments, nor their speculative allegation that the overpayments were due to Anthem's self-dealing, rise to the level of a non-speculative claim, Plaintiffs' ERISA § 406 claims must be dismissed.

III.    <u>Plaintiffs lack standing and cannot state a claim because they fail to plausibly allege any harm caused by any Defendants' conduct.</u>

     Plaintiffs do not dispute that an informational injury or a statutory violation alone cannot confer standing.  Opp. 40; *see* Mot. 43.  And Plaintiffs have not alleged facts beyond that.  With no plausibly alleged injury which rises above the level of

speculation, Plaintiffs cannot establish injury in fact.  *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.,* 843 F.3d 561, 570 (2d Cir. 2016) (affirming dismissal on standing grounds based on failure to plausibly allege losses).

Notably, Plaintiffs have pointed to no caselaw establishing injury in fact based on their theories of harm.  Plaintiffs primarily fall back on their baseless allegations of overpayments and breach of the guarantee.  As discussed *supra* Section II.B., Plaintiffs have not plausibly alleged overpayments and have all but conceded that their performance guarantee claims are baseless.  Plaintiffs' claim that they <u>could</u> be held liable for a failure to monitor, Opp. 41, is also deficient, as Courts have rejected standing based on claims of future harm from alleged potential liability for a defendant's misconduct.  *See Rosenberg v. McCarthy, Burgess & Wolff, Inc.,* 2022 WL 3030390, at *5 (E.D.N.Y. Aug. 1, 2022) (rejecting standing claim premised on contractual liability that "create[ed] a liability that Plaintiff is subject to" as speculative) (quotations & citation omitted).  Plaintiffs' *ipse dixit* claims that they were injured by spending more than they "should" have, Opp. 36, are similarly baseless.  *See Gonzalez,* 2022 WL 4639673, at *10.

Faced with the inability to plausibly allege actual monetary loss, Plaintiffs try to shift the burden to Defendants.  Opp. 41-42.  But Plaintiffs, not Defendants, bear the burden of pleading losses traceable to  a defendant's conduct in order to show standing.[19]  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 433 F.3d 181, 198 (2d Cir. 2005).  Plaintiffs' allegations that

---

[19] *United Teamster Fund v. MagnaCare Admin. Servs., LLC,* 39 F. Supp. 3d 461, 471 (S.D.N.Y. 2014) is inapposite because the only challenge was to the *amount* of damages, not the existence of damages traceable to defendants' conduct.

they were harmed by rising healthcare costs, Opp. 39, similarly fails the traceability test.   Mot. 37-38.   Lacking plausible allegations of a *traceable* injury-in-fact, Plaintiffs' claims must be dismissed.

IV.   **Plaintiffs lack standing and fail to state a claim against non-contracting parties.**

This case involves two Connecticut health plans (Plaintiffs' plans) and a Connecticut service provider (Anthem BCBS-CT).   Plaintiffs do not dispute that they have no relationship with other Defendants—Blue Cross of California or the Empire BCBS entities—which operate in California and New York.   *See* Opp. 43-46. Nor do Plaintiffs allege any action taken by any of those out-of-state entities, much less action that caused Plaintiffs an injury-in-fact.   Nevertheless, Plaintiffs contend that they have Article III standing to sue Blue Cross of California and the Empire BCBS entities on behalf of unnamed class members in other states, who may have contracted with these other entities.   *Id.*

That is wrong.   Indeed, as the Second Circuit has observed, "[n]o decision that we can discern has ever adopted such a broad interpretation of constitutional standing."   *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63 (2d Cir. 2012).   In *Mahon*, the Second Circuit held that a named plaintiff lacked Article III standing to bring class claims against defendants with whom she had no relationship, even though those defendants and the defendant that allegedly injured her pursued similar conduct and even though all defendants shared the same parent company.   *Id.* at 60, 65-66.[20]   The same is true here:   Plaintiffs lack Article III standing to sue Blue

---

[20] *See also Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not

Cross of California or the Empire BCBS entities with whom they have no relationship.[21]  Plaintiffs' claims against those entities should be dismissed.  For the same reasons, Plaintiffs fail to state a claim against any out-of-state Elevance Health entity.  *See* Mot. 40-42.

Plaintiffs similarly lack standing and cannot state a claim against Defendant Elevance Health, Inc.  Plaintiffs contend that Elevance Health, as the parent entity, may be a fiduciary under ERISA's definition even without a contract with Plaintiffs. Opp. 43.  But Plaintiffs do not allege any conduct by Elevance Health  (as opposed to Anthem BCBS-CT) that triggers fiduciary status under the statute.  All of the conduct that, according to Plaintiffs, triggers fiduciary status, including pricing claims and debiting funds from Plaintiffs' account, is conduct that <u>Anthem BCBS-CT</u> is required to carry out under its contracts with Plaintiffs.  *See, e.g.*, Opp. 10-17; Mot. Exs. A & B.  Recognizing this issue, Plaintiffs allege that Elevance Health "is responsible for all contracts" of Anthem BCBS-CT.  Opp. 43.  But that allegation is purely conclusory.  *See* Compl. ¶ 18.  The only specific allegation that Plaintiffs can offer is a cite to an Elevance Health website, which merely confirms that Anthem BCBS-CT is a subsidiary of Elevance Health—i.e. one of "Our Health Plans."  *See id.* n.2.  Status as a parent company, alone, is not sufficient to establish agency or

---

that injury has been suffered by other, unidentified members of the class . . . .") (quotations & citation omitted).

[21] The "class standing" cases that Plaintiffs rely on, Opp. 45-46, address a different issue: whether a named plaintiffs' injuries and other class members' injuries caused "*by the same defendant*[]" are sufficiently similar for the named plaintiff to represent the class.  *Curtis v. Aetna Life Ins. Co.*, 2023 WL 34662, at *5 (D. Conn. Jan. 4, 2023) (emphasis added*); see also id.* at *4 ("Aetna does not contest Curtis's standing to bring this action . . . .").

vicarious liability, much less a fiduciary relationship.  *See Lines v. Hartford Fin. Servs. Grp., Inc.*, 2022 WL 408820, at \*4 (D. Conn. Feb. 10, 2022) (dismissing claims against parent corporations where plaintiff alleged "no factual basis for his claims against [parent corporations] other than their status as the parent corporations of [subsidiaries]").[22]  The claims against Elevance Health should be dismissed.

V.  **Plaintiffs' claims should be dismissed to the extent they seek to retroactively apply relevant statutes and regulations.**

Plaintiffs do not contest that their fiduciary-duty claim should be dismissed to the extent it is based on Section 724 and seeks relief for any alleged conduct pre-dating December 27, 2020.  *See* Opp. 46; *see also* Compl. ¶ 111 (acknowledging effective date of ERISA § 724).  And Plaintiffs' assertion that its ERISA claims are not based on Section 724 or other transparency laws are belied by their continuous invocation of those provisions in the Complaint.  *See* Compl. ¶¶ 30-31, 38, 70, 74, 76, 111, & 113; Opp. 8, 27-28, 31.  The Court should dismiss Plaintiffs' claims to the extent they rely on Section 724 and seek relief prior to December 27, 2020.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion.


DATED: June 20, 2023                     Respectfully submitted,

                                          */s/ Michael G. Durham*
                                          Michael G. Durham
                                          **CARMODY TORRANCE SANDAK & HENNESSEY LLP**

---

[22] The Opposition reference to conduct by alleged Elevance Health employees relating to Plaintiffs' data request is beside the point.  *See* Opp. at 44-45.  Legal assistance relating to a data request does not amount to discretion, authority, or control over the fiduciary functions identified in the Complaint—such as pricing determinations and bank account debits.

**741 Boston Post Rd # 306**
**Guilford, CT 06437**
**Tel: (203) 458-9168**
**Fax: (203) 458-4424**
**mdurham@carmodylaw.com**

**E. Desmond Hogan (*admitted pro hac vice*)**
**Briana L. Black (*admitted pro hac vice*)**
**W. David Maxwell (*admitted pro hac vice*)**
**HOGAN LOVELLS US LLP**
**Columbia Square**
**555 13th Street, N.W.**
**Washington, DC 20004**
**Tel: (202) 637-5600**
**Fax: (202) 637-5910**
**desmond.hogan@hoganlovells.com**
**briana.black@hoganlovells.com**
**david.maxwell@hoganlovells.com**

***Counsel for Defendants Elevance Health, Inc.,***
***Anthem Health Plans, Inc., Blue Cross of***
***California, Empire HealthChoice Assurance,***
***Inc., and Empire Health Choice HMO, Inc.***

## CERTIFICATE OF SERVICE

I, Michael G. Donahue, attorney for the Defendants listed below, certify that, on June 20, 2023, I caused a copy of the foregoing to be served, via ECF, on all counsel of record.

*/s/ Michael G. Durham*

**Michael G. Durham**

***Counsel for Defendants Elevance Health, Inc., Anthem Health Plans, Inc., Blue Cross of California, Empire HealthChoice Assurance, Inc., and Empire Health Choice HMO, Inc.***

24