UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
TRUSTEES OF INTERNATIONAL :
UNION OF BRICKLAYERS AND :
ALLIED CRAFTWORKERS LOCAL 1 :
CONNECTICUT HEALTH FUND and :
TRUSTEES OF SHEET METAL :
WORKERS' LOCAL NO. 40 HEALTH :
FUND, individually and on behalf of :
the INTERNATIONAL BRICKLAYERS : **MEMORANDUM &**
AND ALLIED CRAFTWORKERS : **ORDER GRANTING IN**
LOCAL 1 CONNECTICUT HEALTH : **PART AND DENYING IN**
FUND, the SHEET METAL WORKERS' : **PART DEFENDANTS'**
LOCAL NO. 40 HEALTH FUND, and all : **MOTION TO DISMISS**
others similarly situated, :
: 3:22-CV-1541 (VDO)
                    Plaintiffs, :
:
    -against- :
:
ELEVANCE, INC. F/K/A ANTHEM, INC., :
ANTHEM HEALTH PLANS, INC. D/B/A :
ANTHEM BLUE CROSS AND BLUE :
SHIELD, ANTHEM BLUE CROSS, :
EMPIRE BLUE CROSS BLUE SHIELD, :
and EMPIRE BLUE CROSS, :
:
                    Defendants. :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Before the Court is the defendants' motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Defs. Mot., ECF No. 41.) In December 2022, the plaintiffs, Trustees of the International Union of Bricklayers and Allied Craftworkers Local 1 Connecticut Health Fund and the Sheet Metal Workers' Local No. 40 Health Fund (collectively, "Plaintiffs" or "Trustees"), brought this action against Defendants Elevance, Inc., Anthem Health Plans, Inc., Anthem Blue Cross, Empire Blue Cross Blue Shield, and Empire Blue Cross (collectively,

"Defendants"), alleging breaches of fiduciary obligations in violation of Sections 404 and 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq*. (Compl., ECF No. 1.) Plaintiffs seek class certification, declaratory judgment, an audit of Defendants' claims information, damages, interest, attorneys' fees, costs, and other equitable relief. (*Id.* at 46–47.) For the reasons discussed below, Defendants' motion is **granted in part and denied in part**.

I.   BACKGROUND[1]

   A.   The Parties

Plaintiffs are the trustees of two multi-employer, self-funded welfare benefit plans that provide medical benefits to union employees and retirees: (1) International Union of Bricklayers and Allied Craftworkers Local 1 Connecticut Health Fund ("Local 1 Fund"); and (2) Sheet Metal Workers' Local No. 40 Health Fund ("Local 40 Fund"). (Compl. ¶¶ 39–40.) The money contributed to the Local 1 Fund and the Local 40 Fund by employers, employees, and retirees are assets held in trust to pay promised benefits. (*Id.* ¶ 41.) As sponsors of self-funded health plans, Plaintiffs are responsible for paying from their own assets any covered healthcare expenses incurred by plan participants. (*Id.* ¶ 2.)

Defendants insure and administer health plans, including the group health plans at issue. (*Id.*) Defendants have established a network of doctors, hospitals, pharmacies, and other health care providers to provide services and supplies to plan members at negotiated price. (*Id.*) Elevance Health, Inc., formerly known as Anthem, Inc., is an Indiana corporation and is the parent company of the following entities: defendant Anthem Blue Cross and Blue Shield

---

[1] The Court accepts as true the factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor for the purpose of deciding Defendants' motion.

2

(Defs. Mem., ECF No. 41-1, at 11; Compl. ¶¶ 13, 14); defendant Empire HealthChoice Assurance, Inc. operating in New York and doing business in various counties as Empire BlueCross BlueShield or Empire Blue Cross (Defs. Mem. at 12; Compl. ¶ 17);[2] defendant Empire HealthChoice HMO, Inc. operating in New York and doing business in various counties as Empire Blue Cross Blue Shield HMO or Empire Blue Cross HMO (Defs. Mem. at 12; Compl. ¶ 16);[3] and defendant Blue Cross of California doing business as Anthem Blue Cross.[4] (Defs. Mem. at 12; Compl. ¶ 15.)

## B. The Agreements At Issue

Plaintiffs are members of the Connecticut Coalition of Taft-Hartley Health Funds, Inc. (the "Connecticut Coalition"), an organization of several union healthcare plans that was formed to collectively bargain for health plan-related services. (Compl. ¶ 42.) The Connecticut Coalition negotiated an agreement with Defendants, establishing terms such as the fees paid to Defendants for their services and performance guarantees that Defendants would be required to meet. (*Id.* ¶ 43.) Each participating member fund that chooses to take advantage of the terms negotiated by the Connecticut Coalition does so by entering into a separate contract with Defendants that incorporates the terms of the Connecticut Coalition's agreement that the individual fund wishes to incorporate or adapt. (*Id.*)

---

[2] Named in the Complaint as "Empire Blue Cross." (Compl. ¶ 17.)

[3] Named in the Complaint as "Empire Blue Cross Blue Shield" and in the waiver of service as "Empire Blue Cross Blue Shield d/b/a Empire HealthChoice HMO, Inc." (Compl. ¶ 16; ECF No. 37.)

[4] Named in the Complaint as "Anthem Blue Cross . . . doing business under the trade names Blue Cross of California and Anthem Insurance Companies Inc. . . . with a principal place of business in California and New York." (Compl. ¶ 15.)

Plaintiffs contracted with Defendants through Administrative Service Only agreements ("ASOs" or "ASAs") to provide plan participants with access to Defendants' network and for claim repricing. (Compl. ¶¶ 2, 46, 55.) Defendants create networks by negotiating contracts with health care providers and facilities that agree to accept discounted reimbursements for services provided to patients in their plans. (*Id.* ¶ 32.) Where a self-funded plan is involved, such as here, Defendants determine the "allowed amount" the network provider is entitled to, and then causes the plan to pay the network provider from the plan's assets. (*Id.* ¶ 35.)

The ASA between Defendants and the Local 1 Fund requires the Local 1 Fund to establish and maintain a bank account to serve solely as a depository for funds to be used to pay claims, fees, and other costs. (*Id.* ¶ 48.) Defendants receives and reprices all benefit claims from network providers. (*Id.* ¶ 49.) The Local 1 Fund transfers assets to the bank account to meet its obligations as requested by Defendants and authorizes Defendants to pay claims and withdraw fees from the account. (*Id.* ¶ 48.) Payments are made from the account by Defendants to providers for covered claims, payment of fees, and other costs of Defendants' services. (*Id.* ¶ 48.)

Under the Local 40 Fund's ASA with Defendants, providers submit claims to Defendants for medical care provided to Local 40 Fund Plan participants, and Defendants then transmits the claims to the Local 40 Fund, which verifies eligibility, requests additional information or medical records from Defendants. (*Id.* ¶ 57.) Defendants pays the network provider by withdrawing money from a designated Local 40 Fund bank account that holds Local 40 Fund assets. (*Id.* ¶ 57.)

In exchange for Plaintiffs' access to Defendants' network and for administrative services related to the reimbursement arrangements for medical services that Defendants

negotiated with their network, Plaintiffs pay a per-member-per-month ("PMPM") rate. (*Id.* ¶ 35.) That fee is subject to certain performance guarantees, where Defendants forfeits a percentage of the PMPM fee if it fails to meet a guarantee. (*Id.* ¶ 45.) The ASAs between the parties also contain the minimum network provider discount guarantee negotiated between the Connecticut Coalition and Defendants, promising a discount "estimated to be 50% (subject to a 1% corridor)." (*Id.* ¶¶ 47, 56.) Based on their own self-reporting, Defendants have never paid a penalty to the Connecticut Coalition or any member (such as a plaintiff here) for failing to meet a guarantee. (*Id.*)

        **C.**     **Pre-Suit Events**

Prior to filing this lawsuit, Plaintiffs requested claims data from Defendants for the purpose of monitoring Defendants. (*Id.* ¶¶ 59, 71.) The Local 1 Fund's request for claims data was ultimately unsuccessful due to the failure to agree on a non-disclosure agreement. (*Id.* ¶¶ 64–70.) Despite disagreement about whether to use a third-party auditor who is paid on a contingency fee basis, the Local 40 Fund received some claims data from Defendants. (*Id.* ¶¶ 71–77.) After reviewing the underlying claims data, Plaintiffs found that, in most cases, the negotiated rates posted by hospital systems and the allowed amount of the repriced claims for both Plans did not match—in several instances the repriced claims were higher than the original billed charges. (*Id.* ¶¶ 80, 82, 83, 86, 89, 90, 91.) Plaintiffs allege that, as a result of a haphazard claims pricing process undertaken by Defendants, the negotiated rates with network providers were rarely applied to claims, the minimum network provider discount of 50% was almost never met, and the repriced claims was sometimes higher than the billed amount. (*Id.* ¶¶ 86, 91.)

Beginning in 2019, the Local 40 Fund began requiring participants to pay a $4,000 deductible to reduce Fund expenses, causing participants to ration pills and avoid doctor visits. (*Id.* ¶ 41.) When faced with shortfalls at the beginning of 2022, the Local 1 Fund diverted $2 of contributions per participant per hour earmarked for the IUBAC International Annuity Fund to the Local 1 Fund, thus reducing the retirement income available to participants when they retire. (*Id.*)

### D. Procedural History

Plaintiffs brought this lawsuit in December 2022, asserting that Defendants breached their fiduciary duties when Plaintiffs sought to enforce the audit provisions of the parties' contracts and when Defendants caused Plaintiffs to pay more than the negotiated in-network rates for medical services. (Compl., ECF No. 1.) The instant motion to dismiss was fully briefed as of February 16, 2024. (ECF Nos. 41, 66, 72, 78, 81.) Oral argument was held on April 18, 2024. (ECF No. 84.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,'" such as when "the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (internal citations omitted). "A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When the Rule 12(b)(1) motion is facial, "*i.e.*, one 'based solely on the allegations of the complaint or the complaint and exhibits attached to it,' plaintiffs have no evidentiary burden, for both parties

6

can be said to rely solely on the facts as alleged in the plaintiffs' pleading." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter*, 822 F.3d at 57). The pleading must "show[] by a preponderance of the evidence that subject matter jurisdiction exists." *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In considering a Rule 12(b)(1) motion to dismiss for lack of standing, courts in this Circuit construe "the complaint in [the] plaintiff's favor and accept as true all material factual allegations contained therein." *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter*, 822 F.3d at 57 (internal citations omitted). "It is only where 'jurisdictional facts are placed in dispute' that the court has the 'obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision[.]" *Carter*, 822 F.3d at 57.

B.      Rule 12(b)(6)

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. New York Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) "To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead enough facts to state a claim to relief that is plausible on its face." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d

Cir. 2013). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, a district court may consider documents that are attached to the complaint or incorporated in it by reference. *Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. New York City Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal citation omitted).

### III.   DISCUSSION

Defendants argue that Plaintiffs' claims should be dismissed for the failure to show constitutional standing. (Defs. Mem. at 37–49.) Regarding the merits, Defendants contend: (1) that no defendant is an ERISA fiduciary with respect to the actions challenged by Plaintiffs (*id.* at 20–28); (2) that Plaintiffs fail to state an ERISA claim for breach of fiduciary duty based on alleged requirements for disclosure of claims data (*id.* at 28–37); and (3) that all claims should be dismissed to the extent that they pre-date statutory and regulatory enactment dates. (*Id.* at 49–50.)

As discussed below, the motion to dismiss for lack of standing under Rule 12(b)(1) is denied. But Plaintiffs' fiduciary breach claims are dismissed pursuant to Rule 12(b)(6) for the failure to plausibly allege that Defendants are ERISA fiduciaries.

8

### A. Defendants' 12(b)(1) Motion

Article III of the United States Constitution requires that a plaintiff to have standing to invoke federal jurisdiction. *Doody v. Bank of Am., N.A.*, —— F. Supp. 3d ——, 2024 WL 20706, at *5 (D. Conn. Jan. 2, 2024) (Oliver, J.). ERISA claims are subject to ordinary standing analysis as there is no ERISA exception to Article III. *Thole v. U.S. Bank N.A.*, 590 U.S. ——, 140 S. Ct. 1615, 1622 (2020). "To establish Article III standing, a plaintiff must plead—for each claim and for each form of relief sought—that (1) she has suffered or is imminently threatened with a concrete and particularized injury-in-fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that is likely to be redressed by the requested relief." *Kulwicki v. Aetna Life Ins. Co.*, —— F. Supp. 3d ——, 2024 WL 1069854, at *3 (D. Conn. Mar. 12, 2024) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)). Here, Defendants contest whether Plaintiffs have adequately pleaded injury in fact and causation for the ERISA claims. The Court addresses the two disputed elements in turn.

#### 1. Plaintiffs Have Sufficiently Pleaded Injury in Fact.

To show an injury in fact, a plaintiff must allege a "harm other than the statutory violation itself." *Doody*, 2024 WL 20706, at *5. Injuries in fact are concrete and particularized injuries, such as "physical, monetary, or cognizable intangible harms." *TransUnion*, 594 U.S. at 427.

Here, Plaintiffs have adequately alleged an injury in fact because they affirmatively alleged that, as a result of Defendants' ERISA violation, they have incurred monetary harm. "If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion*, 594 U.S. 413 at 425. With respect to Counts II and III, Plaintiffs allege that:

> 117. As a direct and proximate cause of the above breaches of fiduciary duty, Plaintiffs' Plans and the Class's self-funded plans have **lost hundreds of millions of dollars**, for which the Defendants are jointly and severally liable.
>
> 127. As the direct and proximate result of Anthem's self-dealing and prohibited transactions, the Class of self-funded plans has **lost hundreds of millions of dollars**, for which Defendants are jointly and severally liable."

(Compl. ¶¶ 117, 127) (emphasis added.) And with respect to Count I, Plaintiffs allege that Defendants prevented them from "accessing information necessary to fulfill their fiduciary duty to properly monitor [Defendants'] performance to determine whether claims were being paid properly, whether compensation received by [Defendants] was reasonable, and whether [Defendants] operated under any conflicts of interest with respect to its discretionary management of the plan and its authority and control over plan assets." (*Id.* ¶ 112.) The plaintiffs further allege that, as a result of the shortfalls due to Defendants' actions, the Local 40 Fund began requiring participants to pay a $4,000 deductible to reduce Fund expenses, and the Local 1 Fund diverted $2 of contributions per participant per hour earmarked for the IUBAC International Annuity Fund to the Local 1 Fund, thus reducing the retirement income available to participants when they retire. (*Id.*) At this posture, the inquiry into injury in fact ends here. The allegations affirmatively show or provide for the reasonable inference that Plaintiffs incurred monetary loss due to Defendants' actions.

### 2. Plaintiff Has Sufficiently Pleaded Causation.

The causal connection element of standing, including the requirement that a plaintiff's injury be fairly traceable to a challenged action of a defendant does not create an onerous standard. *Carter*, 822 F.3d at 55. It is a lower standard than proximate causation, such that a defendant's conduct that indirectly injures a plaintiff after intervening conduct by another person may suffice. *Id.*

Here, Plaintiffs have adequately alleged causation because they affirmatively alleged that their injuries are a result of contracts with each defendant. Plaintiffs allege they contracted with Defendants to provide plan participants with access to Defendants' provider network at negotiated discount prices and for claims administration services, in exchange for a PMPM fee. (Compl. ¶¶ 1, 46, 55.) Plaintiffs then allege that Defendants are "disregarding the contractual provisions governing [their] claims administration duties performed on behalf of the Funds[,]" such as not uniformly applying negotiated discounts to the claims being processed and, instead, are either unlawfully retaining the improperly discounted amounts or imprudently overpaying providers. (*Id.* ¶ 1.)

Defendant's attempt to mount a fact-based challenge to the allegations that Plaintiffs have contracts with each of the defendants falls short. The attempt rests on unauthenticated documents which purport to be excerpts of contracts between the plaintiffs and one defendant (ECF Nos. 44-4, 44-5). Indeed, Plaintiffs dispute the authenticity of these exhibits, noting that the documents are draft documents that do not contain Plaintiffs' signatures. The Court therefore finds that these documents fall short of what is needed to contradict the allegations that contracts between the parties caused monetary injury to Plaintiffs.

Accordingly, Defendants' Rule 12(b)(1) motion is denied.

### B. Defendants' 12(b)(6) Motion

Defendants' motion to dismiss all claims for failure to state a claim because of the failure to plausibly allege that any defendant is an ERISA fiduciary is granted.

To state a claim under ERISA for breach of fiduciary duties, Plaintiffs must first plausibly allege that Defendants are plan fiduciaries with respect to the challenged conduct. The "elements of a cause of action for participation in a breach of fiduciary duty are [i] breach

11

by a fiduciary of a duty owed to plaintiff, [ii] defendant's knowing participation in the breach, and [iii] damages." *Tr. of Upstate N.Y. Eng'rs Pension Fund* v. *Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016). Therefore, in every case charging breach of a fiduciary duty under ERISA, the threshold question is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 222–23 (2d Cir. 2018).

ERISA provides that every plan must provide for one or more named fiduciaries who possess the "authority to control and manage the operation and administration of the Plan." 29 U.S.C. § 1102(a)(1). The entity or individual identified as the "administrator" in the plan document is automatically deemed a named fiduciary. 29 U.S.C. § 1002(16)(A). Additionally, a person is considered an ERISA fiduciary if the definition of a "functional fiduciary" is met, which is as follows:

> a person is a fiduciary with respect to a plan to the extent **(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,** (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, **or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan**.

29 U.S.C. § 1002(21) (emphasis added). Therefore, even if a party is not a named fiduciary of an ERISA plan, it can be a *de facto* fiduciary if it exercises or possesses the requisite discretionary authority. *Allen*, 895 F.3d at 223 (citing sources).

Here, Plaintiffs proffer two arguments in support of the position that Defendants act as fiduciaries under ERISA, relating to their repricing and payment of network providers: "(1) Anthem exercises discretionary authority and control over plan management when it

determines the amount of money to be withdrawn from Plan bank accounts and paid to network providers; and (2) Anthem exercises authority and control over plan assets when it withdraws money from the Plans' bank accounts and pays network providers." (Pls. Mem., ECF No. 66 at 17.)

As an initial matter, the Court concludes that it cannot consider Defendants' exhibits attached to the motion to dismiss. Defendants assert that the documents are the contracts that Plaintiffs entered into with Anthem Blue Cross Blue Shield of Connecticut. (Defs. Mem., ECF No. 41-1 at 13.) However, as previously discussed, Plaintiffs dispute the authenticity of these exhibits, asserting that the documents are drafts that do not contain Plaintiffs' signatures. Defendants have not provided any evidence, such as an affidavit, that would purport to authenticate their own exhibits and therefore, these documents must be disregarded.

Even without considering the documents attached to Defendants' motion, the Court must conclude that Plaintiffs do not plausibly allege that Defendants exercise or possesses discretionary authority required to be an ERISA fiduciary. Circuit courts have affirmed the dismissal of ERISA claims at the pleadings stage involving, such as here, a service provider's alleged misconduct in carrying out the actions pursuant to the terms of a contract. For example, in *Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 49 (2d Cir. 2020), the Second Circuit found no error with a district court's finding that a party was not a fiduciary because it did not exercise discretion in setting drug prices when those prices are set according to contractual terms. The *Express Scripts* court found that allegations relating to "extraordinarily broad discretion in setting prescription drug prices[,]" such as the ability to classify medications and therefore directly affect how much plan participants had to pay, did not make a party become a fiduciary

13

because "at bottom the ability to set such prices is a contractual term, not an ability to exercise authority over plan assets." *Id.*

Defendants also persuasively compares this case to *Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307 (1st Cir. 2023), in which the First Circuit held that allegations about repricing claims did not constitute discretionary authority or control sufficient to preclude dismissal of ERISA claims. The plaintiffs there allegedly discovered "thousands of claims that were erroneously paid or paid in the incorrect amount." *Id.* at 314. Fatal to the complaint, however, was the finding that the defendant lacked discretion in taking the alleged actions, such as applying payment rates according to schedules that had already been negotiated with providers. *Id.* at 320. The "notion that there were 'correct' rates to be applied to each submitted claim, but that [a party] failed to apply them" did not support an inference that a party had the requisite discretion to be a fiduciary. *Id.*

The theories of liability at issue here, such as the overpayment of claims, are similarly related to a contract by which Defendants are bound. According to Plaintiffs, Defendants caused overpayment by "not uniformly applying its negotiated discount," thereby "disregarding the contractual provisions governing its claims administration duties." (Compl. ¶ 1.) As alleged, Defendants are obligated to perform a task by applying the terms of a contract to pay healthcare professionals, thus contradicting Plaintiffs' contention that Defendants have discretion to be ERISA fiduciaries. *See In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 679 (S.D.N.Y. 2018) (when "a service provider . . . acts pursuant to the terms of a contract, it does not exercise discretionary authority"). Much like the complaints dismissed by Second Circuit and First Circuit, the claims here are "fundamentally premised on the notion that there were 'correct' rates to be applied to each submitted claim, but that [Defendants]

14

failed to apply them." *Mass. Laborers' Health & Welfare* Fund, 66 F.4th at 320. Plaintiffs take issue with Defendants alleged failure to keep the "**promise that network claims of Plan participants would be repriced to reflect [Defendants'] negotiated rates** which would result in discounts at the percentages set forth in the ASO Network Guarantee provisions." (Compl. ¶ 5) (emphasis added). Plaintiffs acknowledge that they pay Defendants a PMPM rate for access to Defendants' "network of providers at [Defendants'] **negotiated rate**[,]" Defendants' "**administrative services related to repricing** the invoices submitted by the network providers[,]" and Defendants' "**payment of the allowed amount from the Plans' assets to the network providers**." (*Id.*) (emphasis added).

Further showing Defendants' lack of discretion, despite alleging that Plaintiffs have "no role in determining the amount of money paid to network providers" (Compl. ¶ 49, 57), Plaintiffs later contradict that allegation by stating that Defendants "sends the claim to the … Fund which determines whether the claim is for an eligible participant and is for a covered service, then returns the claim to [Defendants] for payment to the provider." (Compl. ¶¶ 49, 57.) If a participant is found to be eligible by a plaintiff, Defendants then prepare an invoice with a due date and causes assets to be withdrawn from the Fund's bank account to pay the provider for the claim. (*Id.*) Indeed, Plaintiffs concede in their opposition brief that they "played some role over the claims process, such as determining eligibility and whether medical services are covered[.]" (Pls. Mem., ECF No. 66 at 26.)

While it may be that "a party's ability to set one's own compensation under an agreement with an ERISA–covered plan may make the party an ERISA fiduciary," *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 679 (S.D.N.Y 2018), that does not save the claims from dismissal. Plaintiffs do not plausibly allege that Defendants are able to

15

set their own compensation. To the contrary, Plaintiffs allege that they have brought this lawsuit "ensure that [Defendants are] not paying itself compensation in excess of the contracted rates and fees, and [Defendants are] not keeping compensation that is required to be returned under the Network Guarantees contained in the ASOs." (Compl. ¶ 38.) Plaintiffs further allege that, "**if** Anthem is compensating itself with any portion of the 'allowed amount' of any claim, it is illegally setting its own compensation and has a fiduciary obligation to disclose that compensation." (*Id.* ¶ 92) (emphasis added). Plaintiffs do not affirmatively allege that Defendants are setting their own compensation under an agreement, and instead speculate that "there is no way for the Plans to understand why the allowed amounts as determined by Anthem do not match the Anthem negotiated rates, and it is hard to imagine a legitimate reason for this." (*Id.*). Even if a service provider's compensation is more lucrative than what the parties expected at the time of contracting, a party is not an ERISA fiduciary simply with respect to the terms of the agreement for its compensation. *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 31 (2d Cir. 2002) (reversing ruling that a party breached its fiduciary duties by collecting a risk charge). The failure to affirmatively plead that Defendants exercised discretion to set their own compensation for services provided distinguishes this case from *Negron v. Cigna Health & Life Ins.*, 300 F. Supp. 3d 341 (D. Conn. 2018). The *Negron* court found that defendants were plausibly alleged to be fiduciaries where "defendants exercised discretion over factors that determined their compensation" because "[a] service provider that enters into an agreement with a plan that affords the service provider the ability to control the factors determinative of the amount of its compensation is an ERISA fiduciary with respect to that compensation[.]" *Id.* at 357. No such allegations are here and thus, the Complaint does not plausibly allege that Defendants have or exercised discretion to set their own compensation.

Moreover, to the extent that Plaintiffs are challenging the contracts that Defendants entered into with the network providers, those actions seem to be "business decisions" that do not fall under the purview of ERISA. *Am. Psychiatric Assoc. v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 n.2 (2d Cir. 2016) ("'[G]eneral fiduciary duties under ERISA [are] not triggered' ... when the decision at issue is, 'at its core, a corporate business decision, and not one of a plan administrator.'"); *see also Doe 1 v. Express Scripts, Inc.*, 837 F. App'x 44, 48 (2d Cir. 2020) (finding that a defendant did not act as an ERISA fiduciary when it entered into agreements, even though its decision may ultimately affect how much plan participants pay for drug prices).

Accordingly, Defendants' Rule 12(b)(6) motion is granted.

### IV. CONCLUSION

For the preceding reasons, Defendants' motion to dismiss (ECF No. 44) is **GRANTED IN PART AND DENIED IN PART**. Specifically, all claims are **dismissed without prejudice** under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Within **sixty days** of this order, Plaintiffs may move to file an amended complaint. Any such motion must include a redline comparison of the initial complaint and proposed amended complaint. Failure to timely file a request to amend the complaint will result in dismissal of all claims with prejudice.

**SO ORDERED.**

Hartford, Connecticut
April 22, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge