IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ELEVANCE, INC. F/K/A ANTHEM, INC., et al.<br><br>Defendants. | Civil Action No.: 3:22-cv-01541-VLB |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION OF
<u>PLAINTIFF IUBAC LOCAL 1'S CLAIMS AND STAY ACTION</u>**

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ................................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ........................................................................................................................... 4

ARGUMENT ........................................................................................................................................ 5

I. The Federal Arbitration Act Establishes a Strong Policy Favoring Arbitration and Governs This Dispute .................................................................................................. 6

II. The Parties Have a Valid Agreement to Arbitrate ............................................................... 7

III. All Other Issues Are Reserved for Arbitration ..................................................................... 7

    a. The Parties Agreed to Delegate Issues of Arbitrability to the Arbitrator. .............. 7

    b. Even if the Court Could Address Arbitrability, All of IUBAC's Claims are Subject to Arbitration with Respect to All Defendants. ......................................... 9

IV. Defendants Have Not Waived Their Arbitration Rights .................................................... 11

V. This Action Should Be Stayed Pending Completion of Arbitration ................................. 13

CONCLUSION ................................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,
 855 F.2d 1470 (9th Cir. 1988) ............................................................................................... 2

*Allied-Bruce Terminix Cos. v. Dobson*,
 513 U.S. 265 (1995) ........................................................................................................... 6, 7

*Asa v. Pictometry Intern. Corp.*,
 757 F. Supp. 2d 238 (W.D.N.Y. 2010) ................................................................................. 10

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ............................................................................................................... 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
 475 U.S. 643 (1986) ............................................................................................................... 9

*Bensadoun v. Jobe-Riat*,
 316 F.3d 171 (2d Cir. 2003) ................................................................................................... 4

*Billie v. Coverall North Am. Inc.*,
 2023 WL 2531396 (2d Cir. Mar. 15, 2023) ......................................................................... 12

*Bird v. Shearson Lehman/Am. Express, Inc.*,
 926 F.2d 116 (2d Cir. 1991) ................................................................................................. 10

*Birmingham Associates Ltd. v. Abbott Laboratories*,
 547 F.Supp.2d 295 (S.D.N.Y. 2008) .................................................................................... 11

*Boustead Sec., LLC v. Leaping Grp. Co., Ltd.*,
 656 F.Supp.3d 447 (S.D.N.Y. 2023) .................................................................................... 13

*Chabad Lubavitch of W. & S. New England, Inc. v. Shemtov*,
 2024 WL 3405797 (Conn. July 12, 2024) .............................................................................. 9

*Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Loc.* 812,
 242 F.3d 52 (2d Cir. 2001) ................................................................................................... 12

*Coinbase, Inc. v. Suski*,
 144 S. Ct. 1186 (2024) ........................................................................................................... 5

*Contec Corp. v. Remote Sol., Co.*,
 398 F.3d 205 (2d Cir. 2005) ............................................................................................... 5, 8

*De Jesus v. Gregory's Coffee Mgmt., LLC*,
   2022 WL 3097883 (E.D.N.Y. Aug. 4, 2022) .................................................................. 13

*Doctor's Associates, Inc. v. Tripathi*,
   2016 WL 7406725 (D. Conn. Dec. 2, 2016) .................................................................... 8

*Doctor's Associates, Inc. v. Tripathi*,
   2016 WL 7634464 (D. Conn. Nov. 3, 2016) .................................................................... 8

*Ennegna v. Starns*,
   677 F.3d 766 (7th Cir. 2012) ........................................................................................... 2

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ........................................................................................................ 6

*Errato v. Am. Express Co.*,
   2019 WL 3997010 (D. Conn. Aug. 23, 2019) ............................................................... 14

*Flores v. Nat'l Football League*,
   658 F. Supp. 3d 198 (S.D.N.Y. 2023) ........................................................................... 13

*Gallagher v. Pepe Auto Grp.*,
   2019 WL 801955 (S.D.N.Y. Feb. 21, 2019) .................................................................... 2

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) .......................................................................................... 14

*Green Tree Fin. Corp.-Alabama v. Randolph*,
   531 U.S. 79 (2000) .......................................................................................................... 6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) .......................................................................................................... 5

*Loc. Union 97, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*,
   67 F.4th 107 (2d Cir. 2023) ............................................................................................. 9

*Local 640 Trustees of IBEW & Ariz. Ch. NECA Health & Welfare Fund v. Cigna Health & Life Ins. Co.*,
   2021 WL 3290534 (D. Ariz. Aug. 2, 2021) ..................................................................... 7

*McAllister v. Conn. Renaissance Inc.*,
   2011 WL 1299830 (D. Conn. Apr. 5, 2011) .................................................................... 4

*Morgan v. Sundance*,
   142 S. Ct. 1708 (2022) .................................................................................................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................. 6

*Nicosia v. Amazon.com, Inc.*,
   2023 WL 309545 (2d Cir. Jan. 19, 2023) ........................................................................... 13

*Oppenheimer & Co., Inc. v. Neidhardt*,
   56 F.3d 352 (2d Cir. 1995) .................................................................................................. 5

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ................................................................................................ 9

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ........................................................................................................... 5, 8

*Rowe v. Affordable Motors, Inc.*,
   2018 WL 6258606 (D. Conn. Nov. 30, 2014) ..................................................................... 7

*Sharif Wellness Int'l Network, Ltd.*,
   376 F.3d 720 (7th Cir. 2004) ............................................................................................... 2

*Silfee v. Automatic Data Processing, Inc.*,
   696 F. App'x 576 (3d Cir. 2017) ......................................................................................... 2

*Smith v. Spizzirri*,
   601 U.S. 472 (2024) .................................................................................................... 13, 14

*Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l., Inc.*,
   198 F.3d 88 (2d Cir.1999) ................................................................................................. 11

*Sodemo, S.A. v. Chase Manhattan Bank, N.A.*,
   1995 WL 746382 (S.D.N.Y. Dec. 15, 1995) ....................................................................... 9

*Walia v. Napolitano*,
   2017 WL 10378189 (E.D.N.Y. Dec. 4, 2017) ..................................................................... 2

**Statutes**

9 U.S.C. § 2 ................................................................................................................................... 7

9 U.S.C. § 3 ................................................................................................................................... 1

9 U.S.C. § 4 ................................................................................................................................... 4

9 U.S.C. § 6 ................................................................................................................................... 1

Defendants Elevance Health, Inc., Anthem Health Plans, Inc. d/b/a Anthem Blue Cross Blue Shield of Connecticut, Blue Cross of California d/b/a Anthem Blue Cross,[1] Empire HealthChoice HMO, Inc. d/b/a Empire Blue Cross Blue Shield HMO or Empire Blue Cross HMO,[2] and Empire HealthChoice Assurance, Inc. d/b/a Empire BlueCross BlueShield or Empire Blue Cross[3] (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration of the claims asserted by Plaintiff Trustees of International Union of Bricklayers and Allied Craftworkers Local 1 Connecticut Health Fund ("IUBAC") and to stay the action before the Court pending arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 6.

## INTRODUCTION

In this action, IUBAC has asserted a number of claims against Defendants, on behalf of themselves and a purported class. IUBAC alleges that Defendants breached fiduciary duties under ERISA "with respect to the administrative services provided by Anthem" pursuant to an administrative services agreement ("ASA") between the parties. Am. Compl. ¶ 2. In a recent meet and confer, IUBAC disclosed the specific ASA that is the basis for its complaint. Under the terms of that particular ASA, IUBAC agreed to *arbitrate* not *litigate* its claims. Defendants promptly demanded arbitration in accordance with the terms of that agreement. But IUBAC has refused to comply with the terms of the ASA. The Court should order IUBAC to comply with its contractual

---

[1] Named in the Complaint as "Anthem Blue Cross." Am. Compl. ¶ 18.
[2] Named in the Complaint as "Empire Blue Cross Blue Shield." Am. Compl. ¶ 19.
[3] Named in the Complaint as "Empire Blue Cross." Am. Compl. ¶ 20.

1

commitments, compel IUBAC to proceed to arbitration, and stay the action pending the outcome of that arbitration.[4]

## FACTUAL BACKGROUND

On December 2, 2022, IUBAC, through counsel, sent a letter to "Anthem/Empire BlueCross BlueShield" regarding Anthem Blue Cross Blue Shield of Connecticut's (Anthem BCBS-CT's) alleged refusal to provide claims data to IUBAC's third-party auditor. *See* Declaration of Briana Black ("Black Decl."), Ex. 3. (the "December 2022 Letter"). In the December 2022 Letter, IUBAC requested that Defendants "accept this letter as a formal initiation of the dispute resolution process set forth in the Administrative Services Agreement (ASA) that governs the relationship between Anthem and [IUBAC], which begins with a thirty (30) day obligation of the parties to make good faith efforts to negotiate resolution of disagreements." *Id*. at 2.

The December 2022 Letter did not specifically identify or attach the ASA that was the basis of IUBAC's claims. Anthem BCBS-CT, meanwhile, could not determine from where IUBAC had gotten the dispute resolution language. The ASA in Anthem BCBS-CT's contract

---

[4] This Motion satisfies Defendants' obligation to respond to the Amended Complaint at this stage of the case. *See Gallagher v. Pepe Auto Grp.*, 2019 WL 801955, at *2 (S.D.N.Y. Feb. 21, 2019) (noting that "courts have held '[a]rbitrability is a gateway issue' and a court must address the arbitrability of a plaintiff's claims 'at the outset of the litigation.'") (quoting *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017)); *see also Sharif Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (noting that a request for arbitration asks the district court to refrain from further action in a suit and has "to be addressed by the court"). Consistent with the Court's order setting a briefing schedule, ECF No. 96, Defendants reserve the right to file a motion to dismiss the case on all other applicable grounds, including failure to state a claim, before answering the Amended Complaint. *See Walia v. Napolitano*, 2017 WL 10378189, at *8 (E.D.N.Y. Dec. 4, 2017) ("The defense of failure to state a claim is not waivable.") (collecting cases)*; see also Ennegna v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (noting that failure to state a claim arguments do not have to be consolidated into one motion to dismiss a case); *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that prior motion to dismiss or stay did not bar later Rule 12(b) motion).

2

database lacked a dispute resolution provision. Declaration of Andrew Braun ("Braun Decl."), ¶ 2; Black Decl., Ex. 1

Three days later, IUBAC and Plaintiff Sheet Metal Workers' Local No. 40 Health Fund ("Sheet Metal Workers") filed this lawsuit on behalf of themselves and a purported class of similarly situated parties with the Court, asserting claims based on Defendants' alleged breach of fiduciary duties under ERISA with respect to ASAs between the parties. *See* ECF No. 1. Notably, while purporting to quote extensively from the ASA for IUBAC, the Complaint did not attach that ASA.

Defendants moved to dismiss the Complaint, and attached to the supporting memorandum as Exhibit A relevant excerpts of what defendants understood to be the operative ASA. *See* ECF No. 41-4. In opposing Defendants' Motion to Dismiss, IUBAC disputed the authenticity of Exhibit A. ECF No. 66 at 10, n.6. But as with the Complaint, IUBAC did not attach to its opposition what IUBAC believed to be the operative ASA.

The Court granted in part Defendant's Motion to Dismiss. ECF No. 86. Plaintiffs then filed an Amended Complaint which continued to quote from what Plaintiffs contended was the operative ASA for IUBAC. ECF No. 91. Nevertheless, IUBAC notably declined to attach the document to its Amended Complaint.

In an effort to resolve the parties' apparently divergent views on the contracts at issue in this dispute, Defendants requested on July 9, 2024, that Plaintiffs provide the ASAs quoted in the Amended Complaint. ECF No. 92 at 1-2. On July 19, 2024, for the first time, IUBAC provided to Defendants what it contended to be the operative ASA—a nearly two-decades-old contact, covering the period from July 1, 2007–December 31, 2008 (the "2007 ASA"). *Id.*; Black Decl., Ex. 2.

After investigation, it became clear why IUBAC had repeatedly declined to include this ASA in its complaint or otherwise reveal it to Defendants or the Court: Section 17(m) provides for binding arbitration of disputes under the contract. Specifically, the ASA states, in relevant part:

> In the event of a dispute solely between the parties hereto, (excluding, without limitation, third party litigation) which dispute the parties cannot resolve by negotiation or mediation, any party may serve upon the other party a written demand for binding arbitration which shall identify specifically the matters to be arbitrated. Within five (5) days thereafter, the parties shall appoint one person to act as arbitrator. Such person shall have no personal or pecuniary interest, either directly or indirectly, in the outcome of the matters disputed and shall not be an employee, agent or contractor of a party. If the parties fail to appoint an arbitrator within the allotted time, the matter shall be submitted to the American Arbitration Association for appointment of an arbitrator, provided that such arbitrator meets the qualifications described above. When selected, the arbitrator shall thereafter proceed in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

After meeting and conferring further with the Plaintiffs to confirm that both sides agreed that the 2007 ASA represents the terms of the operative base ASA, Defendants sent a demand for binding arbitration of IUBAC's claims in the Amended Complaint (the "Arbitration Demand") per the terms of Section 17(m)). IUBAC objected to arbitration notwithstanding the clear terms of the parties' arbitration agreement. *See* ECF No. 95 at 2-3 (joint status report noting IUBAC's objection to arbitration). This motion follows.

## **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") directs courts to enforce arbitration agreements and place them on equal footing with other contracts. Under Section 4 of the Act, when a party refuses to arbitrate, a court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

In evaluating a motion to compel arbitration, courts apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also McAllister v. Conn. Renaissance Inc.*, 2011 WL 1299830, at *3 (D. Conn.

Apr. 5, 2011) (applying summary judgment standard in the context of a motion to compel arbitration). The party seeking to compel arbitration must "substantiate[] [its] entitlement [to arbitration] by a showing of evidentiary facts." *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.*

Just as parties agree to arbitrate their disputes, parties may also agree to arbitrate "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) (quotation marks omitted); *see Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024) (describing how "parties can form multiple levels of agreements concerning arbitration"). Agreements to arbitrate arbitrability are known as *delegation clauses*, because the threshold questions are delegated to an arbitrator. "When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68.

Instead, Courts must leave arguments about the "scope" and application of the arbitration agreement to the arbitrator. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 77–78 (2010); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 210 (2d Cir. 2005).

## ARGUMENT

This is a straightforward case under hornbook arbitration precedent. The 2007 ASA that is the basis for IUBAC's Amended Complaint contains a valid agreement to arbitrate disputes and a delegation clause. Under that delegation clause, IUBAC agreed that an arbitrator—not a court—

5

would resolve any questions surrounding the scope and enforceability of the arbitration agreement. The Court should thus enforce the delegation clause and have an arbitrator determine whether the parties' arbitration agreement covers IUBAC's claims. Moreover, even if the Court were to look past the delegation clause (it should not), the Court should still enforce arbitration. The arbitration agreement in this case is clearly enforceable and encompasses the parties' dispute.

When Defendants demanded arbitration, IUBAC asserted that Defendants waived their right to arbitrate by waiting too long to request arbitration. IUBAC is wrong. Defendants did not knowingly waive the right to arbitrate. Quite the opposite: Defendants sought arbitration as soon as the operative ASA, different than the contract in Defendants' records, came to light. The Court should order IUBAC to arbitrate its claims on an individual basis.

## I. The Federal Arbitration Act Establishes a Strong Policy Favoring Arbitration and Governs This Dispute.

The FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced nationwide. Congress enacted the FAA to "overcome judicial hostility to arbitration agreements," and the statute embodies a "liberal federal policy favoring arbitration." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[T]he law is clear: Congress has instructed that arbitration agreements . . . must be enforced as written." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525 (2018); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22, 24–25. The "party seeking to avoid arbitration bears the burden of establishing" that the agreement in question should not be enforced. *Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 91–92 (2000).

Here, the parties agree that they entered into an agreement set out in the 2007 ASA, which plainly contains an agreement to arbitrate. *See* Black Decl., Ex. 2 at § 17(m). This agreement is governed by the FAA because it affects interstate commerce. *See* 9 U.S.C. § 2 (extending to a written arbitration "provision in any . . . contract evidencing a transaction involving commerce"); *Allied-Bruce*, 513 U.S. at 273–74 (holding that FAA applies broadly to reach transactions "affecting" commerce); *see also Local 640 Trustees of IBEW & Ariz. Ch. NECA Health & Welfare Fund v. Cigna Health & Life Ins. Co.*, 2021 WL 3290534, at *3 (D. Ariz. Aug. 2, 2021) (FAA governed arbitration provision in administrative services agreement). Among other reasons, Anthem BCBS-CT provided claims administration services to IUBAC's members relating to healthcare services across the country. The FAA thus controls.

## II.   The Parties Have a Valid Agreement to Arbitrate.

The parties have a valid agreement to arbitrate in the 2007 ASA. Under the FAA, whether a valid agreement to arbitrate exists "is a matter of state contract law." *Rowe v. Affordable Motors, Inc.*, 2018 WL 6258606, at *3 (D. Conn. Nov. 30, 2014). Under Connecticut law, "a contract is formed through an offer and an acceptance of that offer." *Id*. The parties have already agreed that the 2007 ASA is the operative agreement governing the parties' relationship. The signatures of IUBAC's Union Co-Chairman and Employee Co-Chairman affixed to the 2007 ASA—containing the arbitration provision—are further proof of IUBAC's unequivocal acceptance of the terms of the agreement to arbitrate. *See id*. (holding that plaintiffs' signatures to contract evidenced acceptance of agreement to arbitrate).

## III.   All Other Issues Are Reserved for Arbitration.

### a.   The Parties Agreed to Delegate Issues of Arbitrability to the Arbitrator.

To the extent IUBAC may contend that its claims do not fall within the scope of the arbitration provision or that the agreement is not enforceable, those questions are reserved for the

arbitrator. The Supreme Court has held that where there is clear and unmistakable evidence that the parties agreed that an arbitrator would decide issues of arbitrability, courts must respect that agreement. *See, e.g., Rent-A-Center*, 561 U.S. at 69.

Here, by incorporating the Commercial Arbitration Rules of the American Arbitration Association into the arbitration provision, Black Decl., Ex. 2 at § 17(m), the parties have "clearly and unmistakably" agreed to delegate gateway questions of arbitrability to the arbitrator.[5] "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp.*, 398 F.3d at 208. "District Courts within this Circuit have routinely applied *Contec's* holding to find the delegation of arbitrability clear and unmistakable where the AAA rules are incorporated by reference into the arbitration clause." *Doctor's Associates, Inc. v. Tripathi*, 2016 WL 7634464, at *17 (D. Conn. Nov. 3, 2016) (collecting cases), report and recommendation adopted by *Doctor's Associates, Inc. v. Tripathi*, 2016 WL 7406725 (D. Conn. Dec. 2, 2016). In light of controlling Supreme Court and Second Circuit law and the parties' delegation to the arbitrator of any threshold questions of enforceability and scope of the arbitration provision, the Court need not address questions of arbitrability, and should compel arbitration of IUBAC's claims. Specifically, the Court need not address IUBAC's arguments regarding (1) whether ERISA claims seeking equitable relief fall within the scope of the arbitration agreement (they do); (2) whether IUBAC's claims here against Defendants other

---

[5] AAA Commercial Rule R-7 (Jurisdiction) provides, in relevant part, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." AAA, *Commercial Arbitration Rules and Mediation Procedures*, 2022, available at https://adr.org/sites/default/files/CommercialRules_Web_1.pdf (last accessed September 30, 2024).

than Anthem BCBS-CT fall within the scope of the arbitration agreement (they do); or any other argument that IUBAC may make regarding the scope or enforceability of the parties' arbitration agreement.

### b. Even if the Court Could Address Arbitrability, all of IUBAC's Claims are Subject to Arbitration with Respect to all Defendants.

The Court should compel arbitration even if it were to decide, contrary to the 2007 ASA, that it (rather than the arbitrator) should assess gateway issues of arbitrability.

IUBAC's claims are covered by a broad and enforceable arbitration provision. Indeed, a motion to compel arbitration must be granted unless it can "be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation marks omitted); *see Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 653 (2d Cir. 2004); *cf. Chabad Lubavitch of W. & S. New England, Inc. v. Shemtov*, 2024 WL 3405797, at *7 (Conn. July 12, 2024) (applying Connecticut law).

The 2007 ASA, according to IUBAC, governs the relationship between IUBAC and Defendants with respect to Anthem BCBS-CT's provision of claims administration services, and the arbitration provision states, without any limitation, that "a dispute" among the parties shall be resolved through binding arbitration. This language is unambiguous, and requires that IUBAC's claims be referred to arbitration. *See Loc. Union 97, Int'l Brotherhood of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 117 (2d Cir. 2023) (holding that claims must be referred to arbitration where an arbitration provision "unambiguously applies" to a dispute); *Sodemo, S.A. v. Chase Manhattan Bank, N.A.*, 1995 WL 746382, at *3 (S.D.N.Y. Dec. 15, 1995) (holding that provision requiring arbitration of "any dispute hereunder" was broad and required arbitration of all disputes that necessitated "interpretation of the contract's own terms.")

9

While styled as claims for violations of ERISA statutory provisions, each of IUBAC's claims is inextricably tied to the 2007 ASA. All of the counts asserted in the Amended Complaint rely on Defendants' alleged status as a "functional fiduciary" under ERISA—a status IUBAC (wrongly) claims Defendants hold *based on the terms of the 2007 ASA*. *See, e.g.*, Am. Compl. ¶¶ 32–41, 89. As the Second Circuit has recognized, ERISA claims are not immune from arbitration—they are just as much subject to an agreement to arbitrate as any other. *See Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 122 (2d Cir. 1991) (holding that "parties may provide by agreement that [ERISA fiduciary] claims will be arbitrated").

Nor is it of any significance that IUBAC seeks equitable and injunctive relief. The arbitration provision in the 2007 ASA carves out such relief "pending arbitration"—plainly referring to injunctive relief to preserve the status quo, and therefore the meaningfulness of the arbitration, rather than any equitable or injunctive relief on the merits of IUBAC's claims themselves. *See, e.g., Asa v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 242 (W.D.N.Y. 2010) (describing injunctions to preserve the status quo pending arbitration). Here, IUBAC's ERISA claims do not seek to preserve the status quo; they seek to compel Defendants to produce data and pay damages. If such merits claims were excepted from the arbitration provision, the discrete carveout for equitable and injunctive relief "pending arbitration" would swallow the arbitration agreement as a whole.

Furthermore, the arbitration provision extends not just to IUBAC's claims against Anthem Health Plans, Inc.—IUBAC's counterparty under the 2007 ASA—but to *all* of the Defendants IUBAC has asserted claims against here. IUBAC has attempted to sue Defendants based on the relationship set out in the 2007 ASA. It has not identified any other basis or separate contract to sue Defendants other than Anthem BCBS-CT. All Defendants, therefore, may compel arbitration

10

under the agreement that, according to IUBAC's allegations, set out the terms of the relationship under which their ERISA claims arise. *See, e.g.*, *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l., Inc.*, 198 F.3d 88, 97 (2d Cir.1999) (compelling plaintiff to arbitration where "[it] treated a group of related companies as though they were interchangeable"), abrogation on other grounds recognized by *Niagara Mohawk Power Corp.*, 67 F.4th at 114; *Birmingham Associates Ltd. v. Abbott Laboratories*, 547 F.Supp.2d 295, 302-4 (S.D.N.Y. 2008) (holding defendant, a non-signatory parent, could compel arbitration based on contract entered into by subsidiary with plaintiff where the claims against parent were "intimately founded in or intertwined with the obligations found in" the contract containing the arbitration provision). In other words, IUBAC cannot escape its arbitration commitments by suing Defendants other than Anthem BCBS-CT, for the same conduct governed by the contract between IUBAC and Anthem BCBS-CT, which requires arbitration.

In summary, should the Court consider the arbitrability of IUBAC's claims against Defendants, contrary to the clear and unmistakable agreement to delegate these issues to the arbitrator, the Court should compel IUBAC to bring all of its claims against all Defendants in arbitration.

### IV. Defendants Have Not Waived Their Arbitration Rights.

IUBAC has asserted that Defendants waived the right to demand arbitration because Defendants and its counsel knew or should have known about the operative ASA and its dispute resolution provision. Further, IUBAC has claimed that the passage of time, briefing and argument on Defendants' Motion to Dismiss, exchange of written discovery, and attending mediation all support a finding of waiver. IUBAC is wrong. Defendants have not waived their right to demand arbitration. Quite the opposite: Defendants asserted their rights as quickly as possible.

There is a "strong presumption in favor of arbitration" and waiver of the right to arbitration "is not to be lightly inferred." *Coca-Cola Bottling Co. of New York v. Soft Drink & Brewery Workers Union Loc.* 812, 242 F.3d 52, 57 (2d Cir. 2001). Mere negligence or mistake is not enough. Rather, to establish waiver, it must be shown that a party "knowingly relinquish[ed] the right to arbitrate." *Billie v. Coverall North Am. Inc.*, 2023 WL 2531396, at *3 n.3 (2d Cir. Mar. 15, 2023) (quoting *Morgan v. Sundance*, 142 S. Ct. 1708, 1714 (2022)).

There are no facts here to even suggest Defendants have knowingly relinquished their right to arbitrate. Defendants have repeatedly shown that when they decided to seek dismissal of IUBAC's claims, they did not know that an operative 2007 contract contained an arbitration provision. Braun Decl., ¶ 5. Potentially because of the 2007 ASA's age, Anthem BCBS-CT's contract database did not include it. *Id*. Instead, the database contained a different, newer contract that does not contain an arbitration provision: a base administrative services agreement effective *in 2016* and subsequent amendments. *Id*., ¶ 4. These agreements named IUBAC and set out the specific rates that IUBAC paid for administrative services. *See generally* Black Decl, Ex. 1. Based on its records, Defendants reasonably concluded that IUBAC had asserted claims based on the recent ASA, and Defendants attached this 2016 agreement to their motion to dismiss.

IUBAC knew that Defendants believed the 2016 agreement to be the basis for IUBAC's claims. But IUBAC avoided asserting otherwise and declined to provide the 2007 ASA. In response to Defendants' Motion to Dismiss, IUBAC *claimed that the 2016* contract Defendants had attached differed from the contracts in IUBAC's possession. ECF No. 66, at 2, 10 & n.6. But IUBAC *never* stated that it was suing based on an older contract (that went into effect in 2007), and notably refused to attach what it believed to be the operative contract.

12

Only on July 19, 2024 did IUBAC finally assert it was proceeding based *on the 2007 ASA* and provide Defendants with a copy. After a brief investigation, Defendants promptly served a demand for arbitration.

In short, as the contracts attached to Defendants' Motion to Dismiss show, Defendants did not know of an arbitration agreement when they sought dismissal of Plaintiffs' complaint. Had IUBAC not hid the ball for *nearly two years* and made Defendants aware an earlier contract containing an arbitration agreement applied to their claims, Defendants would have sought to arbitrate promptly—as they have done after learning of the 2007 ASA.

None of this history shows that Defendants knowingly relinquished their right to arbitrate. Courts routinely find no waiver in similar circumstances, at a similar stage of litigation. *See, e.g.*, *Boustead Sec., LLC v. Leaping Grp. Co., Ltd.*, 656 F.Supp.3d 447, 453 (S.D.N.Y. 2023) (finding no waiver of right to arbitrate after two years of litigation, including three motions to dismiss—one of which resulted in dismissal and an amended complaint, explaining that "pre-answer motion practice does not constitute the sort of significant litigation that weighs in favor of finding that there has been a waiver of an arbitration agreement.") (collecting cases); *Flores v. Nat'l Football League*, 658 F. Supp. 3d 198, 211 (S.D.N.Y. 2023) ("delay alone", even as much as "three years", is "insufficient to constitute waiver" when the parties have not engaged in "substantive litigation") (citing *Nicosia v. Amazon.com, Inc.*, 2023 WL 309545, at *4 n.2 (2d Cir. Jan. 19, 2023)); *De Jesus v. Gregory's Coffee Mgmt., LLC*, 2022 WL 3097883, at *8 (E.D.N.Y. Aug. 4, 2022) (eight-month delay in moving for arbitration was "attributable to Defendants being unaware of the existence of the Arbitration Agreements" and thus delay factor did not weigh in plaintiffs' favor).

**V.  This Action Should Be Stayed Pending Completion of Arbitration.**

If the Court agrees that IUBAC must be compelled to arbitrate its claims, the Court must stay proceedings pending the completion of that arbitration. *See Smith v. Spizzirri*, 601 U.S. 472,

478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Further, to the extent that any claims in this action are not subject to arbitration—including claims brought by Plaintiff Sheet Metal Workers—the Court should exercise its discretion to stay those claims pending a final arbitration decision, in the interest of efficiency and consistent with the FAA's purpose to promote arbitration. *See, e.g.*, *Errato v. Am. Express Co.*, 2019 WL 3997010, at *12 (D. Conn. Aug. 23, 2019) ("The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket.") (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)). At the very least, the Court should stay this entire action pending the arbitrator's ruling on Plaintiff IUBAC's anticipated challenge to the arbitrability of its claims. While Defendants believe that all of Plaintiff IUBAC's claims are subject to arbitration, the arbitrator may disagree, which could result in additional claims or Defendants returning to this case. A stay would ensure that the Court knows which parties will be part of this case before proceeding with discovery and further litigation.

## CONCLUSION

For all of the reasons stated herein, the Court should grant Defendants' motion to compel arbitration of the claims asserted by IUBAC and stay proceedings pending arbitration.

Dated: September 30, 2024                  Respectfully submitted,

By: /s/ *Michael G. Durham*
Michael G. Durham
Matthew H. Geelan
CARMODY TORRANCE SANDAK &
HENNESSEY LLP
741 Boston Post Road, Suite 306

Guilford, CT 06437
Tel: (203) 458-9168
Fax: (203) 458-4424
mdurham@carmodylaw.com
mgeelan@carmodylaw.com

E. Desmond Hogan (*admitted pro hac vice*)
Briana L. Black (*admitted pro hac vice*)
W. David Maxwell (*admitted pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
desmond.hogan@hoganlovells.com
briana.black@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Defendants Elevance Health, Inc., Anthem Health Plans, Inc., Blue Cross of California, Empire HealthChoice Assurance, Inc., and Empire Health Choice HMO, Inc.*