**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND and TRUSTEES OF SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, individually and on behalf of the INTERNATIONAL BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND, the SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, and all others similarly situated, | |
| | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| Plaintiffs, | 3:22-cv-01541 (VDO) |
| v. | |
| ELEVANCE, INC. F/K/A ANTHEM, INC., ANTHEM HEALTH PLANS, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD, ANTHEM BLUE CROSS, EMPIRE BLUE CROSS BLUE SHIELD, and EMPIRE BLUE CROSS, | |
| Defendants. | |

i                                    ORAL ARGUMENT REQUESTED

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 1

II.     RELEVANT FACTS ............................................................................... 2

III.    LEGAL STANDARD ........................................................................... 10

IV.    ARGUMENT ........................................................................................ 11

        A.    Defendants Have Waived any Right to Arbitrate .................................... 11

        B.    Even if the Arbitration Provision has not Been Waived, the Issues and Most Parties are Beyond the Scope of the Provision. ................................................. 16

        C.    A Stay of this Action Pending Arbitration is Not Warranted ................................. 19

**CONCLUSION** ........................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arbercheski v. Oracle Corp.*
  339 F. App'x 5 (2d Cir. 2009) ............................................................................... 18, 19
*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.*,
  2021 WL 2350094 (S.D.N.Y. June 8, 2021) ................................................................ 25
*Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*,
  409 F.3d 87 (2d Cir. 2005) ........................................................................................... 27
*Birmingham Assocs. Ltd. v. Abbott,*
  *Lab'ys.*, 547 F. Supp. 2d 295 (S.D.N.Y. 2008) (applying New York law) ..................... 25
*Boroditskiy v. Eur. Specialties LLC,*
  314 F. Supp. 3d 487 (S.D.N.Y. 2018)........................................................................... 13
*Cantonbury Heights Condo. Ass'n., Inc. v. Loc. Land Dev., LLC,*
  873 A.2d 898 (Conn. 2005) ......................................................................................... 24
*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,*
  346 F.3d 360 (2d Cir. 2003) ......................................................................................... 10
*Chang v. Lin,*
  824 F.2d 219 (2d Cir. 1987) ......................................................................................... 26
*Clay v. FGO Logistics, Inc.,*
  2024 WL 4335791 (D. Conn. Sept. 27, 2024).......................................................... 13, 14
*Com-Tech Assocs. v. Computer Assocs. Int'l., Inc.*,
  938 F.2d 1574 (2d Cir. 1991) ....................................................................................... 17
*Cotton v. Slone,*
  4 F.3d 176 (2d Cir. 1993) ........................................................................................ 18, 22
*Davis v. Dynata, LLC,*
  2023 WL 6216809 (D. Conn. Sept. 25, 2023)................................................ 11, 12, 17
*Dean Witter Reynolds Inc. v. Byrd*,
  470 U.S. 213 (1985) ..................................................................................................... 27
*Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*,
  523 F. App'x 738 (2d Cir. 2013) ................................................................................... 27
*GateGuard, Inc. v. Goldenberg*,
  585 F. Supp. 3d 391 (S.D.N.Y. 2022).................................................................... 17, 23
*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
  815 F.2d 840 (2d Cir. 1987) .................................................................................... 26, 27
*James v. Venture Home Solar, LLC*,
  715 F. Supp. 3d 203 (D. Conn. 2024)........................................................................... 10
*Katz v. Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015) ......................................................................................... 12
*La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  626 F.3d 156 (2d Cir. 2010) ................................................................................. *passim*
*Lojewski v. Grp. Solar USA, LLC,*
  2023 WL 5301423 (S.D.N.Y. Aug. 17, 2023) ............................................................. 25
*Morgan v. Sundance, Inc.*,
  596 U.S. 411 (2022) .............................................................................................. *passim*

*Morelli v. Alters*
    2020 WL 2306645 (S.D.N.Y. May 8, 2020) ........................................................... 27

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ........................................................................... 14

*Oldroyd v. Elmira Sav. Bank FSB*,
    134 F.3d 72 (2d Cir. 1998) ............................................................................. 12

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
    128 F.3d 103 (2d Cir. 1997) ........................................................................... 15

*P'ship., Inc. v. Rudin*,
    538 F. App'x 38 (2d Cir. 2013) ...................................................................... 22

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ........................................................................... 10

*S & R Co. of Kingston v. Latona Trucking, Inc.*,
    159 F.3d 80 (2d Cir. 1998) ............................................................................. 16

*Schreiber v. Friedman*,
    2017 WL 5564114 (E.D.N.Y. March 31, 2017) .............................................. 13

*Smith/Enron Cogeneration Ltd. P'ship., Inc. v. Smith Cogeneration Int'l., Inc.*,
    198 F.3d 88 (2d Cir. 1999) ............................................................................. 25

## I.    INTRODUCTION

More than two years after trustees for Plaintiff International Union of Bricklayers and Allied Craftworkers Local 1 Connecticut Health Fund (the "Local 1 Fund") invoked the arbitration provision-containing dispute resolution section in its contract with Defendant Anthem Health Plans, Inc., doing business as Blue Cross Blue Shield of Connecticut ("BCBS-CT"), Defendants demanded arbitration of all issues raised by the Local 1 Fund Plaintiff on their own behalf and on behalf of a proposed class of self-funded health plans, against all Defendants, not just BCBS-CT, the only Defendant with the contractual arbitration provision. Plaintiffs rejected Defendants' demand, and Defendants now ask the Court to compel arbitration and stay the remaining claims in this case, which involve an additional plaintiff and several defendants with whom there is no potentially applicable arbitration provision. This motion is made more than 18 months after the Complaint was filed and well into the litigation process. This motion comes after the parties negotiated a protective order and other Rule 26F planning issues, after the parties issued and responded to written discovery, after the parties engaged in extensive briefing on Defendants' Motion to Dismiss, including oral arguments before the Court, after the pleadings have been amended, and even after the parties attended mediation in November of 2023 in an attempt to resolve this matter.

It is too late—Defendant BCBS-CT has waived any right to arbitrate this action. Defendants had ample opportunity to "discover" the arbitration provision in the contract it wrote and regularly amended long before Plaintiff reproduced its full version of the agreement to Defense counsel on July 19, 2024. The provision was raised routinely by the Local 1 Fund in correspondence to Defendants and was discussed in the first conference between Plaintiffs' counsel and Defendants' counsel, as confirmed in a follow-up email from Defendants' counsel. The first time Plaintiffs had any indication that Defendants were relying on the wrong set of

1    ORAL ARGUMENT REQUESTED

contracts between the Local 1 Fund and BCBS-CT was in Defendants' Motion to Dismiss. In their Opposition, Plaintiffs informed the Court and Defendants that the unsigned template version of the contract Defendants attached to Defendants' Motion to Dismiss was an incomplete and inaccurate version of the agreement between the Local 1 Fund and BCBS-CT—that Opposition was filed more than 15 months before Defendants eventually requested Plaintiffs' version of the Local 1 Fund contract documents on July 9, 2024.

Separate from Defendants' waiver of arbitration due their untimely arbitration demand, this matter is not suitable to compel to arbitration. None of the other Defendants[1] have a right to demand arbitration, as they are not parties to the contract which contains the arbitration provision. Similarly, the other Plaintiff, Sheet Metal Workers Local No. 40 Health Fund (the "Local 40 Fund") cannot be compelled to arbitrate the issues raised in the Complaint, as its contract does not have an arbitration provision. Nor are the issues raised by the Local 1 Fund appropriate for arbitration as they do not arise solely under the contract with BCBS-CT but are claims arising more broadly under the Employee Retirement Income Security Act of 1974 ("ERISA") regarding the duties of Defendants when administering self-funded plans, and Defendants' obligations as a fiduciary or as a service provider under ERISA to the Plaintiffs and other self-funded health plans. Finally, to the extent the Court is inclined to compel arbitration of any of the issues between the Local 1 Fund and BCBS-CT, this case should *not* be stayed.

## II.    RELEVANT FACTS

The Local 1 Fund and BCBS-CT entered into an Administrative Services Agreement ("ASA") in 2007, under which Defendants gave the Local 1 Fund access to their network of

---

[1] In addition to BCBS-CT, Elevance Health, Inc. ("Elevance"), Blue Cross of California ("BC-Cal"), Empire HealthChoice Assurance, Inc., and Empire Health Choice HMO, Inc. (collectively, "Empire") are Defendants in this action.

medical providers at negotiated rates and provided related administrative services for a monthly fee. *See* ECF 91, Am. Compl. ¶ 4. The initial ASA in the Local 1 Fund's files is signed by the Local 1 Fund, and the subsequent amendments are signed by both the Local 1 Fund and BCBS-CT. Ex. 1 (Full ASA with available Amendments between Local 1 Fund and BCBS-CT.)[2]; Declaration of Julie S. Selesnick ("Selesnick Decl.") ¶ 2.

The arbitration provision in the ASA between the Local 1 Fund and BCBS-CT states:

(m) Dispute Resolution. Except for matters specifically addressed herein, the parties shall use good faith efforts to negotiate resolution to any other disagreement hereunder for a period of thirty (30) days. If the disagreement is not resolved by such good faith negotiations, then the parties may, by agreement at any time, submit the matter to non-binding mediation. Mediation shall be conducted by a neutral third party selected by the parties. **In the event of a dispute solely between the parties hereto, (excluding, without limitation, third party litigation) which dispute the parties cannot resolve by negotiation or mediation, any party *may* serve upon the other party a written demand for binding arbitration which shall identify specifically the matters to be arbitrated.** Within five (5) days thereafter. the parties shall appoint one person to act as arbitrator. Such person shall have no personal or pecuniary interest, either directly or indirectly, in the outcome of the matters disputed and shall not be an employee, agent or contractor of a party. If ·the parties fail to appoint an arbitrator within the allotted time, the matter shall be submitted to the American Arbitration Association for appointment of an arbitrator, provided that such arbitrator meets the qualifications described above. When selected, the arbitrator shall thereafter proceed in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The arbitration hearings shall commence not less than twenty-five (25) days nor more than forty-five (45) days following the date of the appointment of the arbitrator unless extended by mutual agreement of the parties in interest or by the arbitrator. The arbitrator shall have complete discretion to establish the time and place of the arbitration within the State of Connecticut. **Nothing herein shall be interpreted to limit the rights of any party to seek injunctive or equitable relief pending arbitration.** The costs of any dispute resolution process under this Agreement shall be borne equally by the parties, and the parties shall each be responsible for their own legal and consultancy fees, if any, incurred in connection with the dispute resolution.

Ex. 1 at 25, ASA, Sec. 17(m) (emphasis added).

---

[2] Neither party has been able to locate Amendment No. 5 and Amendment Nos. 7-9, but Plaintiffs' version of the ASA and amendments at Exhibit 1 contains the base agreement, Amendment Nos. 1-4, 6, and 10-12, and all amendments are signed by both parties.

The Local 1 Fund first sought access to its health plan claims data from Defendants on March 16, 2022, in efforts to fulfill their fiduciary duty to monitor the service providers to the Local 1 Fund and ensure claims were being paid properly and in accordance with the governing contracts. Am. Compl. ¶ 51. After more than six months of unsuccessful negotiations with Defendants to obtain the data, on August 24, 2022, counsel for Plaintiffs sent a letter to Joan Conlan, an employee of Defendant Empire and the acting account representative for the Local 1 Fund, which specifically referenced Section 17(m) of the ASA and stated that if Defendants did not agree to immediately provide the Local 1 Fund with the full claims data it requested, the Local 1 Fund would respond ***"by formally implementing the dispute resolution procedures outlined in the ASA***, which begins with 'good faith efforts to negotiate resolution to any other disagreement hereunder for a period of thirty (30) days.'"* Ex. 2 (Aug. 24, 2022 Letter to J. Conlan) (emphasis added); Selesnick Decl. ¶ 3. Defendants failed to respond to that letter so, a little more than three months later, on December 2, 2022, counsel for the Local 1 Fund sent a follow-up letter to Ms. Conlan, formally invoking the dispute resolution procedure contained in the ASA. Ex. 3 (Dec. 2, 2022 Letter to J. Conlan); *see* Selesnick Decl. ¶ 4. That letter stated, in relevant part:

> [P]lease accept this letter as a formal initiation of the dispute resolution process set forth in the Administrative Services Agreement (ASA) that governs the relationship between Anthem and BAC Local 1, which begins with a thirty (30) day obligation of the parties to make good faith efforts to negotiate resolution of disagreements. As BAC Local 1 contacted Anthem in August to discuss its inability to access its claims data and monitor Anthem's performance under the ASA as it is required to do by law, the ball is in Anthem's court to respond with potential solutions to this problem or provide the data as the August 24 letter requests.

While awaiting a response from Defendants to this second letter, Plaintiffs filed the present action. (ECF No. 1.) Defendants' Motion to Compel states that after receiving the December 2, 2022 Letter to J. Conlan, Defendants "could not determine from where [the Local 1 Fund] had gotten the dispute resolution language." ECF No. 97, Mot. to Compel at 2. Yet at no time did Defendants

ask the Local 1 Fund about the dispute resolution process to which the letters were referring; in fact, Defendants never responded to either letter. *See* Selesnick Decl. ¶ 5.

Shortly after filing this lawsuit, Defendants retained counsel and on December 29, 2022, counsel for Plaintiffs and counsel for Defendants engaged in an initial meet and confer to discuss the Complaint and related issues. Selesnick Decl. ¶ 6. During that conversation, counsel for Defendants sought an extension of time to respond to the Complaint and confirmed that counsel they had reviewed Plaintiffs' December 2, 2022 letter and were aware of the existence of the dispute resolution provision, confirmed later the same day via email. Ex. 4 (Dec. 29, 2022 email from Defendants' counsel to Plaintiffs' counsel); Selesnick Decl. ¶ 6. Indeed, the follow-up email from Defendants' counsel stated, in relevant part:

> In addition, we discussed the early December letter that Julie sent to John Conlan [sic] invoking the dispute resolution process of the ASA. In light of the holidays we [sic] and the fact that we are just coming into the case, I asked for an extension of time to engage in that dispute resolution process and you agreed. Thank you for your professional courtesy. Can you please let us know some times during the week of January 9 or January 16 that you would be available for a call to engage in these potential resolution discussions?

*Id.* Defendants' counsel did not seek clarification regarding the dispute resolution provision in the ASA that the Local 1 Fund had invoked, nor claim that Defendants were unable to determine what agreement contained this dispute resolution language, nor ask for a copy of the ASA to which Plaintiffs were referring.

Counsel discussed dispute resolution in a meet and confer on January 24, 2023; at no point did counsel for Defendants ask what provision of the ASA these discussions were initiated under. *See* Selesnick Decl. ¶ 7, On March 2, 2023, counsel for Defendants indicated via email that they would "circle back" on issues for potential resolution after Defendants had filed a responsive pleading. *See* Selesnick Decl. ¶ 8.

On March 10, 2023, Defendants filed a Rule 12(b)(1) and 12(b)(6) Motion to Dismiss. (ECF No. 41.) Defendants attached as an exhibit a document that Defendants named "Relevant Excerpts from Bricklayers Administrative Services Agreement," which appeared to be excerpts from a 2016 document that was never signed by The Local 1 Fund. (ECF No. 41-4.) The so-called "relevant portions" of the ASA between BCBS-CT and the Local 1 Fund attached to Defendants' motion was an unsigned form contract that stated in the footer on the very first page "Enterprise Administrative Services Agreement – JAA Master Template". *Id. See* Selesnick Decl. ¶ 9. This was the point at which Plaintiffs realized for the first time that Defendants were relying on an incorrect set of contracts and amendments between BCBS-CT and the Local 1 Fund. *Id.* Plaintiffs explicitly stated that this was *not* the ASA between the Local 1 Fund and BCBS-CT in their May 15, 2023 Opposition to Defendants' Motion to Dismiss:

> Trustees dispute the authenticity of Defendants' Exhibits A and B. Trustees possess fully executed ASAs between [BCBS-CT] and the Funds that were the ASAs referred to in the Complaint and that contain different terms than those in Exhibits A and B, which are not fully executed documents but instead are drafts that do not contain the signature of anyone representing the Funds. They have notations at the bottom left corner describing them as "templates." Furthermore, Defendants describe them as "excerpts" and not the full document. Because their authenticity is disputed, this Court should not consider them in deciding the Motion to Dismiss.

ECF No. 66, Pls.' Opp. to Defs.' Mot. to Dismiss at 10, n.6. *See* Selesnick Decl. ¶ 10. Even after this express identification by Plaintiffs of the existence of a different ASA governing the Local 1 Fund's relationship with BCBS-CT, containing differing contractual language, Defendants *still* did not ask for a copy of the relevant ASA in Plaintiffs' possession. *Id.* While Defendants' Motion to Dismiss was pending, the Parties participated in a Rule 26(f) conference, during which Defendants never sought a copy of the ASA Plaintiffs claimed was the operative contract and never raised a right to arbitration or any potential alternative dispute resolution process as a potential defense in the subsequent report filed with the Court on April 21, 2023. ECF No. 59. *See* Selesnick

Decl. ¶ 11. In the meantime, the Parties commenced fact and expert discovery, with both sides issuing written discovery requests and responses. *Id.*

On April 22, 2024 the Court issued a Memorandum and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss and allowing Plaintiffs sixty (60) days to file an Amended Complaint. The Court rejected Defendants' fact-based challenge to Plaintiffs' claims related to the ASA because Defendants were relying on draft documents that did not contain the Plaintiffs' signatures. ECF No. 86, April 22 Mem. and Order at 11. ***Even still***, Defendants did not request copies of the ASAs from Plaintiffs' files. *See* Selesnick Decl. ¶ 12.

On June 21, 2024, Plaintiffs filed a Motion for Leave to Amend the Complaint (ECF No. 88), after which Defendants, on July 9, 2024, ***finally*, more than 18 months after the initial Complaint was filed,** requested copies of the ASAs on which Plaintiffs were relying. *See* Selesnick Decl. ¶ 13. Plaintiffs filed the Amended Complaint on July 15, 2024 (ECF No. 91), and on July 19, 2024, produced executed copies of the ASAs to Defendants. *Id.* On July 25, 2024, Defendants suggested the parties seek a joint extension of time for Defendants to file either an Answer or Motion to Dismiss the Amended Complaint to allow time for the parties to attempt to reconcile the differing ASAs on which the parties were relying. Plaintiffs agreed and on July 29, 2024, the parties jointly requested that the Court allow the parties until August 30, 2024 to confer and try to reach agreement regarding the operative set of contracts. (ECF No. 92).

On August 27, 2024, 39 days after being provided with a copy of the Local 1 Fund's executed ASA that contained the arbitration provision, Defendants sent a letter to the Local 1 Fund demanding arbitration of all claims brought by the Local 1 Fund against all Defendants. Ex. 5; *see* Selesnick Decl. ¶ 14. On August 28, 2024, Plaintiffs sent a response letter on behalf of the Local 1 Fund objecting to the belated demand for arbitration. Ex. 6; *see* Selesnick Decl. ¶ 15. Now, after

almost two years of active litigation, after seeking and being granted dispositive relief, and after displaying an utter lack of curiosity and urgency during all of the events described herein to ensure it was relying on the proper ASA, despite the vast number of instances after which Defendants knew or should have known there was an arbitration provision in the ASA *it wrote* and entered into with the Local 1 Fund, Defendants move this Court to compel the Local 1 Fund to arbitration and stay this entire action—which primarily includes parties *not* subject to the arbitration provision—pending the outcome of that arbitration.

Defendants' position regarding the complete operative version of the ASA is unclear at best, but a review of the exhibits attached to the instant Motion to Compel and those attached to Defendants' Motion to Dismiss filing shortly thereafter (ECF No. 98), suggests that Defendants "accept" the portions of the fully executed ASA between the Local 1 Fund and BCBS-CT through Amendment 4, which was executed by the Local 1 Fund and BCBS-CT in September and October 2013, respectively, while still appearing to claim that the unexecuted version of the 2016 through 2022 template ASA also govern the class period. If this is indeed what Defendants are claiming, this Motion to Compel must be denied, because if the 2016 ASA supersedes the 2007 ASA, then there *is* no arbitration provision, as the 2016 version attached by Defendant includes an entirely new base agreement with no dispute resolution provision. Defendant offers no explanation for how the 2016 ASA with subsequent Amendments it attaches to these motions could possibly be applicable to the relationship of the parties. In contrast, the Local 1 Fund has produced executed Amendments, the last one executed by both parties in 2022, including Section 17(c) of the 2007 ASA (which Defendants agree is the base operative document) which states that the ASA cannot be amended without an instrument in writing "duly executed by each of the parties hereto." Ex. 1, 2007 ASA, p. 24.

Yet Defendants inexplicably attach the 2007 ASA and Amendments 1 through 4 (the last signed in 2013), to the Motion to Compel Arbitration, as well as the documents found in the files of Defendant Elevance, which are the 2016 template ASA and template amendments thereto (previously filed as exhibits to Defendants' initial Motion to Dismiss). None of these templates are signed by anyone at the Local 1 Fund, and Defendants provide no explanation as to how the 2016 template ASA and template amendment thereto could become the operative ASA, supplanting Amendments 10-12 to the 2007 ASA produced by Plaintiffs which are signed by BCBS-CT and the current trustees of the Local 1 Fund. Amendment 12 is also signed by BCBS-CT's current president, Lou Gianquinto, yet no Declaration is attached from him or any other signatory from BCBS-CT, only a Declaration from counsel and one from Andrew Braun, Staff Vice President, Underwriting Policy at Elevance, responsible for overseeing contract administration, including contract document management and tracking. *See* Braun Decl.at ¶¶ 1-2.

While counsel represents all Defendants, her Declaration does not state that counsel sought the operative Local 1 Fund ASA with amendments from BCBS-CT, even after seeing that the base ASA and amendments produced by Plaintiffs were signed by various vice presidents and the current president of BCBS-CT. There is no Declaration from anyone at BCBS-CT stating that it had searched for and produced the operative ASA and amendments with the Local 1 Fund nor is there any indication that counsel sought copies of the ASA with amendments from any Defendant other than Elevance, the parent company. In the absence of any evidentiary support or even explanation regarding how this could have occurred, the unsigned, template 2016 ASA with amendments through 2022 produced by Defendants cannot be authenticated as the operative documents when Plaintiffs have produced the ASA with executed amendments through 2022.

### III.    LEGAL STANDARD

Congress enacted the Federal Arbitration Act ("FAA") "to make arbitration agreements as enforceable as other contracts, but not more so.'" *James v. Venture Home Solar, LLC*, 715 F. Supp. 3d 203, 214 (D. Conn. 2024); *quoting Ross v. Am. Express Co*., 547 F.3d 137, 143 (2d Cir. 2008) (*quoting Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003)). Like other contracts, a party can waive its contractual right to arbitrate by "acting inconsistently with that right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022).

In *Davis v. Dynata, LLC,* 2023 WL 6216809, at *5 (D. Conn. Sept. 25, 2023), the district court set forth the three-factor analysis previously endorsed by the Second Circuit to determine whether a party has waived its right to compel arbitration: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Dynata*, 2023 WL 6216809, at *5 (internal citations omitted). Noting the third element was no longer applicable since *Sundance*, the court found that the first two factors weighed in favor of finding waiver. *Id*. The court found that Dynata had waived its right to move to compel arbitration, given the "nearly nine months" that had "passed between the filing of the complaint and Dynata's effort to . . . compel arbitration, and [the fact that] motion practice—including briefing on Dynata's own motion to dismiss—was well underway." *Id.* That is consistent with the Supreme Court's interpretation of Section 6 of the FAA in *Sundance*, where the Court found no requirement of prejudice as a condition of finding that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA. *Sundance,* 596 U.S. at 419.

While a stay is mandatory if all claims in an action are arbitrable, if some, but not all, of the claims are arbitrable, the court "must then decide whether to stay the balance of proceedings pending arbitration." *Oldroyd v. Elmira Sav. Bank FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998),

*overruled in part on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015). If "non-arbitrable claims . . . predominate" in a proceeding, courts in the Second Circuit often decline to issue broad stays that apply to non-arbitrable claims and parties that are not subject to the arbitration agreement. *See*, *e.g.*, *Schreiber v. Friedman*, 2017 WL 5564114, at *22 (E.D.N.Y. March 31, 2017) (declining to issue stay when non-arbitrable claims predominated).

"In deciding motions to stay or compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment." *Clay v. FGO Logistics, Inc*., 2024 WL 4335791, at *5 (D. Conn. Sept. 27, 2024); *quoting Boroditskiy v. Eur. Specialties LLC*, 314 F. Supp. 3d 487, 492 (S.D.N.Y. 2018) (internal quotations marks omitted). That standard requires the Court to "consider all relevant, admissible evidence submitted by the parties" and "draw all reasonable inferences in favor of the non-moving party." *Clay,* 2024 WL 4335791, at *5; *quoting Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016) (internal quotation marks omitted).

## IV.  ARGUMENT

### A.  Defendants Have Waived any Right to Arbitrate

Defendants' Motion is entirely predicated on claiming that Plaintiffs intentionally hid the existence of an arbitration provision and that Defendants acted diligently in all regards, including demanding arbitration immediately upon learning of an ASA with an arbitration provision. But the reality is that Defendants have been on notice since August 2022, more than two years prior to the arbitration demand, that the Local 1 Fund was relying on a dispute resolution provision in the parties' ASA. Defendants have presented zero evidence that they ever asked Plaintiffs to provide a copy of the dispute resolution provision they continued to cite to or the ASA they were relying on, or that Defendants ever sought the operative version of the ASA from BCBS-CT, the entity which signed the ASA and all amendments thereto. After finally requesting copies of the relevant ASAs on July 9th and receiving them on July 19th, more than 19 months into this litigation—

Defendants *still* did not demand arbitration for an additional 39 days—the facts belie any notion that Defendants acted with the diligence required to avoid relinquishing its right to arbitrate.

Defendants' conduct in this case—filing pretrial motions, issuing and responding to written discovery, and litigating this action for almost two years—presents a clear case of Defendants' waiver of any right to arbitrate. As the Supreme Court explained in *Morgan v. Sundance*, waiver occurs when a party "knowingly relinquish[es] the right to arbitrate by acting inconsistently with that right." 596 U.S. 411, 419 (2022). While most Second Circuit cases pre-date *Sundance* and contain the now-irrelevant prejudice requirement, even under the pre-*Sundance* standard Defendants have clearly waived their right to arbitrate. The Second Circuit has consistently found that filing dispositive motions and engaging in pre-trial discovery not available in arbitration is sufficient to constitute waiver. *See, e.g., La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 626 F.3d 156, 160 (2d Cir. 2010) (finding waiver where plaintiff pursued litigation for more than a year before seeking arbitration); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2d Cir. 1997) ("We have held that sufficient prejudice to sustain a finding of waiver exists when a party takes advantage of pre-trial discovery not available in arbitration."); *see also S & R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 84 (2d Cir. 1998) (finding waiver where, inter alia, party moving to compel arbitration issued discovery requests, participated in two settlement conferences, and moved to dismiss).

A party can waive a contractual right to arbitrate by acting inconsistently with that right, which can be evidenced by "(1) the time elapsed from when litigation was commenced until the request for arbitration; and (2) the amount of litigation to date, including motion practice and discovery." *La. Stadium & Exposition Dist.*, 626 F.3d 159, 161 (finding waiver after delay of seven months). Looking at the first factor, BCBS-CT did not issue an arbitration demand to Plaintiffs

until over twenty months after this action was filed. Courts in the Second Circuit have routinely found that a delay of this length is sufficient for a finding of waiver. *See*, *e.g.*, *Davis v. Dynata, LLC,* 2023 WL 6216809, at *5 (D. Conn. Sept. 25, 2023) (finding waiver after delay of nine months); *GateGuard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391, 397 (S.D.N.Y. 2022) (finding waiver after delay of twenty-two months); *La. Stadium & Exposition Dist.,* 626 F.3d at 161; *Com-Tech Assocs. v. Computer Assocs. Int'l., Inc.*, 938 F.2d 1574, 1576 (2d Cir. 1991) (finding waiver after delay of eighteen months).

Turning to the second factor, this case has seen a significant amount of litigation, with Defendants spending the past twenty-two months successfully moving to dismiss Plaintiffs' initial complaint, issuing and responding to written discovery, attending scheduling and discovery conferences, and participating in a mediation. The Second Circuit has held that "a party seeking to compel arbitration engag[ing] in discovery procedures not available in arbitration [and] mak[ing] motions going to the merits of an adversary's claims," like what has occurred here, is a sufficient level of substantive litigation to constitute waiver. *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993). In *Arbercheski v. Oracle Corp.*, the Second Circuit held that a defendant waived its right to arbitration after engaging in almost identical conduct to Defendants in this action. 339 F. App'x 5 (2d Cir. 2009). The defendant in *Arbercheski*, like Defendants here, moved (partially successfully) pursuant to Rule 12(b)(6) to dismiss Plaintiffs' claims, issued and responded to discovery, and participated in a scheduling conference and a failed mediation, then moved to compel eleven months after the action was initially filed. *Id*. On these markedly similar facts, the court in *Arbercheski* found that the defendant had waived its right to compel arbitration. *Id*.

Defendants, however, insist that their almost two-year delay should be excused because they did not have a copy of the signed ASA that *they themselves drafted and regularly updated* in

their records. Defendants' own negligence in their record-keeping does not excuse their failure to move to compel arbitration for almost two years on a contract that BCBS-CT itself signed. In *La. Stadium & Exposition Dist.*, a party seeking to compel arbitration made a similar argument, with the party claiming that its delay should be excused because it did not learn that certain parties were subject to arbitration agreements until one month before moving to compel arbitration. 626 F.3d at 160. The Second Circuit was "unsympathetic" finding that the party seeking arbitration had not made any significant effort to discern whether any arbitration agreements applied to the dispute. *Id*. Accordingly, the Second Circuit affirmed the district court's denial of the motion to compel arbitration. *Id*.

Here too, Defendants made no effort whatsoever to determine whether an arbitration agreement existed. As set forth above, Plaintiffs raised the dispute resolution provision in the 2007 ASA to Defendants twice before filing this lawsuit, in August and December of 2022. Both times, Plaintiffs received no response. Finally, almost a month after filing this lawsuit, Defendants' counsel contacted Plaintiffs, and Defendants confirmed that they agreed to participate in the dispute resolution provision in the 2007 ASA. At that time, Defendants did not ask what contract Plaintiffs were referring to, and Plaintiffs had every reason to believe Defendants had a copy of the 2007 ASA because Defendants drafted the 2007 ASA, signed the 2007 ASA, and confirmed that they would be participating in the dispute resolution provision contained in the 2007 ASA. Had Defendants asked for a copy of the 2007 ASA at this time, Plaintiffs would of course have provided Defendants with one. Even the evidence of Defendants' search for the operative ASA is lacking.

There is no explanation for how the Defendants determined that the ASA found in Elevance's files could be the operative document after seeing the version produced by Plaintiffs,

which contains amendments to the 2007 ASA, signed by the current trustees of the Local 1 Fund. Amendment 12 was also signed by BCBS-CT's current president, Lou Gianquinto, yet no Declaration is attached from him or any other signatory from BCBS-CT. In fact, there is no evidence that Defendants ever searched BCBS-CT's files for the operative copy of the ASA with the Local 1 Fund, despite BCBS-CT being the Defendant that was the signatory to the ASA. Defendants instead rely on the declaration of an Elevance Vice President to authenticate an unsigned version of the ASA found in his own files, which Plaintiffs disputed in May 2023 was the operative document in their opposition to Defendants' initial motion to dismiss.

Rather than investigate, Defendants forged ahead with litigating their claims in court, including seeking dismissal of Plaintiffs' claims on the merits. ECF No. 41. When Plaintiffs filed their opposition on May 15, 2023, over a year prior to Defendants' arbitration demand, Plaintiffs explicitly stated that each Plaintiff had different contracts in their possession than the contracts attached by Defendants to their motion. *See, e.g.* ECF No. 66 at 2 ("The two unexecuted administrative service agreements . . . attached to its Motion that [BCBS-CT] asserts are the Plans' contracts, however, are not the same as the executed ASAs in the Plans' possession, which contain different language defining the relationship between the parties."). Still, Defendants *did not ask* for copies of the contracts Plaintiffs referred to in their opposition. They did not even ask after this Court refused to rely on their unauthenticated versions of the ASAs when ruling on their dismissal motion.

Though Defendants try to cast their own failure to request the relevant contracts as a vast conspiracy by Plaintiffs to avoid arbitration, the fact remains that Defendants never asked for a copy of the 2007 ASA until July 9, 2024, at which point Plaintiffs promptly provided it. Defendants then waited an *additional* 39 days to demand arbitration. To the extent Defendants truly did not

15

know of the existence of the 2007 ASA, that is solely a problem of their own making. Defendants' negligent record-keeping and subsequent failure to request the 2007 ASA are not sufficient grounds upon which to excuse their delay of almost two years in moving to compel arbitration.

Although prejudice is no longer a required factor to find waiver, Plaintiffs will suffer prejudice all the same if Defendants' belated motion is granted. Prejudice exists "when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay and expense." *Tech. in P'ship., Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (internal quotations excluded). Here, Defendants waited almost two years to invoke their contractual right to arbitration, forcing the Local 1 Fund to fully brief and argue a Motion to Dismiss, prepare amended pleadings, participate in discovery conferences, issue and respond to discovery, and attend an unsuccessful mediation. During that time, Defendants obtained a ruling on the merits from the Court. At this point, Plaintiffs would be significantly prejudiced by being forced to arbitrate their claims after spending almost two years and a significant amount of money litigating their claims in court. *See*, *e.g.*, *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (noting prejudice exists "when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.") (*citations omitted*). For all of these reasons, the Court should find that Defendants waived any right to arbitrate.

**B.    Even if the Arbitration Provision has not Been Waived, the Issues and Most Parties are Beyond the Scope of the Provision.**

Even if the Court somehow concludes that Defendants have not waived their right to arbitrate, only the claims between the Local 1 Fund and BCBS-CT are arbitrable. The Second Circuit has held that "a court considering a motion to compel arbitration of a dispute first must

determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration." *GateGuard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391, 396 (S.D.N.Y. 2022). Here, even if the Court finds that Defendants did not waive their agreement to arbitrate, the remaining factors—scope of the agreement, arbitrability of the class-wide ERISA claims, and the percentage of claims that are arbitrable versus those that are not—all mitigate against arbitration and, in the event that arbitration is compelled, the balance of the proceedings should not be stayed.

The scope of the arbitration provision at issue here is quite narrow—it applies only to "a dispute solely between the parties hereto . . . ." (ASA at 17(m).) The issues raised by the Local 1 Fund do not arise solely under the contract with BCBS-CT but are claims arising more broadly under ERISA regarding the duties of Defendants when administering self-funded plans, and Defendants' obligations as a fiduciary or as a service provider under ERISA to the Local 1 Fund and other self-funded health plans; that is a far broader set of issues than those arising under the terms of the ASA. Furthermore, only the Local 1 Fund and BCBS-CT are parties to the arbitration provision; the remaining Defendants are not parties to the 2007 ASA and, by extension, the arbitration provision, and cannot compel the Local 1 Funds to arbitrate their claims. As such, the claims of the Local 1 Fund against the other Defendants could proceed in this Court. Additionally, the ASA between the Local 40 Fund and BCBS-CT does not contain an arbitration provision, meaning the Local 40 Funds' claims against all Defendants will proceed in this Court, regardless of whether the Local 1 Fund is compelled to arbitration.

Defendants' assertion that the arbitration provision in a contract solely between the Local 1 Fund and BCBS-CT should be extended to *all* Defendants is nonsensical. The arbitration provision at issue expressly applies only to "a dispute *solely between the parties hereto*…" (Ex. 1, ASA at 17(m) (emphasis added)). The parties to the contract are the Local 1 Fund and BCBS-CT. There is nothing in the contractual language indicating that The Local 1 Fund and BCBS-CT intended for the arbitration provision to apply to any parties other than The Local 1 Fund and BCBS-CT, and nothing to override the language in the provision that expressly limits the provisions applicability to the parties to the contract.

As the Supreme Court explained in *Sundance*, arbitration agreements should be "treat[ed] like all other[]" contracts. 596 U.S. at 418-19. Because the 2007 ASA was executed in Connecticut, Connecticut contract law governs, which states that courts should "accord the language employed in the contract a rational construction based on its common, natural and ordinary meaning and usage as applied to the subject matter of the contract." *Cantonbury Heights Condo. Ass'n., Inc. v. Loc. Land Dev., LLC*, 873 A.2d 898, 904 (Conn. 2005). The language here is unambiguous. It clearly states that the contract only applies to disputes between the parties to the contract, which are The Local 1 Fund and BCBS-CT. As such, the language cannot be extended to non-signatories like the remaining Defendants.

The two cases Defendants cite in which non-signatories enforced arbitration agreements are inapposite. Initially, neither case applies Connecticut law. *See Smith/Enron Cogeneration Ltd. P'ship., Inc. v. Smith Cogeneration Int'l., Inc.*, 198 F.3d 88, 97 (2d Cir. 1999) (applying federal common law), *abrogation on other grounds recognized by Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir. 2023); *Birmingham Assocs. Ltd. v. Abbott Lab'ys.*, 547 F. Supp. 2d 295, 302-04 (S.D.N.Y. 2008)

(applying New York law). Further, both cases appear to apply unique rules developed exclusively in the arbitration context. Defendants cite no principle of general contract law that would permit a non-signatory who was not contemplated by the underlying contract to enforce the contract against a signatory. Without that, Defendants identify no principle of contract law that would permit the Court to compel The Local 1 Fund to arbitrate claims with the non-signatory Defendants.

In the event the Court compels The Local 1 Fund to arbitrate its claims against BCBS-CT, The Local 1 Fund cannot be compelled to also arbitrate its claims against the three non-signatory Defendants.

### C.    A Stay of this Action Pending Arbitration is Not Warranted

Finally, a broad stay of this action pending arbitration is inappropriate. The arbitration provision only pertains to the claims between the Local 1 Fund and BCBS-CT. The Local 1 Fund's claims against the remaining three defendants will remain in this Court and the Local 40 Fund's claims will proceed in this Court against all Defendants, including BCBS-CT. In determining whether an action should be stayed pending arbitration, courts may decline to stay proceedings if not all of the claims in the case are arbitrable. *See, e.g.*, *Lojewski v. Grp. Solar USA, LLC*, 2023 WL 5301423, at *14 (S.D.N.Y. Aug. 17, 2023) (not staying remaining claims in case that were not subject to arbitration); *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Zaro Bake Shop, Inc.,* 2021 WL 2350094, at *18 (S.D.N.Y. June 8, 2021) (refusing to stay the case subject to mediation after plaintiffs argued that ERISA claims brought under Section 1132(a)(3) are not subject to arbitration, as this section allows "a civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd*., 815 F.2d 840, 856 (2d Cir. 1987), *abrogated on*

*other grounds by Rodriguez-Depena v. Parts Authority, Inc*., 877 F.3d 122 (2d Cir. 2017) (staying entire action is typically only "appropriate if the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit."). Even if the Court compels the Local 1 Fund and BCBS-CT to arbitrate their claims, the Court should decline to order a broad stay when the vast majority of claims in this action are non-arbitrable.

While Defendants ask the Court to stay the entirety of the proceedings pending arbitration—including the claims of the Local 40 Fund—Defendants do not cite to any principle permitting the Court to stay the claims of a plaintiff who is not subject to an arbitration agreement. The Local 40 Fund has an entirely separate contract with BCBS-CT that does not contain an arbitration provision. Defendants do not explain why the Local 40 Fund should be delayed in litigating their claims against Defendants while an arbitration proceeds involving a different plaintiff under a different contract requiring arbitration. The Second Circuit has cautioned that staying non-arbitrable claims may cause a plaintiff to wait "months, if not years, before [their] non-arbitrable claims will be heard by a federal court." *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987).

Instead of citing any cases in which courts stayed proceedings involving non-signatory plaintiffs, Defendants rely on a single case stating that courts have discretion to stay actions as part of their inherent power to control their docket. (*See* ECF No. 97, Mot. to Compel at 14.) But Defendants bear a "heavy burden" in seeking a stay of a proceeding which includes non-arbitrable claims. *Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013). Defendants do not come close to meeting this burden. First, Defendants would need to show that "the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit." *Genesco*, 815 F.2d at 856. Defendants cannot show this, and do not even

attempt to claim that the non-arbitrable claims are of questionable merit. Next, to obtain a stay, Defendants would need to show that any arbitration between the Local 1 Fund and BCBS-CT would have a preclusive effect on the Local 40 Fund's claims against BCBS-CT. *See, e.g.*, *Morelli v. Alters*, 2020 WL 2306645, at \*4 (S.D.N.Y. May 8, 2020) ("The Court should also consider whether the issues decided in the arbitration are 'likely to have preclusive effect over some or all of the claims not subject to arbitration.'"). Because this action involves federal ERISA claims, "under general collateral estoppel principles, 'it is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims.'" *Chang*, 824 F.2d at 221, *quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221-23 (1985). Further, the scope of any preclusive effect of the arbitration will only be apparent once the arbitration has already concluded—meaning the Local 40 Fund could be stuck waiting years to resolve their claims against Defendants. *See, e.g.*, *Bear, Stearns & Co., Inc. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (scope of collateral estoppel following arbitration is within the court's discretion).

Because the Local 40 Fund is not a party to the contract containing the arbitration provision, and because the Local 1 Fund still has live, non-arbitrable claims against all non BCBS-CT Defendants, and because it is unclear whether any, never mind all, of the ERISA claims brought by the Local 1 Fund can be resolved via arbitration to the extent they do not arise solely between the Local 1 Fund and BCBS-CT on the terms of the contract, this action is clearly predominated by non-arbitrable claims and, in the event the Court compels the Local 1 Fund and BCBS-CT to arbitration, the Court should decline to stay the remaining non-arbitrable claims.

**CONCLUSION**

Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

Dated: June 21, 2024                              Respectfully submitted,

                                                 */s/ Julie S. Selesnick*

21

Julie S. Selesnick

Gregg D. Adler
CT Bar No. 300219
**Livingston, Adler, Pulda, Meiklejohn & Kelly, PC**
557 Prospect Avenue
Hartford, CT 06105
Tel. (860) 233-9821
Fax (860) 232-7818
gdadler@lapmk.org

Julie S. Selesnick (pro hac vice)
**BERGER MONTAGUE PC**
1001 G Street, NW Suite 400
Washington, D.C. 20001
Tel. (202) 559-9740
Fax (215) 875-4604
jselesnick@bm.net

Shanon J. Carson (pro hac vice)
Abigail J. Gertner (pro hac vice)
Zoe Seaman-Grant (pro hac vice to be sought)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. (215) 875-3000 Fax (215) 875-4604
scarson@bm.net
agertner@bm.net

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Julie S. Selesnick, attorney for the Plaintiffs, hereby certify that on Monday, October 28, 2024, a copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

*/s/ Julie S. Selesnick*
Julie S. Selesnick