**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND and TRUSTEES OF SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, individually and on behalf of the INTERNATIONAL BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND, the SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, and all others similarly situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>ELEVANCE, INC. F/K/A ANTHEM, INC., ANTHEM HEALTH PLANS, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD, ANTHEM BLUE CROSS, EMPIRE BLUE CROSS BLUE SHIELD, and EMPIRE BLUE CROSS,<br><br>            Defendants. | Civil Action No.: 3:22-cv-01541-VDO<br><br>The Hon. Judge Vernon D. Oliver |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## **INTRODUCTION**

Throughout their Opposition, Plaintiffs take issue with the contractual terms that they negotiated with Anthem BCBS-CT. Plaintiffs challenge, for example, the provisions governing data sharing and claims audits in their contracts, Opp. at 30; the agreed-upon fees for additional services that they purchased in their contracts, *id*. at 28-29; the methods of overpayment recovery that they specifically directed Anthem BCBS-CT to employ, *id*. at 33-34; and, most fundamentally, the reality that Plaintiffs did not bargain for Anthem BCBS-CT to serve as an ERISA fiduciary, *id*. at 22-29. Plaintiffs make these arguments as if the parties' contractual terms were unilaterally imposed, unbeknownst to them. That is far from the case. Plaintiffs are sophisticated parties who carefully negotiated the terms of their contracts with the assistance of the Connecticut Coalition and numerous healthcare lawyers. And Plaintiffs renewed these terms year after year. To protect the settled contractual expectations of the parties and others like them, the Court should reject Plaintiffs' attempt to use sweeping ERISA theories to override their contracts and impose significant additional costs on Anthem BCBS-CT that were not part of the deal that Plaintiffs struck. *See, e.g.*, *Mass. Laborers' Health & Welfare Fund v. Blue Cross Blue Shield of Mass.*, 66 F.4th 307, 328-29 (1st Cir. 2023) (declining to attribute ERISA fiduciary status to avoid industry disruptions that would "come at a steep price" and "harm plan participants").

All of Plaintiffs' ERISA claims are flawed and should be dismissed. As explained below, Plaintiffs do little to dispute that in their Opposition, largely repeating allegations from the Amended Complaint ("Complaint") and avoiding the relevant case law. To the extent that the Court finds any of Plaintiffs' ERISA theories survive, however, the Court should nonetheless right-size this case before discovery. The Court should dismiss the Non-Contracting Defendants;

dismiss ERISA claims premised on functions that did not trigger fiduciary status; and dismiss the ERISA claims premised on pure speculation, rather than plausible facts.

## ARGUMENT

### I.      The Non-Contracting Defendants Should Be Dismissed.

Plaintiffs only contracted with Anthem BCBS-CT for the services at issue in this case, including provider network access, claims pricing, provider payments, and claims data sharing. *See* ECF 98-2, Ex. A ("Bricklayers ASA") & Ex. B ("SMW ASA"). But Plaintiffs have attempted to sue several additional entities, with whom they had no contractual or other plausibly alleged relationship, in hopes of representing a putative class of *other* self-funded plans who may have contracted with those entities. The Second Circuit, however, has already closed the door on this strategy. Plaintiffs themselves, not putative class members, must have standing to sue and state a claim against each Defendant, for each claim asserted. *See Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62-63 (2d Cir. 2012); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Plaintiffs have not met their burden to show that they may sue the Non-Contracting Defendants.[1]

***The California and New York subsidiaries.*** In their Opposition, Plaintiffs do not even attempt to argue that they have standing to sue out-of-state Defendant Blue Cross of California. That Defendant operates in California, Opp. at 4; had no contract or other alleged dealings with Plaintiffs; and should be dismissed. Similarly, Plaintiffs' Complaint does not include a single

---

[1] The Court has not already decided this issue, contrary to Plaintiffs' suggestion. Defendants are not asking the Court to revisit its ruling that Plaintiffs generally alleged plausible overpayments. *See* ECF No. 86 at 9-10. Rather, Defendants are asking the Court to decide for the first time whether Plaintiffs have standing to sue and state a claim against the Non-Contracting Defendants, in light of authentic contracts naming only Anthem BCBS-CT that the Court found were missing from the original motion to dismiss. *See id.* at 11 (rejecting Defendants' standing challenge that "rests on unauthenticated documents"). Further, contrary to Plaintiffs' assertion, Opp. at 17, n.2, Defendants do not dispute that the Amendments to Plaintiff Bricklayers' 2007 Administrative Services Agreement that Plaintiffs produced were operative through 2022. Defendants' position is that there may be additional documents that memorialize terms specific to Plaintiff Bricklayers, including the specific rates that Plaintiff Bricklayers agreed to pay (rather than the general rate framework for all Connecticut Coalition plans set out in the 2007 ASA and Amendments).

2

alleged action or omission by the out-of-state Defendants Empire Health Choice Assurance, Inc. or Empire Health Choice HMO, Inc, which operate in New York.  *Id.*  That no doubt explains why Plaintiffs relegated their only mention of the Empire Defendants to a footnote.  *See id*. at 22, n.4.  Plaintiffs' footnote asserts—without citing any allegation in the Complaint—that two individuals purportedly employed by "Empire BCBS" were involved in Plaintiffs' request for claims data in some unspecified way.  *Id.*  This attorney argument should be ignored.[2]  In any event, it is not accurate:  Neither individual was employed by an Empire Defendant.  And even if either were, the vague assertion, solely found in a footnote, that they had some unspecified involvement in the claims data requests does not plausibly show that any Empire entity caused Plaintiff an injury-in-fact.  Because the out-of-state Defendants are no different than the non-contracting subsidiaries in *Mahon*, Plaintiffs' claims against them should be dismissed.  *See* 683 F.3d at 61-63.

*Elevance Health, Inc.*  Plaintiffs' Opposition also fails to save their claim against Elevance Health.  *See* Opp. at 18-23.  Plaintiffs' arguments, like their conclusory allegations, show nothing more than the fact that Elevance Health is a parent company of Anthem BCBS-CT.  And status as a parent company is insufficient to state an ERISA claim against Elevance Health or show that Plaintiffs have standing to sue it.  *See* ECF 98-1 ("Mem.") at 16-17 (collecting cases).

Plaintiffs point to Elevance Health's representations that the financial performance of subsidiaries impacts the financial performance of the parent company, Elevance Health.  *See* Opp. at 19.  That is a completely unremarkable reality of how any parent and subsidiary relate to one another and does not show that Elevance Health controlled or otherwise performed the services that Plaintiffs contracted Anthem BCBS-CT to perform.  Neither does the alleged reference on Elevance Health's website describing subsidiaries as "Our Health Plans"—*i.e.*, our subsidiaries.

---

[2] *See, e.g.*, *Tang Cap. Partners, LP v. BRC Inc.*, 661 F. Supp. 3d 48, 60 (S.D.N.Y. 2023) (disregarding attorney assertions "not otherwise supported by the Complaint" or incorporated documents in deciding motion to dismiss).

*Id.* And nothing in Defendants' declaration in support of their motion to compel arbitration shows otherwise. *See id*. at 19-20. The fact that Elevance Health, as a parent company, administers a centralized database with copies of its subsidiaries contracts does not mean that Elevance Health performs any of the functions required under those contracts that Plaintiffs challenge here. Indeed, Plaintiffs themselves allege that "much of the conduct alleged in the Amended Complaint that [violates ERISA] was committed by [Anthem] BCBS-CT." *Id*. at 18.

Similarly, the fact that Elevance Health legal counsel allegedly advised Anthem BCBS-CT regarding Plaintiffs' claims data requests, *see id*. at 21, does not mean that Elevance Health exercised fiduciary discretion or control over Plaintiffs' plans. *See* 29 C.F.R. § 2509.75-5 (1986) (legal advice alone does not trigger fiduciary status). And even if that advice—an alleged fiduciary breach—could also trigger the predicate fiduciary status, such status would be limited to Elevance Health's involvement in the claims data requests, the subject of Count I of Plaintiffs' Complaint. It would not support standing or state an ERISA claim regarding the other functions underlying Counts II-IV, including claims processing, pricing, and provider payments.

At bottom, this case is no different than *S.M. v. Oxford Health Plans (N.Y.), Inc.*, 94 F. Supp. 3d 481, 498 (S.D.N.Y. 2015)—a case Plaintiffs ignore in their Opposition—where the court dismissed the United Healthcare parent company, even though the United Healthcare logo was on the plan documents for the plaintiff. *See also* Mem. at 16-17 (citing other similar cases). The Court should likewise dismiss Elevance Health here.

## II.     Counts I-III Should Be Dismissed Because No Defendant Is an ERISA Fiduciary.

None of the functions alleged in the Complaint trigger ERISA fiduciary status. In their Opposition, Plaintiffs offer no reason for the Court to depart from its prior ruling that Anthem BCBS-CT's business-wide provider contracting is not a fiduciary function, as numerous other

4

courts have found. *See* Mem. at 19-20. Nor do Plaintiffs offer any reason for the Court to depart from its prior ruling that Anthem BCBS-CT's pricing of claims is not a fiduciary function, given the contractual mandate to apply its negotiated in-network rates. *See id.* at 20-22. Indeed, Plaintiffs' only argument about these two functions is a single cursory sentence describing them. *See* Opp. at 23. Plaintiffs' ERISA fiduciary claims premised on these functions in Counts I, II, and III should be dismissed—even if the Court concludes that Plaintiffs have stated a plausible ERISA fiduciary claim based on the newly alleged functions. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) (fiduciary liability is limited to the functions to which fiduciary status attaches).

Plaintiffs do attempt to challenge the Court's prior ruling that Anthem BCBS-CT's payment function—transferring funds to providers in a contractually mandated amount, after receiving final authorization from Plaintiffs—does not trigger fiduciary status. *See* Opp. at 26-27; Mem. at 22-23. But Plaintiffs' argument rests on the incorrect and implausible assertion that Anthem BCBS-CT may withdraw funds "without prior permission." Opp. at 26. The parties' contracts, and Plaintiffs' own allegations, make clear that is not the case. *See* Mem. at 22-23. Anthem BCBS-CT may pay providers only after receiving "final authorization" from Plaintiffs, Compl. ¶ 106, who maintain "complete authority and responsibility for all benefit determinations," SMW ASA at Art. 3.b.; *see also* Bricklayers ASA § 6(f). Plaintiff Bricklayers, moreover, may interrupt the process "to stop the release of the payment" even after giving final authorization. Bricklayers ASA § 3(d). As the First Circuit in *Mass. Laborers* recognized, without "the ability to convey plan funds unilaterally," Anthem BCBC-CT lacks "authority or control" sufficient to trigger fiduciary status. 66 F.4th at 327.[3] Plaintiffs' fiduciary claims premised on these functions in Counts I-III should be dismissed.

---

[3] Plaintiffs do not contest this principle. They cite *Negron v. Cigna Health & Life Ins.*, 300 F. Supp. 3d 341, 355 (D. Conn. 2018), for the proposition that entities who have "discretion to determine the amount of benefits due" may be

5

That leaves the alleged post-payment recovery function (both Plaintiffs) and pre-payment review function (Plaintiff Sheet Metal Workers only), to which Plaintiffs devote the vast majority of their fiduciary arguments. *See* Opp. at 23-30. Plaintiffs fail to distinguish these alleged functions from the analogous overpayment recovery program at issue in *Mass Laborers*, 66 F.4th at 321-23. As in *Mass Laborers*, Plaintiffs here fail to plausibly allege that overpayment recovery or pre-payment review are conducted specifically for Plaintiffs' plan, "as opposed to broader business decisions that simply <u>affected</u> the Plan and its participants." *Id.* at 322; *see also* Mem. at 24-25. Plaintiffs' only response is that this is "a factual issue" that "should not be decided on a Rule 12 Motion." Opp. at 24. But *Mass Laborers* was also decided in a Rule 12 posture. *See* 66 F.4th at 310. And rightfully so: Plaintiffs must allege plausible facts showing an ERISA fiduciary function to survive a motion to dismiss. Here, as in *Mass Laborers*, Plaintiffs have failed to do so.

Unable to argue that post-payment recovery or pre-payment review triggers ERISA fiduciary status, Plaintiffs turn to speculating about ways that Anthem BCBS-CT might misuse these programs. *See* Opp. at 24-25 (guessing about what these programs "could often lead to"). In addition to lacking citations to factual allegations in the Complaint, these arguments put the cart (breach of fiduciary duty) before the horse (fiduciary status). So does Plaintiffs' reliance on DOL Advisory Opinion 77-08, which addresses the duties of pension fiduciaries when beneficiaries are overpaid, not whether any particular health-benefit service provider is a fiduciary in the first place.

Finally, Plaintiffs argue that the fixed-percentage fee associated with post-payment recovery and pre-payment review (if any[4]) means that Anthem BCBS-CT can "set [its] own compensation," like the defendants found to be fiduciaries in *Negron*, 300 F. Supp. 3d 341. *See*

---

ERISA fiduciaries. Opp. at 26. But as the Court previously found, Anthem does not have any such discretion here; the contract mandates that Anthem apply its in-network rates.

[4] Plaintiff Bricklayers' ASA does not establish any fee for post-payment recovery. *See* Mem. at 25.

6

Opp. at 27-29. But this case is nothing like *Negron*. There, the defendants unilaterally created additional, undisclosed compensation for themselves (in the form of pharmacy "clawbacks"), based on charges to plan members that were expressly <u>prohibited</u> by the parties' contract. *See* 300 F. Supp. 3d at 350-51, 356-57. Because the defendants "exercise[ed] authority that is not contemplated by the plan," the Court found that fiduciary status had been plausibly alleged. *Id.* at 357. Here, there are no such plausible allegations. Anthem BCBS-CT's compensation for post-payment recovery and pre-payment review is fixed and expressly disclosed, in a contract, which Plaintiffs negotiated and renewed year after year. Plaintiffs evidently regret subscribing to these additional services for additional fees, *see* Opp. at 28-29, but that does not mean that they trigger fiduciary status. As in *Mass Laborers*, therefore, these fixed, disclosed fees do not make Anthem BCBS-CT an ERISA fiduciary. *See* 66 F.4th at 322 (fixed percentage fee for overpayment recovery does not trigger fiduciary status).

### III.     Counts I-IV Fail to State a Claim for Independent Reasons.

Even if the Court were to find that Plaintiffs plausibly alleged that Defendants are fiduciaries regarding any particular function, Plaintiffs have still failed to state an ERISA claim against Defendants—including Count IV based on allegedly non-fiduciary conduct.

#### A.     Count I does not state a claim for fiduciary breach under ERISA.

Plaintiffs allege in Count I that the parties' contractual provisions governing sharing of claims data and claims audits, which the parties negotiated with the assistance of counsel, are too restrictive and violate ERISA. Compl. ¶ 123. As explained in Defendants' Motion, however, neither ERISA Section 724 nor any general fiduciary duty under ERISA Section 404(a) prohibits these contractual provisions. *See* Mem. at 34-39. Count I therefore fails to state an ERISA claim.

7

Plaintiffs do not engage with any of these arguments in their Opposition. They do not dispute that ERISA Section 724 imposes no liability on service providers like Defendants; that, regardless, Section 724 allows reasonable provisions governing claims data sharing and claims audits; or that general fiduciary duties under ERISA Section 404(a) cannot include specific requirements for claims data sharing that Congress declined to create in Section 724. *See* Mem. at 34-39. Indeed, in defense of Count I, Plaintiffs do not cite a single case. Instead, they simply copy factual allegations from the Complaint, which describe the purported harm from the contractual provisions that Plaintiffs negotiated. *See* Opp. at 30-32 (incorporating Compl. ¶¶ 86-87, 121-22). Because Plaintiffs have completely failed to address the merits of the arguments seeking dismissal of Count I, the Court should consider any opposition waived and dismiss Count I. *See, e.g.*, *In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. 2012) (recognizing that a party "concedes through silence" arguments it fails to address).

### B. Count II does not state a claim for fiduciary breach under ERISA based on post-payment recovery or pre-payment review functions.

Separate from whether Anthem BCBS-CT is an ERISA fiduciary, Count II fails to state an ERISA claim based on post-payment recovery or pre-payment review functions or related fees. *See* Mem. at 27-31. Plaintiffs fail to allege <u>any</u> specific instance in which Anthem BCBS-CT performed post-payment recovery or pre-payment review, much less circumstances showing that Anthem BCBS-CT's performance was imprudent; and they fail to allege any associated fees or recovery methods that are inconsistent with their ASAs or that caused them harm. *See id.* Plaintiffs' attempts to refute these arguments in their Opposition fail.

First, Plaintiffs argue that Defendants have breached their (alleged) fiduciary duties based on the supposed "discretion" afforded to them in conducting post-payment recovery and pre-payment review. Opp. at 32. Plaintiffs once again confuse the question of fiduciary status (plan-

8

specific discretion) and breach of fiduciary duty (exercising that discretion improperly). In any event, Plaintiffs still have not pointed to any instance in which Anthem BCBS-CT actually exercised its supposed discretion in a way that breached a fiduciary duty. *See* Mem. at 27. Further, contrary to Plaintiffs' suggestion, Opp. at 32-33, it cannot be that Anthem BCBS-CT violates a fiduciary duty every time that it charges a fee expressly permitted in the parties' contract, which Plaintiffs negotiated.[5] Plaintiff Bricklayers' ASA, moreover, does not provide for *any* fees for overpayment recoveries, and Plaintiffs do not allege argue that any such fee was charged to Plaintiff Bricklayers. *See* Mem. at 8-10.

Second, regarding Plaintiffs' alleged cross-plan offsetting, Plaintiffs do not dispute that the practice only applies to Plaintiff Sheet Metal Workers; any cross-plan offsetting claim brought by Plaintiff Bricklayers should be dismissed. And as to Plaintiff Sheet Metal Workers, Plaintiffs still cannot identify any case law showing that cross-plan offsetting is illegal. Plaintiffs do not address Defendants' authority holding that cross-plan offsetting *is permissible* under ERISA when disclosed to the plan, as it was here. *See* Mem. at 30 (collecting cases).[6] Further, Plaintiffs still cannot identify any plausible facts showing that cross-plan offsetting harmed Plaintiff Sheet Metal Workers. They speculate that it *may* have, *see* Opp. at 33-34, but such bare speculation, even if it were actually pleaded, is not sufficient to plausibly allege a claim for relief. *Cf.* ECF No. 86 at 16 (dismissing claims because Plaintiffs failed to plead that Defendants kept overpayments).

---

[5] Plaintiffs cite two cases to suggest that percentage-based compensation is "potentially incompatible with ERISA's fiduciary obligations," Opp. at 33, but both citations are inapposite. In *Abraha v. Colonial Parking, Inc.*, 243 F. Supp. 3d 179 (D.D.C. 2017), the defendants allegedly changed their compensation from a nominal fee to a percentage of contribution fee, a change that was not "negotiated and performed at arm's length." *Id.* at 186. There is no such alleged change here. And in *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987), the court affirmed that fees negotiated in a contract did not trigger fiduciary status. *Id*. at 1259.

[6] Not only is cross-plan offsetting *disclosed* in Plaintiff Sheet Metal Workers' ASA, that Plaintiff "*direct[ed]*" Anthem BCBS-CT to employ the practice with respect to its plan. SMW ASA at Art. 4.c (emphasis added).

9

Finally, in an apparent concession that the Complaint lacks any specific allegation of harm with respect to these practices, Plaintiffs aver that "[t]he reason the Funds don't have their financial information is because Elevance refuses to give it to them." *Id.* But that is not how Rule 12 works. *See Dudek v. Nassau County Sheriff's Dept.*, 991 F. Supp. 2d 402, 414 (E.D.N.Y. 2013) ("Permitting plaintiffs to use discovery as a fishing expedition undermines the principle that only portions of a complaint which satisfy a plausibility standard . . . should unlock the doors of discovery.") (quotation omitted). Moreover, Plaintiffs' assertions that they could get no information to back their claims is simply not true. *See* Mem. at 10-11. Because Plaintiffs have failed to plausibly state a claim for relief regarding post-payment recovery, pre-payment review, or related fees and methods, Count II should be dismissed regarding those functions.

### C.     Counts III & IV do not state a claim for prohibited transactions under ERISA.

For the same and additional reasons, Plaintiffs' claims that Anthem BCBS-CT engaged in prohibited transactions violating ERISA (Counts III-IV)—whether as a fiduciary or non-fiduciary—are not supported by any plausible factual allegations and are belied by the ASAs. *See* Mem. at 32-34. Plaintiffs' entire argument in the Opposition amounts to just two conclusory, unsupported sentences, which do not track the actual theories pleaded in these Counts. *See* Opp. at 34-35. Absent from this argument, moreover, is any refutation of the fact that the fees associated with Plaintiffs' plans—including base fees and any shared savings fees—were plainly and adequately disclosed in several places. *See* Mem. at 33; Black Decl., Ex. E. Further, Plaintiffs do not address the reality that the Complaint lacks *any* plausible factual allegations of Anthem BCBS-CT (1) applying a cross-plan offset to Plaintiffs' plans or (2) keeping any overpayments for itself as compensation. *See* Mem. at 33-34. These deficiencies are fatal to Counts III-IV as pleaded.

### CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

DATED: December 13, 2024             Respectfully submitted,

*/s/ Michael G. Durham*
Michael G. Durham
Matthew H. Geelan
CARMODY TORRANCE SANDAK & HENNESSEY LLP
741 Boston Post Rd, Suite 306
Guilford, CT 06437
Tel: (203) 458-9168
Fax: (203) 458-4424
mdurham@carmodylaw.com
mgeelan@carmodylaw.com

E. Desmond Hogan (*admitted pro hac vice*)
Briana L. Black (*admitted pro hac vice*)
W. David Maxwell (*admitted pro hac vice*)
HOGAN LOVELLS US LLP
Columbia Square
555 13th Street, N.W.
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
desmond.hogan@hoganlovells.com
briana.black@hoganlovells.com
david.maxwell@hoganlovells.com

*Counsel for Defendants Elevance Health, Inc., Anthem Health Plans, Inc., Blue Cross of California, Empire HealthChoice Assurance, Inc., and Empire Health Choice HMO, Inc.*

## **CERTIFICATE OF SERVICE**

I, Michael G. Durham, attorney for the Defendants listed below, certify that, on December 13, 2024, I caused a copy of the foregoing to be served, via ECF, on all counsel of record.

*/s/ Michael G. Durham*
Michael G. Durham

*Counsel for Defendants Elevance Health, Inc., Anthem Health Plans, Inc., Blue Cross of California, Empire HealthChoice Assurance, Inc., and Empire Health Choice HMO, Inc.*