## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRUSTEES OF INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND and TRUSTEES OF SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, individually and on behalf of the INTERNATIONAL BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 CONNECTICUT HEALTH FUND, the SHEET METAL WORKERS' LOCAL NO. 40 HEALTH FUND, and all other similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>ELEVANCE, INC. F/K/A ANTHEM, INC., ANTHEM HEALTH PLANS, INC. D/B/A ANTHEM BLUE CROSS AND BLUE SHIELD, ANTHEM BLUE CROSS, EMPIRE BLUE CROSS BLUE SHIELD, and EMPIRE BLUE CROSS,<br><br>Defendants. | Civil Action No. 3:22-cv-01541 (VDO)<br><br>May 30, 2025<br><br>**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Plaintiffs respectfully submit this Notice of Supplemental Authority to bring to the Court's attention the Sixth Circuit opinion in *Tiara Yachts, Inc. v. Blue Cross Blue Shield of Michigan*, No. 24-1223, --- F.4th ---, 2025 WL 1453273 (6th Cir. May 21, 2025) (attached hereto as Exhibit A), which provides further support for Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 103) ("Opposition" or "Opp.").

In *Tiara Yachts*, the Sixth Circuit reversed the dismissal of a complaint filed by Tiara Yachts against Blue Cross Blue Shield of Michigan ("BCBSM"), the administrator of Tiara

Yachts' health plan. Tiara Yachts alleged that BCBSM breached its fiduciary duty under the Employee Retirement Income Security Act (ERISA) through, among other things, overpayment of claims and profiting from a shared savings program that recovered those overpayments. In reversing the dismissal, the Sixth Circuit held that Tiara Yachts had plausibly alleged BCBSM's fiduciary status. The allegations at issue in *Tiara Yachts* are directly analogous to Plaintiffs' allegations here and the Sixth Circuit analyzed arguments very similar to those raised by Defendants here.

First, the *Tiara Yachts* court held that allegations that BCBSM had authority to write checks on the Plan account and exercise control over the deposit and disbursement of Plan funds—including through its own claims-processing procedures—was "enough to plausibly allege that BCBSM acted as a fiduciary when it controlled—then 'fail[ed] to preserve'—Plan assets." *Tiara Yachts*, 2025 WL 1453273 at *4.

Plaintiffs have alleged the same in the instant case. By way of example, Plaintiffs allege that Elevance had discretion and control over the disposition of Plan assets. Specifically, Elevance has the discretion to determine the amount of benefits due and payment of claims, and in fact, can withdraw money from the Funds' bank accounts without prior approval. Am. Compl. ¶ 34. The Complaint also alleges that Elevance has discretion over whether and how to recover overpayments. Am. Compl. ¶¶ 37, 45. These allegations similarly "plausibly allege that BCBSM acted as a fiduciary when it controlled—then 'fail[ed] to preserve'—Plan assets." *Tiara Yachts*, 2025 WL 1453273 at *4.

The Sixth Circuit, in reversing the district court, held that "[b]ecause Tiara Yachts has plausibly alleged that BCBSM controlled the disposition of Plan assets when it was overpaying claims to medical providers, it has plausibly demonstrated that BCBSM was acting as an ERISA

fiduciary." *Id.* at 10. Plaintiffs in the case before this Court similarly made plausible allegations that Defendants controlled the disposition of plan assets when it overpaid claims to medical providers. For example, in their review of the limited claims data available, both Funds discovered that Defendants were "not applying the discount in full or at all to the Funds' claims, but instead [were] paying more than the discounted amount and sometimes more than the billed amount." Am. Compl. ¶ 70.

Despite both Plaintiff Funds' having contracts that guaranteed a 50% discount off of billed charges via various performance guarantees, the Amended Complaint alleges that the Local 1 Fund's review of claims data "revealed a haphazard claims pricing process undertaken by Anthem, where the negotiated discounts off of billed charges were rarely applied to member claims and the minimum network provider discount of 50% was almost never met" and noted that for some claims, "the 'allowed amount' as repriced by Anthem for Local 1 Fund Plan participant claims was *higher* than the billed amount." *Id.* at ¶¶ 78-79. The Local 40 Fund similarly "found many claims which had been repriced by Anthem at an allowed amount that exceeded the total billed charge" because "[n]o provider network discount was applied to any of those invoices, and Anthem paid providers ***more than they sought or were due***." *Id.* at ¶ 80 (emphasis in original). The Local 40 Fund's claims data review similarly "uncovered dozens of network facility claims where the allowed amount … was 100% of the billed charges, meaning no discount was applied to those claims." *Id.*

Second, the Sixth Circuit also held that *Tiara Yachts* plausibly alleged that BCBSM acted as an ERISA fiduciary by compensating itself through the shared savings program. BCBSM's compensation was based on a percentage of future overpayments and past overpayments. *Tiara Yachts*, 2025 WL 1453273 at *7. Like the Plaintiffs in this case, *Tiara Yachts* claims that BCBSM

overpaid providers, failed to correct the claims-processing issues that led to that overpayment, and implemented a system to profit off its own mistakes. *Id.* at *7. The Sixth Circuit correctly noted that "ERISA treats self-dealing transactions as 'presumptively unlawful'" *Id.* at *6 (*citing Cunningham v. Cornell Univ.,* 145 S. Ct. 1020, 1027 (2025)).

Analogously, Plaintiffs here allege that although Plaintiffs pay a per-member-per-month ("PMPM") rate for access to Elevance's networks and related administrative services which includes claims review for accuracy and billing errors, Elevance collects additional discretionary compensation through its Payment Integrity Aligned Incentives ("PIAI") program. Amend. Compl. ¶ 99. When Elevance uses its proprietary PIAI program to identify and prevent claims errors and abuse it keeps 25% of the savings that are recovered from the "errors" and "abuse" it finds. *Id.* This allowed Elevance to divert up to $25,000 per claim to the extent it made ***pre-payment*** claim edits reducing the billed charges under its PIAI program. *Id.* Similar to how BCBSM could control the number and amount of overpayments which comprised of its pool for compensation, Elevance here controls the number of claim errors it identifies, creating its pool for compensation. This practice is arguably more egregious than that of BCBSM, as it is occurring pre-payment and is comprised at least in part of applying claims edits that should be applied as part of the monthly fee the Plaintiffs are already paying. Just as the Sixth Circuit held, "[i]n short, [Elevance's] control over the claims-processing apparatus meant it also exercised discretion in setting its compensation under the [PAIA]." *Tiara Yachts*, 2025 WL 1453273 at *7.

Dated: May 30, 2025                 Respectfully submitted,

                                    */s/ Julie S. Selesnick*
                                    Julie S. Selesnick

                                    Gregg D. Adler
                                    CT Bar No. 300219
                                    **Livingston, Adler, Pulda, Meiklejohn & Kelly, PC**

557 Prospect Avenue
Hartford, CT 06105
Tel. (860) 233-9821
Fax (860) 232-7818
gdadler@lapmk.org

Julie S. Selesnick (*pro hac vice*)
**BERGER MONTAGUE PC**
1001 G Street, NW
Suite 400 East
Washington, DC 20001
Tel. (202) 559-9740
Fax (215) 875-4604
jselesnick@bm.net

Shanon J. Carson (*pro hac vice*)
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel. (215) 875-3000
Fax (215) 875-4604
scarson@bm.net

*Counsel for Plaintiffs*